No. 24-10707

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

National Association for Gun Rights, Incorporated; Texas Gun Rights, Incorporated; Patrick Carey; James Wheeler; Travis Speegle,

Plaintiffs-Appellees,

v.

Merrick Garland, U.S. Attorney General; United States Department of Justice; Steven Dettelbach, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives; Bureau of Alcohol, Tobacco, Firearms, and Explosives,

Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of Texas
District Court Case No. 4:23-cv-830 (Hon. Reed O'Connor)

# RECORD EXCERPTS

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

LEIGHA SIMONTON
  *United States Attorney*

MARK B. STERN
BRAD HINSHELWOOD
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7256*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-7823*

# TABLE OF CONTENTS

**Page**

Docket Sheet (ROA.4626)....................................................................RE1

Memorandum Opinion and Order, Dkt. No. 100 (ROA.3663) ...................RE24

Judgment, Dkt. No. 101 (ROA.3727) ...............................................RE88

Notice of Appeal, Dkt. No. 103 (ROA.3733).......................................RE91

Order, Dkt. No. 112 (ROA.4043) ...................................................RE93

Notice of Appeal, Dkt. No. 113 (ROA.4650)......................................RE108

# U.S. District Court
# Northern District of Texas (Fort Worth)
# CIVIL DOCKET FOR CASE #: 4:23-cv-00830-O

| | |
|---|---|
| National Association for Gun Rights, Inc. et al v. Garland et al | Date Filed: 08/09/2023 |
| Assigned to: Judge Reed C. O'Connor | Date Terminated: 07/24/2024 |
| Case in other court: United States Court of Appeals 5th Circuit, 24-10707 | Jury Demand: None |
| | Nature of Suit: 899 Other Statutes: Administrative Procedure Act/Review or Appeal of Agency Decision |
| United States Court of Appeals 5th Circuit, No. 23-11138 | Jurisdiction: Federal Question |
| Cause: 05:551 Administrative Procedure Act | |

**Plaintiff**

| | | |
|---|---|---|
| **National Association for Gun Rights Inc** | represented by | **Whitney Aaron Davis** |
| | | Eggleston King Davis, LLP |
| | | 102 Houston Avenue, 3rd Floor |
| | | 3rd Floor |
| | | Weatherford, TX 76086 |
| | | 817-596-4200 |
| | | Email: whit@ekdlaw.com |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Bar Status: Admitted/In Good Standing* |
| | | |
| | | **Benjamin HB Sley** |
| | | Eggleston King Davis LLP |
| | | 102 Houston Ave |
| | | Suite 300 |
| | | Weatherford, TX 76086 |
| | | 408-636-3438 |
| | | Email: ben@ekdlaw.com |
| | | *TERMINATED: 02/09/2024* |
| | | *Bar Status: Admitted/In Good Standing* |
| | | |
| | | **David A Warrington** |
| | | Dhillon Law Group Inc |
| | | 2121 Eisenhower Avenue, |
| | | Suite 608 |
| | | Alexandria, VA 22314 |
| | | 703-574-1206 |
| | | Fax: 703-574-1206 |
| | | Email: dwarrington@dhillonlaw.com |
| | | *PRO HAC VICE* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Bar Status: Not Admitted* |
| | | |
| | | **Gary Lawkowski** |
| | | Dhillon Law Group, Inc. |
| | | 2121 Eisenhower Avenue |

**RE1**

Suite 608
Alexandria, VA 22314
703-574-1654
Email: glawkowski@dhillonlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Glenn D Bellamy**
Wood Herron & Evans LLP
600 Vine Street
Suite 2800
Cincinnati, OH 45202
513-241-2324
Fax: 513-241-6234
Email: gbellamy@whe-law.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jonathan Mark Shaw**
Dhillon Law Group
2121 Eisenhower Ave
Suite 608
Alexandria, VA 22314
240-383-8758
Email: jshaw@dhillonlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Julian E Whitley**
Bourland Wall & Wenzel PC
301 Commerce Street
Suite 2500
Fort Worth, TX 76102
214-717-0980
Email: jwhitley@bwwlaw.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Michael A Columbo**
Dhillon Law Group Inc
177 Post Street
Suite 700
San Francisco, CA 94108
415-433-1700
Email: mcolumbo@dhillonlaw.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Plaintiff**

24-10707.4627

**Texas Gun Rights, Inc.**                    represented by   **Whitney Aaron Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Benjamin HB Sley**
(See above for address)
*TERMINATED: 02/09/2024*
*Bar Status: Admitted/In Good Standing*

**David A Warrington**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Gary Lawkowski**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Glenn D Bellamy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jonathan Mark Shaw**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Julian E Whitley**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Michael A Columbo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

<u>**Plaintiff**</u>

**Patrick Carey**                    represented by   **Whitney Aaron Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**RE3**

**Benjamin HB Sley**
(See above for address)
*TERMINATED: 02/09/2024*
*Bar Status: Admitted/In Good Standing*

**David A Warrington**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Gary Lawkowski**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Glenn D Bellamy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jonathan Mark Shaw**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Julian E Whitley**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Michael A Columbo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**<u>Plaintiff</u>**

**James Wheeler**                    represented by    **Whitney Aaron Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Benjamin HB Sley**
(See above for address)
*TERMINATED: 02/09/2024*
*Bar Status: Admitted/In Good Standing*

**David A Warrington**

**RE4**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Gary Lawkowski**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Glenn D Bellamy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jonathan Mark Shaw**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Julian E Whitley**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Michael A Columbo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Plaintiff**

**Travis Speegle**                    represented by    **Whitney Aaron Davis**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Benjamin HB Sley**
(See above for address)
*TERMINATED: 02/09/2024*
*Bar Status: Admitted/In Good Standing*

**David A Warrington**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Gary Lawkowski**

(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Glenn D Bellamy**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Jonathan Mark Shaw**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Julian E Whitley**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Admitted/In Good Standing*

**Michael A Columbo**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

V.

**Defendant**

**Merrick Garland**
*In his official capacity as Attorney General
of the United States*

represented by **Laura Bakst**
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
202-514-3183
Email: laura.b.bakst@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael Patrick Clendenen**
US Department of Justice
1100 L Street NW
Washington, DC 20005
202-305-0693
Fax: 202-616-8470
Email: michael.p.clendenen@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

24-10707.4631

Alexander William Resar
DOJ-Civ
1100 L Street NW
Suite 11208
Washington, DC 20530
202-616-8188
Email: alexander.w.resar@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

**U.S. Department of Justice**       represented by     **Laura Bakst**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael Patrick Clendenen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Alexander William Resar**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

**Steven Dettelbach**       represented by     **Laura Bakst**
*In his official capacity as Director of the*                       (See above for address)
*Bureau of Alcohol, Tobacco, Firearms and*                    *LEAD ATTORNEY*
*Explosives*                                            *ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Michael Patrick Clendenen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Alexander William Resar**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Defendant**

**Bureau of Alcohol, Tobacco, Firearms**     represented by     **Laura Bakst**
**and Explosives**                                   (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**RE7**

*Bar Status: Not Admitted*

**Michael Patrick Clendenen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

**Alexander William Resar**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Not Admitted*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/09/2023 | 1 | COMPLAINT against All Defendants filed by National Association for Gun Rights, Inc.. (Filing fee $402; Receipt number ATXNDC-13944328) Plaintiff will submit summons(es) for issuance. In each Notice of Electronic Filing, the judge assignment is indicated, and a link to the Judges Copy Requirements and Judge Specific Requirements is provided. The court reminds the filer that any required copy of this and future documents must be delivered to the judge, in the manner prescribed, within three business days of filing. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms, instructions, and exemption information may be found at www.txnd.uscourts.gov, or by clicking here: Attorney Information - Bar Membership. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge. (Attachments: # 1 Cover Sheet, # 2 Additional Page(s)) (Davis, Whitney) (Entered: 08/09/2023) |
| 08/09/2023 | 2 | CERTIFICATE OF INTERESTED PERSONS/DISCLOSURE STATEMENT by National Association for Gun Rights, Inc.. (Clerk QC note: Affiliate entry indicated). (Davis, Whitney) (Entered: 08/09/2023) |
| 08/09/2023 | 3 | Request for Clerk to issue Summons filed by National Association for Gun Rights, Inc.. (Davis, Whitney) (Entered: 08/09/2023) |
| 08/09/2023 | 4 | Request for Clerk to issue Summons filed by National Association for Gun Rights, Inc.. (Davis, Whitney) (Entered: 08/09/2023) |
| 08/09/2023 | 5 | Request for Clerk to issue Summons filed by National Association for Gun Rights, Inc.. (Davis, Whitney) (Entered: 08/09/2023) |
| 08/09/2023 | 6 | Request for Clerk to issue Summons filed by National Association for Gun Rights, Inc.. (Davis, Whitney) (Entered: 08/09/2023) |
| 08/09/2023 | 7 | |

**RE8**

| | | New Case Notes: A filing fee has been paid. File to: Judge O Connor. Pursuant to Misc. Order 6, Plaintiff is provided the Notice of Right to Consent to Proceed Before A U.S. Magistrate Judge. Clerk to provide copy to plaintiff if not received electronically. Attorneys are further reminded that, if necessary, they must comply with Local Rule 83.10(a) within 14 days or risk the possible dismissal of this case without prejudice or without further notice. (sre) (Entered: 08/09/2023) |
|------------|----|---|
| 08/09/2023 | 8  | Summons issued as to Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice, U.S. Attorney, and U.S. Attorney General. (sre) (Entered: 08/09/2023) |
| 08/09/2023 | 9  | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Glenn D. Bellamy (Filing fee $100; Receipt number ATXNDC-13944793) filed by National Association for Gun Rights, Inc. (Attachments: # 1 Proposed Order) (Davis, Whitney) (Entered: 08/09/2023) |
| 08/09/2023 | 10 | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Jonathan Shaw (Filing fee $100; Receipt number ATXNDC-13944860) filed by National Association for Gun Rights, Inc. (Attachments: # 1 Proposed Order) (Davis, Whitney) (Entered: 08/09/2023) |
| 08/09/2023 | 11 | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney David Alan Warrington (Filing fee $100; Receipt number ATXNDC-13944915) filed by National Association for Gun Rights, Inc. (Attachments: # 1 Proposed Order) (Davis, Whitney) (Entered: 08/09/2023) |
| 08/09/2023 | 12 | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Gary Lawkowski (Filing fee $100; Receipt number ATXNDC-13944977) filed by National Association for Gun Rights, Inc. (Attachments: # 1 Proposed Order) (Davis, Whitney) (Entered: 08/09/2023) |
| 08/09/2023 | 13 | ADDITIONAL ATTACHMENTS to 1 Complaint,,,, by Plaintiff National Association for Gun Rights, Inc.. (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Exhibit(s), # 5 Exhibit(s), # 6 Exhibit(s), # 7 Exhibit(s), # 8 Exhibit(s), # 9 Exhibit(s)) (Davis, Whitney) (Entered: 08/09/2023) |
| 08/10/2023 | 14 | NOTICE of Attorney Appearance by Whitney Aaron Davis for Julian Whitley; Benjamin Sley on behalf of National Association for Gun Rights, Inc.. (Davis, Whitney) (Entered: 08/10/2023) |
| 08/10/2023 | 15 | NOTICE of Related Case filed by National Association for Gun Rights, Inc. (Davis, Whitney) (Entered: 08/10/2023) |
| 08/10/2023 | 16 | Designation of lead counsel Whitney Aaron Davis for Plaintiff National Association for Gun Rights, Inc.. (Davis, Whitney) (Entered: 08/10/2023) |
| 08/14/2023 | 17 | |

**RE9**

24-10707.4634

| | | MOTION for Temporary Restraining Order filed by Patrick Carey, National Association for Gun Rights, Inc., Travis Speegle, Texas Gun Rights, Inc., James Wheeler (Davis, Whitney) (Entered: 08/14/2023) |
|---|---|---|
| 08/14/2023 | 18 | Brief/Memorandum in Support filed by Patrick Carey, National Association for Gun Rights, Inc., Travis Speegle, Texas Gun Rights, Inc., James Wheeler re 17 MOTION for Temporary Restraining Order (Davis, Whitney) (Entered: 08/14/2023) |
| 08/14/2023 | 19 | Appendix in Support filed by Patrick Carey, National Association for Gun Rights, Inc., Travis Speegle, Texas Gun Rights, Inc., James Wheeler re 18 Brief/Memorandum in Support of Motion, 17 MOTION for Temporary Restraining Order (Davis, Whitney) (Entered: 08/14/2023) |
| 08/14/2023 | 20 | ORDER deferring ruling on 17 Motion for TRO. The Court therefore ORDERS Plaintiffs to confer with Defendants and agree on a briefing schedule to address this motion. The parties are to file a joint notice outlining the agreed briefing schedule no later than August 18, 2023. (Ordered by Judge Reed C. O'Connor on 8/14/2023) (chmb) (Main Document 20 replaced on 8/15/2023) (sre). (Entered: 08/14/2023) |
| 08/15/2023 | 21 | NOTICE of Attorney Appearance by Michael Patrick Clendenen on behalf of Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice. (Filer confirms contact info in ECF is current.) (Clendenen, Michael) (Entered: 08/15/2023) |
| 08/15/2023 | 22 | MOTION for Injunction *Preliminary* filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc. with Brief/Memorandum in Support. (Davis, Whitney) (Entered: 08/15/2023) |
| 08/15/2023 | 23 | Appendix in Support filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler re 22 MOTION for Injunction *Preliminary* (Davis, Whitney) (Entered: 08/15/2023) |
| 08/15/2023 | 24 | *PROPOSED ORDER* for 22 MOTION for Injunction filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler (Davis, Whitney) Modified to terminate motion and correct docket text on 8/16/2023 (cea). (Entered: 08/15/2023) |
| 08/18/2023 | 25 | NOTICE of *Joint Proposed Briefing Schedule* filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice (Attachments: # 1 Proposed Order) (Clendenen, Michael) Modified on 8/18/2023 (sre). (Entered: 08/18/2023) |
| 08/18/2023 | 26 | ORDER: Before the Court is the parties' Joint Proposed Briefing Schedule (ECF No. 25 ), filed on August 18, 2023. After due consideration, the Court finds the parties' proposed briefing schedule to be appropriate. Therefore, the Court GRANTS the |

24-10707.4635

| | | | |
|---|---|---|---|
| | | | Joint Proposed Briefing Schedule and ORDERS as follows: 1. Defendants shall file their response to the Motion for a Temporary Restraining Order by August 21, 2023. 2. Plaintiffs shall file their reply in support of the Motion for a Temporary Restraining Order by August 25, 2023. 3. Defendants shall file their response to the Motion for a Preliminary Injunction by September 5, 2023. 4. Plaintiffs shall file their reply in support of the Motion for a Preliminary Injunction by September 19, 2023. (Ordered by Judge Reed C. O'Connor on 8/18/2023) (sre) (Entered: 08/18/2023) |
| 08/20/2023 | | 27 | ELECTRONIC ORDER granting 9 Application for Admission Pro Hac Vice of Glenn D. Bellamy. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 8/20/2023) (chmb) (Entered: 08/20/2023) |
| 08/20/2023 | | 28 | ELECTRONIC ORDER granting 10 Application for Admission Pro Hac Vice of Jonathan Shaw. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 8/20/2023) (chmb) (Entered: 08/20/2023) |
| 08/20/2023 | | 29 | ELECTRONIC ORDER granting 11 Application for Admission Pro Hac Vice of David Alan Warrington. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 8/20/2023) (chmb) (Entered: 08/20/2023) |
| 08/20/2023 | | 30 | ELECTRONIC ORDER granting 12 Application for Admission Pro Hac Vice of Gary Lawkowski. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 8/20/2023) (chmb) (Entered: 08/20/2023) |
| 08/21/2023 | | 31 | NOTICE of Attorney Appearance by Laura Bakst on behalf of Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice. (Filer confirms contact info in ECF is current.) (Bakst, Laura) (Entered: 08/21/2023) |
| 08/21/2023 | | 32 | RESPONSE filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice re: 17 MOTION for Temporary Restraining Order (Clendenen, Michael) (Entered: 08/21/2023) |
| 08/25/2023 | | 33 | REPLY filed by National Association for Gun Rights Inc re: 17 MOTION for Temporary Restraining Order (Whitley, Julian) (Entered: 08/25/2023) |
| 08/25/2023 | | 34 | |

| | | |
|---|---|---|
| | | Appendix in Support filed by National Association for Gun Rights Inc re 33 Reply *to Response to Motion for TRO* (Whitley, Julian) (Entered: 08/25/2023) |
| 08/30/2023 | 35 | NOTICE of Attorney Appearance by Alexander William Resar on behalf of Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice. (Filer confirms contact info in ECF is current.) (Resar, Alexander) (Entered: 08/30/2023) |
| 08/30/2023 | 36 | OPINION & ORDER ON PLAINTIFFS' 17 MOTION FOR TEMPORARY RESTRAINING ORDER: The Court GRANTS Plaintiffs' Motion for Temporary Restraining Order to preserve the status quo until September 27, 2023 or until such time that the Court rules on Plaintiffs' Motion for Preliminary Injunction (ECF No. 22 ). The Court ORDERS that Defendants are ENJOINED from implementing or enforcing against Plaintiffs Carey, Speegle, and Wheeler, in any manner, the ATFs expanded definition of "machinegun" that this Court has determined is likely unlawful. (Ordered by Judge Reed C. O'Connor on 8/30/2023) (bdb) (Entered: 08/30/2023) |
| 08/31/2023 | 37 | Joint MOTION to Extend Time filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice (Attachments: # 1 Proposed Order) (Clendenen, Michael) (Entered: 08/31/2023) |
| 08/31/2023 | 38 | ORDER: Before the Court is the parties' Joint Motion for Extension of Time (ECF No. 37 ), filed on August 31, 2023. After due consideration, the Court finds the parties' proposed modifications to the briefing schedule to be appropriate. Therefore, the Court GRANTS the Joint Motion for Extension and ORDERS as follows: 1. Defendants shall file their response to the Motion for a Preliminary Injunction by September 8, 2023. 2. Plaintiffs shall file their reply in support of the Motion for a Preliminary Injunction by September 22, 2023. 3. By stipulation of the parties, the Court's temporary restraining order entered on August 30, 2023 (ECF No. 36 ) shall expire on September 30, 2023 or on the date the Court issues its ruling on the preliminary injunction motion, whichever is earlier. (Ordered by Judge Reed C. O'Connor on 8/31/2023) (sre) (Entered: 08/31/2023) |
| 09/08/2023 | 39 | RESPONSE filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice re: 22 MOTION for Injunction *Preliminary* (Resar, Alexander) (Entered: 09/08/2023) |
| 09/08/2023 | 40 | Appendix in Support filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice re 39 Response/Objection *In Opposition To Plaintiffs' Motion For Preliminary Injunction* (Attachments: # 1 Appendix Part I, # 2 Appendix Part II, # 3 Appendix Part III, # 4 Appendix Part IV, # 5 Appendix Part V, # 6 Appendix Part VI) (Resar, Alexander) (Entered: 09/08/2023) |

| 09/08/2023 | 41 | Notice of Manual Filing of Video Exhibits by All Defendants re 39 Response/Objection *In Opposition To Plaintiffs' Motion For Preliminary Injunction* (Attachments: # 1 Declaration(s) of Daniel Hoffman) (Resar, Alexander) (Entered: 09/08/2023) |
|---|---|---|
| 09/08/2023 | 42 (p.4649) | ORDER deferring ruling on 22 Motion for Injunction and setting hearing. See order for detail. (Ordered by Judge Reed C. O'Connor on 9/8/2023) (Judge Reed C. O'Connor) (Entered: 09/08/2023) |
| 09/11/2023 | | Hearing Modification: Hearing set and reset. Motion Hearing set for 9/25/2023 at 09:00 AM in US Courthouse, Courtroom 2nd Floor, 501 W. 10th St. Fort Worth, TX 76102-3673 before Judge Reed C. O'Connor. (sre) (Entered: 09/11/2023) |
| 09/13/2023 | 43 | MOTION (Joint) to Reschedule Hearing filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice (Attachments: # 1 Proposed Order) (Clendenen, Michael) (Entered: 09/13/2023) |
| 09/14/2023 | 44 | ORDER: Before the Court is the parties' Joint Motion to Reschedule Hearing (ECF No. 43 ), filed on September 13, 2023. After due consideration, the Court finds good cause to grant the motion. Accordingly, it is hereby ORDERED that: 1. The hearing on Plaintiffs' Motion for Preliminary Injunction, previously scheduled for Monday, September 25, 2023 (ECF No. 42 (p.4649) ), shall be reset for Monday, October 2, 2023, at 9:00 a.m. in the Second Floor Courtroom, 501 W. 10th Street, Fort Worth, Texas. 2. By stipulation of the parties, the Court's temporary restraining order entered on August 30, 2023 (ECF No. 36 ) shall expire on October 7, 2023 or on the date the Court issues its ruling on the preliminary injunction motion, whichever is earlier. (Ordered by Judge Reed C. O'Connor on 9/14/2023) (sre) (Entered: 09/14/2023) |
| 09/18/2023 | 45 | MOTION Extend Page Limit filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler (Attachments: # 1 Proposed Order) (Davis, Whitney) (Entered: 09/18/2023) |
| 09/18/2023 | 46 | ORDER: Before the Court is Plaintiffs' Unopposed Motion for Permission to File Reply in Excess of Page Limit (ECF No. 45 ), filed September 18, 2023. Noting the motion is unopposed and finding good cause, the Court GRANTS the motion for leave to file an over-length reply brief. (Ordered by Judge Reed C. O'Connor on 9/18/2023) (sre) (Entered: 09/18/2023) |
| 09/22/2023 | 47 | REPLY filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler re: 22 MOTION for Injunction *Preliminary* (Attachments: # 1 Exhibit(s)) (Davis, Whitney) (Entered: 09/22/2023) |
| 09/27/2023 | 48 | Application for Admission Pro Hac Vice with Certificate of Good Standing for Attorney Michael Columbo (Filing fee $100; Receipt |

| | | |
|---|---|---|
| | | number ATXNDC-14064589) filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler (Attachments: # 1 Proposed Order) (Davis, Whitney) (Entered: 09/27/2023) |
| 09/27/2023 | 49 | ELECTRONIC ORDER granting 48 Application for Admission Pro Hac Vice of Michael Columbo. Important Reminder: Unless excused for cause, an attorney who is not an ECF user must register within 14 days of the date the attorney appears in a case pursuant to LR 5.1(f) and LCrR 49.2(g). (Ordered by Judge Reed C. O'Connor on 9/27/2023) (chmb) (Entered: 09/27/2023) |
| 09/29/2023 | 50 | ORDER setting time limits (Ordered by Judge Reed C. O'Connor on 9/29/2023) (Judge Reed C. O'Connor) (Entered: 09/29/2023) |
| 10/02/2023 | 51 | ELECTRONIC Minute Entry for proceedings held before Judge Reed C. O'Connor: Motion Hearing held on 10/2/2023 re 22 Motion for Injunction filed by Patrick Carey, Texas Gun Rights, Inc., National Association for Gun Rights Inc, Travis Speegle. Attorney Appearances: Plaintiff - Michael Columbo, Gary Lawkowski, Ben Sley; Defense - Laura Bakst; Michael Clendenen, Alexander Resar. (Court Reporter: Zoie Williams) (Exhibits admitted: Plaintiff A,B,D; Defense 1,2,3 - returned to party) Time in Court - 3:6. (chmb) (Entered: 10/03/2023) |
| 10/06/2023 | 52 | MOTION to Stay *Deadline to Respond to Complaint* filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice (Attachments: # 1 Proposed Order) (Clendenen, Michael) (Entered: 10/06/2023) |
| 10/07/2023 | 53 | ORDER granting 22 Motion for Injunction (Ordered by Judge Reed C. O'Connor on 10/7/2023) (Judge Reed C. O'Connor) (Entered: 10/07/2023) |
| 10/08/2023 | 54 | ORDER granting 52 Motion to Stay Answer Deadline. Defendants shall file their answer or other responsive pleading by October 28, 2023. (Ordered by Judge Reed C. O'Connor on 10/8/2023) (chmb) (Entered: 10/08/2023) |
| 10/09/2023 | 55 | ORDER REQUIRING SCHEDULING CONFERENCE AND REPORT FOR CONTENTS OF SCHEDULING ORDER: Proposed Scheduling Order due by 11/6/2023. (Ordered by Judge Reed C. O'Connor on 10/9/2023) (chmb) (Entered: 10/09/2023) |
| 10/10/2023 | 56 | Notice of Filing of Official Electronic Transcript of Motion Hearing Proceedings held on 10.2.23 before Judge Reed C. O'Connor. Court Reporter/Transcriber Zoie Williams, Telephone number 817.850.6630. Parties are notified of their duty to review the transcript. A copy may be purchased from the court reporter or viewed at the clerk's office. If the transcript contains personal identifiers that must be redacted under MO 61, Fed.R.Civ.P. 5.2 or Fed.R.Crim.P. 49.1, or if the transcript contains the name of a minor child victim or a minor child witness that must be redacted under 18 U.S.C. § 3509, file a Redaction Request - Transcript |

| | | | |
|---|---|---|---|
| | | | within 21 days. If no action is taken, the entire transcript will be made available through PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed. (194 pages) Redaction Request due 10/31/2023. Redacted Transcript Deadline set for 11/10/2023. Release of Transcript Restriction set for 1/8/2024. (zow) (Entered: 10/10/2023) |
| 10/20/2023 | | 57 | NOTICE of *Compliance* filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice (Attachments: # 1 Exhibit(s)) (Bakst, Laura) (Entered: 10/20/2023) |
| 10/25/2023 | | 58 | Unopposed MOTION to Stay *Deadline to Respond to Complaint* filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice (Attachments: # 1 Proposed Order) (Clendenen, Michael) (Entered: 10/25/2023) |
| 10/25/2023 | | 59 | ORDER: Before the Court is Defendants' Motion to Stay Deadline to Respond to Complaint (ECF No. 58 ), filed October 25, 2023. Defendants deadline to answer or otherwise respond to Plaintiffs' Complaint is October 28, 2023. Id. at 1. Defendants seek a stay of this deadline until after the Court issues a decision on the forthcoming cross-motions for summary judgment. Id. at 12. Noting that the motion is unopposed, the Court finds good cause and GRANTS the motion. Therefore, it is hereby ORDERED that Defendants' deadline to answer or otherwise respond to Plaintiff's Complaint is stayed. (Ordered by Judge Reed C. O'Connor on 10/25/2023) (sre) (Entered: 10/25/2023) |
| 11/03/2023 | | 60 | MOTION for Summary Judgment filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler (Attachments: # 1 Proposed Order) (Davis, Whitney) (Entered: 11/03/2023) |
| 11/03/2023 | | 61 | Brief/Memorandum in Support filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler re 60 MOTION for Summary Judgment (Davis, Whitney) (Entered: 11/03/2023) |
| 11/03/2023 | | 62 | AMENDED Brief/Memorandum in Support of 61 filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler re 61 Brief/Memorandum in Support of Motion (Attachments: # 1 Exhibit(s)) (Davis, Whitney) Modified on 12/6/2023 (sre). (Entered: 11/03/2023) |
| 11/06/2023 | | 63 | NOTICE OF INTERLOCUTORY APPEAL as to 53 Order on Motion for Injunction to the Fifth Circuit by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a |

| | | |
|---|---|---|
| | | hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Bakst, Laura) (Entered: 11/06/2023) |
| 11/06/2023 | 64 | MOTION to Stay re 53 Order on Motion for Injunction filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice with Brief/Memorandum in Support. (Attachments: # 1 Declaration(s), # 2 Memorandum in Support of Motion, # 3 Proposed Order) (Bakst, Laura) (Entered: 11/06/2023) |
| 11/06/2023 | 65 | Proposal for contents of scheduling and discovery order *Joint Report re: Contents of Scheduling Order* by Patrick Carey. (Sley, Benjamin) (Entered: 11/06/2023) |
| 11/06/2023 | 66 | ORDER: To expeditiously resolve Defendants Motion to Stay Preliminary Injunction Pending Appeal 64 , Plaintiffs may file a response to Defendants motion on or before November 10, 2023. Defendants may file a reply in support of their motion on or before November 13, 2023. (Ordered by Judge Reed C. O'Connor on 11/6/2023) (chmb) (Entered: 11/06/2023) |
| 11/08/2023 | 67 | Electronic Copy of Admitted Hearing or Trial Exhibit(s) re 63 Notice of Appeal,,,, filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice. Exhibits are available for public inspection at the clerk's office. (Attachments: # 1 Defendants' Exhibit Number 1 from Preliminary Injunction Hearing, # 2 Defendants' Exhibit Number 2 from Preliminary Injunction Hearing) (Resar, Alexander) (Entered: 11/08/2023) |
| 11/08/2023 | 68 | USCA Case Number No. 23-11138 in United States Court of Appeals 5th Circuit for 63 Notice of Appeal, filed by Merrick Garland, U.S. Department of Justice, Steven Dettelbach, Bureau of Alcohol, Tobacco, Firearms and Explosives. (tle) (Entered: 11/08/2023) |
| 11/10/2023 | 69 | RESPONSE filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler re: 64 MOTION to Stay re 53 Order on Motion for Injunction (Davis, Whitney) (Entered: 11/10/2023) |
| 11/10/2023 | 70 | Appendix in Support filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler re 69 Response/Objection (Davis, Whitney) (Entered: 11/10/2023) |
| 11/13/2023 | 71 | REPLY filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice re: 64 MOTION to Stay re 53 Order on |

**RE16**

| | | |
|---|---|---|
| | | Motion for Injunction (Bakst, Laura) (Entered: 11/13/2023) |
| 11/13/2023 | 72 | SCHEDULING ORDER: The parties shall submit the administrative record by December 1, 2023. Defendants shall file their cross-motion for summary judgment and response in opposition to Plaintiffs pending cross-motion for summary judgment by December 1, 2023. Plaintiffs shall file their reply in support of their pending cross-motion for summary judgment and opposition to Defendants cross-motion for summary judgment by December 22, 2023. Defendants shall file their reply in support of their cross-motion for summary judgment by January 12, 2024. (Ordered by Judge Reed C. O'Connor on 11/13/2023) (chmb) (Entered: 11/13/2023) |
| 11/16/2023 | 73 | ORDER denying 64 Motion to Stay Pending Appeal. See Order for details. (Ordered by Judge Reed C. O'Connor on 11/16/2023) (chmb) (Entered: 11/16/2023) |
| 11/27/2023 | | Record on Appeal for USCA5 23--11138 (related to 63 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified, 1 Volume(s) electronic transcript, #67 Volume(s) or container(s) of trial or hearing original exhibits,. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (tle) (Entered: 11/27/2023) |
| 11/28/2023 | | APPEARANCE FORM FILED at USCA5. Access to the EROA [23-11138] has been granted to : Attorney Glenn D. Bellamy for Appellee National Association for Gun Rights, Incorporated...by Attorney Whitney A Davis for Appellee Travis Speegle in 23-11138, Attorney Whitney A Davis for Appellee James Wheeler in 23-11138, Attorney Whitney A Davis for Appellee Patrick Carey in 23-11138, Attorney Whitney A Davis for Appellee Texas Gun Rights, Incorporated in 23-11138, Attorney Whitney A Davis for Appellee National Association for Gun Rights, Incorporated...by Attorney Benjamin Harry Beryll Sley for Appellee Travis Speegle in 23-11138, Attorney Benjamin Harry Beryll Sley for Appellee James Wheeler in 23-11138, Attorney Benjamin Harry Beryll Sley for Appellee Patrick Carey in 23-11138, Attorney Benjamin Harry Beryll Sley for Appellee Texas Gun Rights, Incorporated in 23-11138, Attorney Benjamin Harry Beryll Sley for Appellee National Association for Gun Rights, Incorporated. (tle) (Entered: 11/28/2023) |

24-10707.4642

| | | |
|---|---|---|
| 11/28/2023 | | APPEARANCE FORM FILED at USCA5 by Attorney Glenn D. Bellamy for Appellee National Association for Gun Rights, Incorporated in 23-11138, Attorney David Warrington for Appellee Travis Speegle in 23-11138, Attorney David Warrington for Appellee James Wheeler in 23-11138, Attorney David Warrington for Appellee Patrick Carey in 23-11138, Attorney David Warrington for Appellee Texas Gun Rights, Incorporated in 23-11138, Attorney David Warrington for Appellee National Association for Gun Rights, Incorporated in 23-11138. Access to the EROA has been granted. (tle) (Entered: 11/28/2023) |
| 11/30/2023 | 75 | ORDER of USCA No. 23-11138 as to 63 Notice of Appeal, filed by Merrick Garland, U.S. Department of Justice, Steven Dettelbach, Bureau of Alcohol, Tobacco, Firearms and Explosives. Defendants appealed and moved the district court to enter a stay pending appeal. The district court denied the motion. Defendants then moved this court for a stay. Defendants have not carried their burden to show that they are entitled to a stay pending appeal. Accordingly, their motion is DENIED. (Attachments: # 1 USCA5 Cover Letter) (tle) (Entered: 11/30/2023) |
| 12/01/2023 | 76 | NOTICE of *Submission of Administrative Record* filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice (Clendenen, Michael) (Entered: 12/01/2023) |
| 12/01/2023 | 77 | Administrative Record consisting of Administrative Record filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice. (Attachments: # 1 Additional Page(s), # 2 Additional Page(s), # 3 Additional Page(s), # 4 Additional Page(s), # 5 Additional Page(s), # 6 Additional Page(s), # 7 Additional Page(s), # 8 Additional Page(s), # 9 Additional Page(s), # 10 Additional Page(s), # 11 Additional Page(s), # 12 Additional Page(s), # 13 Additional Page(s), # 14 Additional Page(s), # 15 Additional Page(s), # 16 Additional Page(s), # 17 Additional Page(s), # 18 Additional Page(s)) (Clendenen, Michael) (Entered: 12/01/2023) |
| 12/01/2023 | 78 | Notice of Manual Filing of Video Records by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice (Clendenen, Michael) (CLERK'S NOTE: 1 USB received in chambers on 12/6/2023 and remains in DJ chambers' possession) Modified on 12/7/2023 (bdb). (Entered: 12/01/2023) |
| 12/01/2023 | 79 | Cross MOTION for Summary Judgment filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice (Attachments: # 1 Proposed Order) (Resar, Alexander) (Entered: 12/01/2023) |
| 12/01/2023 | 80 | RESPONSE filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice re: 60 MOTION for Summary Judgment (Resar, Alexander) (Entered: 12/01/2023) |

| 12/01/2023 | 81 | Brief/Memorandum in Support filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice re 79 Cross MOTION for Summary Judgment , 80 Response/Objection *to Plaintiffs' Motion for Summary Judgment* (Resar, Alexander) (Entered: 12/01/2023) |
|---|---|---|
| 12/12/2023 | 82 | Brief/Memorandum in Support filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler re 74 Notice (Other) (Attachments: # 1 Proposed Order) (Davis, Whitney) Modified event on 1/3/2024 (bdb). (Entered: 12/12/2023) |
| 12/22/2023 | 83 | REPLY filed by National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc. re: 79 Cross MOTION for Summary Judgment (Sley, Benjamin) (Entered: 12/22/2023) |
| 12/22/2023 | 84 | Brief/Memorandum in Support filed by National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc. re 83 Reply *Plaintiffs' Combined Brief in Response to D's Cross Mtn for SJ* (Sley, Benjamin) (Entered: 12/22/2023) |
| 12/22/2023 | 85 | Appendix in Support filed by National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc. re 84 Brief/Memorandum in Support of Motion *Plaintiffs' Combined Brief in Response to D's Cross Mtn for SJ* (Sley, Benjamin) (Entered: 12/22/2023) |
| 01/03/2024 | 86 | ORDER: The Court GRANTS Plaintiffs' Motion to Strike (ECF No. 82 ). The Clerk of Court is DIRECTED to remove docket entry 74 from the electronic case file. (Ordered by Judge Reed C. O'Connor on 1/3/2024) (bdb) (Entered: 01/03/2024) |
| 01/12/2024 | 87 | REPLY filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice re: 79 Cross MOTION for Summary Judgment (Bakst, Laura) (Entered: 01/12/2024) |
| 02/08/2024 | 88 | MOTION to Withdraw as Attorney filed by National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler (Attachments: # 1 Proposed Order) (Davis, Whitney) (Entered: 02/08/2024) |
| 02/08/2024 | 89 | ORDER denying 88 Motion to Withdraw as Attorney. (Ordered by Judge Reed C. O'Connor on 2/8/2024) (bcr) (Entered: 02/08/2024) |
| 02/09/2024 | 90 | Amended MOTION to Withdraw as Attorney filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler (Attachments: # 1 Proposed Order) (Davis, Whitney) (Entered: 02/09/2024) |
| 02/09/2024 | 91 | ORDER: Noting that the withdrawal is unopposed, the Court determines that the 90 Motion should be, and is hereby, GRANTED. Accordingly, the Court ORDERS that Mr. Sley is withdrawn as counsel of record in this matter. (Ordered by Judge Reed C. O'Connor on 2/9/2024) (bdb) (Entered: 02/09/2024) |

| | | |
|---|---|---|
| 04/11/2024 | | APPEARANCE FORM FILED at USCA5 by Attorney(s) Jason T. Bramow for party(s) Appellee James Wheeler Appellee Travis Speegle Appellee Texas Gun Rights, Incorporated Appellee National Association for Gun Rights, Incorporated Appellee Patrick Carey, in case 23-11138. Access to the EROA has been granted. (tle) (Entered: 04/11/2024) |
| 04/24/2024 | 92 | ***STRICKEN PER 94 *** NOTICE of Violation of EDNY Court Orders Issued 9/5/23 against Rare Breed Triggers LLC sent by Gayane Asasyan. (sre) Modified on 5/22/2024 (sre). (Entered: 04/24/2024) |
| 05/15/2024 | 93 | NOTICE of *and Memorandum in Support of Their Motion to Strike* re: 82 MOTION to Strike filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler (Attachments: # 1 Proposed Order) (Davis, Whitney) Modified on 5/22/2024 (sre). (Entered: 05/15/2024) |
| 05/22/2024 | 94 | ORDER: Before the Court is Plaintiffs' Motion to Strike Docket Entry No. 92 (the "Motion") (ECF No. 93 ). Plaintiffs move the Court to strike from the record the second filing made by non-party Thomas Allan Graves that is located at docket number 92 ("Second Non-Party Filing"). ECF No. 93. at 1. In support of their request, Plaintiffs argue that the contents of the Second Non-Party Filing are immaterial and impertinent. Id. at 34. Defendants are not actively opposed and appear to take no position on Plaintiffs' Motion." Id. at 6. Noting the lack of active opposition and for the same reasons that justified striking the previous filing made by Mr. Graves (ECF No. 86 ), the Court exercises its discretion to GRANT Plaintiffs' Motion. The Clerk of Court is DIRECTED to STRIKE docket entry 92 from the electronic case file. Furthermore, the Court CAUTIONS Mr. Graves that additional immaterial, impertinent, and/or scandalous filings made in this case may result in sanctions. The Clerk of Court is DIRECTED to mail a copy of this order to Mr. Graves at the address identified in docket number 92: 295 Eagle Point Ln. Sand Springs, Oklahoma 74063. (Ordered by Judge Reed C. O'Connor on 5/22/2024) (sre) (Entered: 05/22/2024) |
| 06/17/2024 | 95 | MOTION for Leave to File Notice of Supplemental Authority filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler (Attachments: # 1 Exhibit(s), # 2 Exhibit(s)) (Davis, Whitney) (Entered: 06/17/2024) |
| 06/18/2024 | 96 | ORDER: Before the Court is Plaintiffs' Motion for Leave to File Notice of Supplemental Authority (ECF No. 95 ), filed June 17, 2024. Plaintiffs ask the Court for leave to file the Notice of Supplemental Authority and the accompanying decision rendered by the Supreme Court in Garland v. Cargill, Case No. 22-976 (U.S. June 14, 2024). ECF No. 95 at 1. Although the Motion lacks the certificate of conference required by Local Rule 7.1(b), the Court treats the following assertion in the body of the motion as |

| | | |
|---|---|---|
| | | Plaintiffs' certificate: "Plaintiffs have conferred with Defendants, who do not object to the filing of a Notice. Id. Noting that Defendants are unopposed and finding good cause, the Court GRANTS Plaintiffs leave to file the Notice of Supplemental Authority and the accompanying Cargill v. Garland decision. (Ordered by Judge Reed C. O'Connor on 6/18/2024) (sre) (Entered: 06/18/2024) |
| 06/18/2024 | 97 | NOTICE of *Supplemental Authority* filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler (Attachments: # 1 Exhibit(s)) (Davis, Whitney) (Entered: 06/18/2024) |
| 06/20/2024 | 98 | NOTICE of *Non-Compliance* filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s)) (Davis, Whitney) (Entered: 06/20/2024) |
| 06/24/2024 | 99 | RESPONSE filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice re: 98 Notice (Other) (Attachments: # 1 Declaration(s) of Matthew P. Varisco) (Clendenen, Michael) (Entered: 06/24/2024) |
| 07/23/2024 | 100 | MEMORANDUM OPINION & ORDER granting 60 Plaintiffs' Motion for Summary Judgment and denying 79 Defendants' Motion for Summary Judgment. See order for details. (Ordered by Judge Reed C. O'Connor on 7/23/2024) (chmb) Modified type on 7/24/2024 (mmw). (Entered: 07/23/2024) |
| 07/24/2024 | 101 | FINAL JUDGMENT: This Judgment is issued pursuant to Federal Rule of Civil Procedure 58(a). Please see order for additional details. (Ordered by Judge Reed C. O'Connor on 7/24/2024) (sre) (Entered: 07/24/2024) |
| 07/29/2024 | 102 | ORDER of USCA No. 23-11138 as to 63 Notice of Appeal, filed by Merrick Garland, U.S. Department of Justice, Steven Dettelbach, Bureau of Alcohol, Tobacco, Firearms and Explosives. Under FED. R. APP. P. 42(B), the appeal is dismissed as of July 26, 2024, pursuant to appellants motion (Attachments: # 1 USCA5 Cover Letter) (tle) (Entered: 07/29/2024) |
| 08/01/2024 | 103 | NOTICE OF APPEAL as to 100 Order on Motion for Summary Judgment,,, 101 Judgment to the Fifth Circuit by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF |

| | | |
|---|---|---|
| | | Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Bakst, Laura) (Entered: 08/01/2024) |
| 08/01/2024 | 104 | MOTION to Stay re 100 Order on Motion for Summary Judgment,,, 101 Judgment filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice (Attachments: # 1 Declaration(s), # 2 Proposed Order) (Bakst, Laura) (Entered: 08/01/2024) |
| 08/01/2024 | 105 | Brief/Memorandum in Support filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice re 104 MOTION to Stay re 100 Order on Motion for Summary Judgment,,, 101 Judgment (Bakst, Laura) (Entered: 08/01/2024) |
| 08/02/2024 | 106 | ORDER: Before the Court are Defendants' Motion to Stay Pending Appeal (ECF No. 104 ), and Brief in Support (ECF No. 105 ), filed August 1, 2024. To expedite resolution of this issue, the Court ORDERS Plaintiffs to respond by no later than August 7, 2024. Defendants may reply by no later than August 9, 2024. (Ordered by Judge Reed C. O'Connor on 8/2/2024) (sre) (Entered: 08/02/2024) |
| 08/07/2024 | 107 | RESPONSE filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler re: 104 MOTION to Stay re 100 Order on Motion for Summary Judgment,,, 101 Judgment (Lawkowski, Gary) (Entered: 08/07/2024) |
| 08/07/2024 | 108 | Appendix in Support filed by Patrick Carey, National Association for Gun Rights Inc, Travis Speegle, Texas Gun Rights, Inc., James Wheeler re 107 Response/Objection, (Lawkowski, Gary) (Entered: 08/07/2024) |
| 08/09/2024 | 109 | REPLY filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice re: 104 MOTION to Stay re 100 Order on Motion for Summary Judgment,,, 101 Judgment (Resar, Alexander) (Entered: 08/09/2024) |
| 08/12/2024 | 110 | USCA Case Number 24-10707 in United States Court of Appeals 5th Circuit for 103 Notice of Appeal, filed by Merrick Garland, U.S. Department of Justice, Steven Dettelbach, Bureau of Alcohol, Tobacco, Firearms and Explosives. (tle) (Entered: 08/12/2024) |
| 08/19/2024 | 111 | NOTICE of *Intention to Seek Relief from the Fifth Circuit* filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice (Resar, Alexander) (Entered: 08/19/2024) |
| 08/20/2024 | 112 | ORDER: The Court DENIES Defendants' Motion to Stay Judgment Pending Appeal (ECF No. 104 ). The Court grants |

| | | |
|---|---|---|
| | | Defendants an additional SIX (6) MONTHS to comply with the affirmative obligation, which SHALL be completed by February 22, 2025. (Ordered by Judge Reed C. O'Connor on 8/20/2024) (bdb) (Entered: 08/20/2024) |
| 09/03/2024 | | Record on Appeal for USCA5 24-10707 (related to 103 appeal): Record consisting of: 1 ECF electronic record on appeal (eROA) is certified, 1 Volume(s) electronic transcript, Doc. #67 Volume(s) or container(s) of trial or hearing original exhibits,. **PLEASE NOTE THE FOLLOWING:** Licensed attorneys must have filed an appearance in the USCA5 case and be registered for electronic filing in the USCA5 to access the paginated eROA in the USCA5 ECF system. (Take these steps immediately if you have not already done so. Once you have filed the notice of appearance and/or USCA5 ECF registration, it may take up to 3 business days for the circuit to notify the district clerk that we may grant you access to the eROA in the USCA5 ECF system.) To access the paginated record, log in to the USCA5 ECF system, and under the Utilities menu, select Electronic Record on Appeal. Pro se litigants may request a copy of the record by contacting the appeals deputy in advance to arrange delivery. (tle) (Entered: 09/03/2024) |
| 09/04/2024 | 113 (p.4650) | NOTICE OF APPEAL as to 112 Order on Motion to Stay, 100 Order on Motion for Summary Judgment, 101 Judgment to the Fifth Circuit by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice. T.O. form to appellant electronically at Transcript Order Form or US Mail as appropriate. Copy of NOA to be sent US Mail to parties not electronically noticed. IMPORTANT ACTION REQUIRED: Provide an electronic copy of any exhibit you offered during a hearing or trial that was admitted into evidence to the clerk of the district court within 14 days of the date of this notice. Copies must be transmitted as PDF attachments through ECF by all ECF Users or delivered to the clerk on a CD by all non-ECF Users. See detailed instructions here. (Exception: This requirement does not apply to a pro se prisoner litigant.) Please note that if original exhibits are in your possession, you must maintain them through final disposition of the case. (Resar, Alexander) (Entered: 09/04/2024) |
| 09/06/2024 | 114 (p.4653) | NOTICE of *Administrative Hearing* filed by Bureau of Alcohol, Tobacco, Firearms and Explosives, Steven Dettelbach, Merrick Garland, U.S. Department of Justice (Resar, Alexander) (Entered: 09/06/2024) |
| 09/18/2024 | | APPEARANCE FORM FILED at USCA5 by Attorney(s) Glenn D. Bellamy for party(s) Appellee National Association for Gun Rights, Incorporated, in case 24-10707. Access to the EROA has been granted. (tle) (Entered: 09/18/2024) |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:23-cv-00830-O |
| MERRICK GARLAND, *et al.*, | § § § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION & ORDER</u>

Pending before the Court are Plaintiffs' Motion for Summary Judgment (ECF No. 60) and Amended Brief in Support (ECF No. 62), filed on November 3, 2023; Defendants' Cross-Motion for Summary Judgment (ECF No. 79), Response in Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 80), and Combined Memorandum in Support of Cross-Motion for Summary Judgment and Response in Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 81), filed on December 1, 2023; Plaintiffs' Response to Defendants' Cross-Motion for Summary Judgment (ECF No. 83), Combined Brief in Response to Defendants' Cross-Motion for Summary Judgment and Reply in Support of Plaintiffs' Motion for Summary Judgment (ECF No. 84), and Appendix (ECF No. 85), filed on December 22, 2023; Defendants' Reply Brief in Further Support of Cross-Motion for Summary Judgment (ECF No. 87), filed on January 12, 2024; Plaintiffs' Notice of Supplemental Authority (ECF No. 97), filed on June 18, 2024; Plaintiffs' Notice of Non-Compliance (ECF No. 98), filed on June 20, 2024; and Defendants' Response to Plaintiffs' Notice of Non-Compliance (ECF No. 99), filed on June 24, 2024.

Having considered the above-referenced filings and applicable law, the Court concludes that Defendants engaged in unlawful agency action taken in excess of their authority. Therefore,

the Court **GRANTS** Plaintiffs' Motion for Summary Judgment (ECF No. 60) and **DENIES** Defendants' Cross-Motion for Summary Judgment (ECF No. 79).

## I.   BACKGROUND[1]

The United States Congress delegated authority to the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") to regulate firearms in interstate commerce. In a 2018 regulation, the ATF clarified its definition of "machinegun." 27 C.F.R. § 479.11 (2018). In the years that followed, the ATF classified certain types of firearms as machineguns pursuant to its clarified definition. *See, e.g.*, 83 Fed. Reg. 66514 (bump stocks). As a result, it became illegal to possess or transfer these prohibited firearms. Alleging incongruence between the statutory definition of "machinegun" and the ATF's interpretation, Plaintiffs filed this suit under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, to challenge the legality of the ATF's classification of firearms under the broadened definition.

### A.   Forced Reset Triggers

One of the prohibited firearms is a forced reset trigger ("FRT"). An FRT is an assembly that allows the trigger of a semi-automatic weapon to reset quicker than it otherwise would using the standard trigger-return spring. Due to the swift trigger reset, a firearm equipped with an FRT enables the user to fire at a faster rate than with a traditional trigger.

Reviewing the basic mechanism of a firearm is necessary to understand how an FRT works. The basic function of any trigger is to release the hammer. This occurs when the trigger is pulled back to the point that a "trigger sear" releases the hammer from its retained position. Once released by the trigger, the hammer pivots to contact the firing pin. Once contacted, the firing pin

---

[1] Unless otherwise indicated, all facts are taken from the Court's October 7, 2023 Opinion & Order that granted a preliminary injunction. *See* Op. & Order on Pls.' Mot. for Prelim. Inj., ECF No. 53. There is no indication in the summary judgment record—or at any stage in this litigation—that the parties disagree as to the relevant facts.

then strikes a chambered ammunition cartridge or "round," causing gunpowder in the cartridge to combust. The combustion effect propels the cartridge's bullet out of the barrel of the firearm. Once fired, a standard semi-automatic trigger returns to its "reset" state—ready-to-fire or "set" position—by allowing the firearm to function once again due to starting the mechanism anew. In other words, the firearm only functions again upon the reset of the trigger to release the hammer.

An FRT is a device that forcibly returns the trigger to its reset state. In the commercialized FRT designs at issue in this litigation, the trigger is forcibly reset by the hammer when the bolt carrier cycles to the rear. A "locking bar" mechanically locks the trigger in its reset state, preventing the user from moving the trigger rearward to function by releasing the hammer, until the bolt has returned to the in-battery position and the firearm is safe to fire. When firing multiple shots using an FRT, the trigger must still reset after each round is fired and must separately function to release the hammer by moving far enough to the rear in order to fire the next round.

### B. Statutory Background

The National Firearms Act of 1934 ("NFA") regulates certain firearms in interstate commerce. 26 U.S.C. §§ 5801 *et seq.* At the time of its proposal, the NFA "was known to many as the 'the Anti-Machine Gun Bill.'" *Cargill v. Garland*, 57 F.4th 447, 450 (5th Cir. 2023) (en banc), *aff'd sub nom.*, 602 U.S. 406 (2024). Among other things, the NFA criminalized the possession or transfer of certain unregistered firearms while also prohibiting the registration of firearms otherwise banned by law. 26 U.S.C. §§ 5812(a), 5861. In the decades following its enactment, Congress passed the Gun Control Act of 1968 (the "GCA"), which criminalized the possession of firearms for certain classes of people. 18 U.S.C. § 921 *et. seq.* The GCA was amended in 1986 by the Hughes Amendment to the 1986 Firearm Owners Protection Act—

colloquially referred to as "the machinegun ban"—in order to prohibit the possession or transfer of machineguns. 18 U.S.C. § 922(o). With limited exceptions,[2] it is a federal felony today to possess or transfer a machinegun. *Id.* This offense is punishable by up to ten years in federal prison for first-time offenders. 18 U.S.C. § 924(a)(2).

> According to the NFA and GCA, a "machinegun" is statutorily defined as
>
> [a]ny weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machine-gun [sic], and any combination of parts from which a machine-gun [sic] can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b) (providing the original statutory definition of "machinegun"); 18 U.S.C. § 921(a)(24) (incorporating the NFA's definition of "machinegun" into the GCA). In other words, a machinegun is a "rifle capable of automatic fire" due to "firing more than one round per trigger-action." *Cargill*, 57 F.4th at 452. Firearms incapable of automatic fire per trigger-action are thus not machineguns. *Id.*

### C. Regulatory Background

For decades, the ATF's regulations mirrored the federal statutory definition of "machinegun." *Compare* 27 C.F.R. §§ 478.11, 479.11 (2017) *with* 26 U.S.C. § 5845(b). This statutory parity was disrupted in 2018 when the ATF broadened the meaning of machinegun by re-interpreting the statutory definition to add the following language:

> For purposes of this definition, the term "automatically" as it modifies "shoots, is designed to shoot, or can be readily restored to shoot," means functioning as the result of a self-acting or self-regulating mechanism that allows the firing of multiple rounds through a single function of the trigger; and "single function of the trigger" means a single pull of the trigger and analogous motions. The term

---

[2] These exceptions are limited to government actors, as well as machineguns in existence and registered prior to May 19, 1986—the effective date of the statute. 18 U.S.C. § 922(o)(2)(A)–(B).

4

**RE27**

"machine gun" includes a bump-stock-type device, i.e., a device that allows a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter.

27 C.F.R § 479.11 (2018).

Three years after the ATF broadened its interpretation of the statutory definition, agency subdivisions issued reports applying the revised definition of "machinegun" to FRTs. For instance, the Firearms Technology Criminal Branch ("FTCB") issued a Technical Examination Report on July 15, 2021, which purportedly classified the FRT-15—a version of the FRT—as a machinegun. The FTCB issued a similar report several months later on October 21, 2021 regarding the Wide Open Trigger ("WOT") version of the FRT. Both the WOT and the FRT-15 operate on the same mechanical principles. At the beginning of the next year, the FTCB issued its "Open Letter to All Federal Firearms Licensees" (the "Open Letter") on March 22, 2022. The Open Letter advised that the ATF "recently examined devices commonly known as 'forced reset triggers' (FRTs)" and "determined that *some* of them are 'firearms' and 'machineguns' as defined in the [GCA]." Most important for this case, the Open Letter further explained that "ATF's examination found that *some* FRT devices allow a firearm to automatically expel more than one shot with a single, continuous pull of the trigger" and that "any FRT that allows a firearm to automatically expel more than one shot with a single, continuous pull of the trigger is a 'machinegun.'" One month later, the ATF's Firearms and Ammunition Technology Division ("FATD") issued yet another report on the FRT-15 trigger.

The ATF's application of its revised definition is not merely contained to agency reports. In fact, the ATF and other government actors have actively pursued civil and criminal enforcement actions against manufacturers, sellers, and owners of FRTs. Specifically, the

**RE28**

Department of Justice ("DOJ") has brought several criminal prosecutions against individuals for possessing FRTs—including at least one individual located in the State of Texas.[3] The DOJ has also initiated civil proceedings against at least one company and two individuals for manufacturing and selling FRTs.[4] More proceedings seem inevitable given that the ATF sent cease-and-desist letters regarding possession of FRTs as recently as October 2023 and even seized FRTs as recently as September 2023.[5]

### D. Parties

Plaintiffs comprise of both individuals and organizations. Plaintiffs Patrick Carey, Travis Speegle, and James "J.R." Wheeler are three individual citizens located in the Texas–Louisiana area (the "Individual Plaintiffs"). Each Individual Plaintiff has owned, currently owns, and/or plans to own FRTs in the future. Plaintiffs also include two organizations—National Association for Gun Rights, Inc. ("NAGR") and Texas Gun Rights, Inc. ("TGR")—with thousands of members in the Northern District of Texas (the "Organizational Plaintiffs").

Plaintiff Carey owned two FRTs prior to receiving a warning notice from the ATF on August 22, 2022. The warning notice informed Plaintiff Carey that "ATF has information that you have acquired one or more [FRTs]," that "[t]hese items have been classified as machineguns

---

[3] *See, e.g.*, Second Superseding Indictment at Count One, *United States v. Bruggeman*, 2:22-cr-185 (S.D. Tex. Nov. 9, 2022) (charging defendant with "knowingly posess[ing] a machinegun, that is, six (6) Rare Breed Triggers FRT-15"); Indictment at Count Two, *United States v. Berrios-Aquino*, 3:22-cr-473 (D.P.R. Apr. 20, 2023) (charging defendant with possession of a machinegun for having a Rare Breed FRT-15 trigger); Superseding Indictment at Count One, *United States. v. Augusto*, 3:22-cr-30025 (D. Mass. Sept. 1, 2022) (charging defendant with possession of a machinegun in part for having three Rare Breed FRT-15 forced reset triggers and one Tommy Triggers FRT-15-3 MD forced reset trigger).

[4] *See, e.g.*, Compl., *United States v. Rare Breed Triggers, LLC, et al.*, No. 1:23-cv-00369-NRM-RML (E.D.N.Y. Jan. 19, 2023) (ECF No. 1) (seeking injunctive relief to enjoin a commercial entity and related individuals from marketing FRT-15s as lawful weapons despite the ATF's contrary interpretation that FRTs are machineguns).

[5] *See, e.g.*, Pls.' App. 301–03, ECF No. 62-1 (declaration of Lee Boerschig with attached ATF correspondence); *id.* at 397, 399, 326–27, 330, 391, 393 (ATF Official Notification posted on November 1, 2023 (stating ATF seized FRTs/WOTs on August 31, 2021, September 19, 26, 27, 2023, October 3, 4, 11, 13, 16, 19, 20, 24 2023)).

that were unlawfully manufactured," that "[p]ossession of these devices is a violation of law due to their illegal manufacture," and that "*the unlawful receipt and possession of any of these devices is a felony violation of Federal law*." Due to the direct threat of civil and criminal enforcement, Plaintiff Carey surrendered his two FRTs to ATF agents. Plaintiff Wheeler personally owns one FRT and has a 50% ownership stake in a small firearms and ammunition business that owns two additional FRTs. Plaintiff Speegle personally owns ten FRTs. Both Plaintiffs Wheeler and Speegle wish to maintain possession of their FRTs, but fear they are at risk of civil and criminal prosecution for continued possession. The Individual Plaintiffs' prior or current conduct—possession or transfer of FRTs—is subject to enforcement on account of the ATF's broadened definition of machinegun.

In addition to the Individual Plaintiffs, other members of the Organizational Plaintiffs are also subject to enforcement under the ATF's broadened definition of machinegun. Formed in 2000, NAGR is a Virginia non-profit organization with its headquarters in Loveland, Colorado.[6] NAGR's purpose is to "preserve and defend the Second Amendment rights of gun owners."[7] It represents over 3,000 members in the Northern District of Texas alone.[8] Certain members of NAGR either already own FRTs or wish to acquire them but for the challenged ATF definition.[9] Since this case was filed, additional members of the Organizational Plaintiffs have reported receiving warning letters or other contact from the ATF regarding their FRTs.[10] Most notably, large Texas entities such as Rare Breed Triggers, LLC, Rare Breed Firearms, LLC, and their

---

[6] Pls.' Compl. 2, ECF No. 1.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] Pls.' Notice of Non-Compliance, ECF No. 98; Pls.' Reply in Support of Mot. for Prelim. Inj. 20, ECF No. 47 (describing declarations of Ryan Flugaur, Chris McNutt, and John Kordenbrock); *see also* Pls.' Reply App. 94, ECF No. 48 (Declaration of Ryan Flugaur); *id.* at 85–93, 95–98, 101–04 (Declarations of other NAGR Members).

**RE30**

respective officers, Lawrence DeMonico and Kevin Maxwell (the "Rare Breed Parties"), are also members of NAGR.[11]

Similarly, TGR is another non-profit corporation representing unnamed members in this lawsuit.[12] Its mission is "to protect the Second Amendment rights of its members, including protecting the liberty of individuals to defend themselves, their families, and their property without having to first ask government for permission."[13] Headquartered in Hudson Oaks, Texas, TGR represents over 14,000 members residing in the Northern District of Texas alone.[14] Among these members are those who own FRTs or wish to acquire them but for the challenged ATF definition.[15]

Fearing civil and criminal prosecution, Plaintiffs sue various government officers and entities—the Attorney General of the United States, the DOJ, the ATF, and the Director of the ATF (collectively, the "Defendants")—over the ATF's newly broadened definition and implementation of the machinegun regulation. In the instant action, Plaintiffs bring an APA challenge to the validity of Defendants' interpretation of the "machinegun" definition. According to Plaintiffs, this definition is unlawful because "Defendants' interpretation of the law and their specific actions to threaten and potentially initiate enforcement actions against Plaintiffs are thus arbitrary, capricious, and otherwise contrary to law."[16] To prevent unlawful agency action against them going forward, Plaintiffs seek declaratory judgment that Defendants' interpretation is unlawful and permanent injunctive relief to prevent Defendants from enforcing or otherwise

---

[11] Pl.'s Am. Mem. in Support of Mot. for Summ. J. 30–31, ECF No. 62.
[12] Pls.' Compl. 2–3, ECF No. 1.
[13] *Id.*
[14] *Id.*
[15] *Id.* at 3.
[16] *Id.* at 14.

implementing the novel definition.[17] And to remedy past harms, Plaintiffs also seek an order requiring the return of all FRTs seized by and surrendered to Defendants or, if destroyed, requiring compensation for the value of the lost property.[18]

### E.  Eastern District of New York's Preliminary Injunction

Shortly after this case was filed, a federal district court in the Eastern District of New York (the "E.D.N.Y. Court") granted a preliminary injunction in favor of Defendants in a similar lawsuit involving the ATF's definition as applied to FRTs (the "E.D.N.Y. Lawsuit" and "E.D.N.Y. Decision"). *United States v. Rare Breed Triggers, LLC*, No. 1:23-cv-00369-NRM-RML, 2023 WL 5689770 (E.D.N.Y. Sept. 5, 2023), *appeal filed*, No. 23-7276 (2d. Cir. Oct. 5, 2023). The E.D.N.Y. Lawsuit enjoined the Rare Breed Parties—along with their agents, officers, and employees—from "engaging in any sales of [various FRTs] and other machinegun conversion devices." *Id.* at *50. That injunction remains pending on appeal.

### F.  Procedural History

On August 30, 2023, this Court granted a temporary restraining order ("TRO") to the Individual Plaintiffs only.[19] Finding that the ATF's expanded definition of "machinegun" is likely unlawful, the TRO enjoined Defendants from implementing or enforcing, in any civil or criminal manner, the definition against the Individual Plaintiffs.[20] The TRO was narrow in scope, limiting temporary injunctive relief to the Individual Plaintiffs.[21] Due to agreed extensions, the TRO remained in place through October 7, 2023.[22]

---

[17] *Id.* at 15.
[18] *Id.*
[19] Aug. 30, 2024 Op. & Order on Pls.' Mot. for TRO, ECF No. 36.
[20] *Id.* at 27.
[21] *Id.* at 25.
[22] *See* Joint Mot. for Extension of Time 1–2, ECF No. 37 ("[T]he parties stipulate, under Federal Rule of Civil Procedure 65(b)(2), that the temporary restraining order shall apply until the earlier of September 30, 2023, or until such time that the Court rules on Plaintiffs' Motion for Preliminary Injunction."); Joint

**RE32**

24-10707.3671

On October 2, 2023, the Court conducted an evidentiary hearing to determine whether the TRO should extend throughout the life of the case.[23] As with the E.D.N.Y. Lawsuit, each party was permitted an expert witness to testify about the mechanics of FRTs.[24] Notably, the hearing made clear that there are no factual disputes regarding how FRTs work.[25] Instead, the hearing confirmed that the parties' dispute centers entirely on a legal question: whether FRTs qualify as machineguns under the statutory definition. Plaintiffs' expert, Daniel O'Kelly, testified that FRTs *do not* exhibit the attributes of a machinegun, as described by the statute. Defendants' expert, Anthony Ciravolo, testified that FRTs *do* exhibit those attributes. This live testimony mirrored the positions these same experts proffered during the two-day hearing in the E.D.N.Y. Lawsuit.[26] After hearing live testimony and reviewing the briefing, the Court granted Plaintiffs' Motion for Preliminary Injunction on October 7, 2024.[27]

Defendants appealed thirty days later pursuant to 28 U.S.C. § 1292(a)(1).[28] Simultaneous to filing an interlocutory appeal, Defendants moved for a stay of the preliminary injunction

---

Mot. to Reschedule Hr'g 1–2, ECF No. 43 ("The parties stipulate, under Federal Rule of Civil Procedure 65(b)(2), that the temporary restraining order shall apply until the earlier of October 7, 2023, or until such time that the Court rules on Plaintiffs' Motion for Preliminary Injunction."). The Court granted both motions. Aug. 31, 2023 Order, ECF No. 37; Sept. 14, 2023 Order, ECF No. 43.

[23] *See* Electronic Minute Entry, ECF No. 51 (describing the Court's hearing held on October 2, 2023). Just like the E.D.N.Y. Lawsuit, this Court heard expert testimony regarding how FRTs function. *See* Defs.' Resp. in Opp. to Mot. for Prelim. Inj. 24, ECF No. 39 (referencing the evidentiary hearing held in the E.D.N.Y. Lawsuit); *see also United States v. Rare Breed Triggers, LLC*, No. 1:23-cv-00369-NRM-RML, 2023 WL 5689770, at *8 (E.D.N.Y. Sept. 5, 2023) (referencing the evidentiary hearing held on August 1–2, 2023).

[24] Sept. 29, 2023 Order, ECF No. 50 (setting time limits and scope of expert testimony).

[25] *See* Tr. of Oct. 2, 2023 Hr'g 133, ECF No. 56 ("I think we agree on the way that [these] guns work. I think the disagreement is on how the statute is applied."). Even without the arguments and evidence from October 2, 2023 hearing, Defendants' briefing at every stage of this litigation makes clear that they agree to the basic facts of how the FRT device operates.

[26] *See generally* Tr. of Aug. 2, 2023 Hr'g, *United States v. Rare Breed Triggers, LLC*, No. 1:23-cv-00369-NRM-RML (E.D.N.Y. Jan. 19, 2023) (ECF No. 140).

[27] Oct. 7, 2024 Op. & Order on Pls.' Mot. for Prelim. Inj. 1, ECF No. 53.

[28] Defs.' Notice of Appeal, ECF No. 63.

**RE33**

24-10707.3672

pending the appeal.[29] To meet Defendants' request for a ruling within ten days, the Court ordered expedited briefing.[30] Finding that Defendants failed to show that the circumstances justified a stay of the preliminary injunction, the Court declined to do so.[31] The next day, Defendants asked the Fifth Circuit to enter an emergency stay until such time that the panel could evaluate the merits of the preliminary injunction.[32] The Fifth Circuit denied this request.[33]

Between the issuance of the preliminary injunction on October 7, 2023 and the Fifth Circuit deciding not to stay that relief on November 30, 2023, the Supreme Court granted certiorari in *Garland v. Cargill*. No. 22-976, 144 S. Ct. 374 (Nov. 3, 2023) (mem.). The same day, Plaintiffs sought summary judgment in this case.[34] Defendants similarly moved for summary judgment approximately one month later.[35] Although briefing on the cross-motions for summary judgment closed on January 12, 2024, the Court waited to consider these motions until after the Supreme Court's guidance in *Cargill* given that it would directly inform the merits of this case. The Supreme Court rendered its decision in *Cargill* on June 14, 2024, affirming the en banc Fifth Circuit.[36] *Garland v. Cargill*, 602 U.S. 406 (2024). As such, the cross-motions for summary judgment are ripe for consideration.

---

[29] Defs.' Mot. to Stay Prelim. Inj., ECF No. 64.
[30] Nov. 6, 2024 Order, ECF No. 66.
[31] Nov. 16, 2024 Order 13, ECF No. 73.
[32] Defs.' Emergency Mot. for Stay Pending Appeal, *Nat'l Assoc. for Gun Rights, Inc.. v. Garland*, No. 23-11138 (5th Cir. Nov. 17, 2023).
[33] Nov. 30, 2023 Order 7, *Nat'l Assoc. for Gun Rights, Inc. v. Garland*, No. 23-11138 (5th Cir. Nov. 30, 2023).
[34] Pls.' Mot. for Summ. J., ECF No. 60.
[35] Defs.' Cross-Mot. for Summ. J., ECF No. 79.
[36] Pls.' Notice of Suppl. Authority, ECF No. 97.

## II.     THRESHOLD ISSUES[37]

Defendants renew many of the same threshold issues raised at earlier stages in this litigation: standing and the veracity of pre-enforcement challenges.[38] This time, Defendants also emphasize that standing should be cabined just to possession and nothing more.[39] Before turning to the merits of the ATF's decision to classify FRTs as machineguns, the Court first addresses these threshold issues.

### A.  Individual Standing

Nothing in Defendants' third attempt to challenge standing contradicts the operative facts the Court relied upon when granting the TRO and the preliminary injunction.[40] Yet Defendants once again argue that the Plaintiffs lack standing because there is no credible threat of prosecution.[41] Throughout this lawsuit, Defendants have repeatedly refused to disavow prosecuting the Individual Plaintiffs and instead attempted to assuage concerns by stating there are no current plans to prosecute.[42] Even if true, this phrasing reveals the implicit threat that the Plaintiffs fear: the Defendants could change their *current* plans at any time by deciding to prosecute. That is why, as the Fifth Circuit makes clear, standing exists here. *See Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 376 (5th Cir. 2022) (emphasizing that "plaintiffs have standing in the face of similar prosecutorial indecision," including when an agency "has not to

---

[37] The threshold issues at this stage mirror those earlier in the litigation. Therefore, the Court's continues to stand on its prior analysis. *See* Oct. 7, 2024 Op. & Order on Pls.' Mot. for Prelim. Inj., ECF No. 53.

[38] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 8–14, ECF No. 81.

[39] *Id.* at 12–14.

[40] *See* Op. & Order on Pls.' Mot. for TRO 7–9, ECF No. 36 (finding that the Individual Plaintiffs successfully established standing); Op. & Order on Pls.' Mot. for Prelim. Inj., ECF No. 53 (same).

[41] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 8–14, ECF No. 81.

[42] Defs.' Reply Br. in Further Support of Cross-Mot. for Summ. J. 5, ECF No. 87 (stating that "ATF has been faithful to its representations that it has no *current intention* to take action against Individual Plaintiffs" (emphasis added)).

date evaluated" whether it will pursue enforcement); *see also Zimmerman v. City of Austin*, 881 F.3d 378, 391 (5th Cir. 2018) (explaining that standing in pre-enforcement challenges requires a showing "of an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute . . . as well as credible threat of prosecution").

Defendants disagree that they have engaged in indecision comparable to the government in *Franciscan Alliance*.[43] In that case, the government "repeatedly refused to disavow enforcement [of the rule at issue] against" the plaintiff and further represented that it had "'not to date evaluated' whether it will enforce [it] against [Plaintiffs]," effectively "conced[ing] that it may." *Franciscan All.*, 47 F.4th at 376. But this is precisely the same course that Defendants have followed in this case. No amount of unequivocal statements regarding "lack of intentions to take enforcement actions against Individual Plaintiffs" can change the fact that Defendants have twice refused—and *continue* their refusal—to disavow prosecution against these Plaintiffs given their lingering silence at the summary judgment stage.[44] And whether or not Defendants have taken "enforcement actions against any otherwise law-abiding individuals" likewise does not show that Defendants have determined their position.[45] All that Defendants have determined to do is recycle their empty guarantee today to those who may become subject to enforcement tomorrow. This "guarantee" falls short of a disavowal of enforcement, which demonstrates that Defendants "concede[] that [they] may" and have not sufficiently "determined [their] position" such that a credible threat of enforcement would no longer exist. *Franciscan All.*, 47 F.4th at

---

[43] *See* Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 11, ECF No. 81 (noting the "ATF's representations regarding its lack of intentions to take enforcement actions against Individual Plaintiffs").

[44] *Id.* at 9, 11.

[45] *Id.* at 11; *see also id.* at 9 ("Defendants have repeatedly explained that ATF's enforcement priorities have been focused on large-scale manufacturers and sellers of FRTs and those with criminal histories, not individual owners like Plaintiffs and their members.").

**RE36**

376. To the contrary, credible threats of enforcement continue to loom over Plaintiffs such that there is standing to sue.[46]

Applying Fifth Circuit precedent here, the Individual Plaintiffs successfully satisfy standing requirements. There is no dispute that the Individual Plaintiffs "inten[d] to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute." *Zimmerman*, 881 F.3d at 391. Each Individual Plaintiff currently possesses—or previously possessed—a newly proscribed FRT. What is disputed is whether engaging in the newly proscribed FRT ownership carries "a credible threat of prosecution." *Id.* Defendants liken the Plaintiffs' concern to no more "than a generalized threat of prosecution" that cannot support pre-enforcement relief, particularly because the ATF has no current "intentions to take enforcement actions against the Individual Plaintiffs."[47] The Court disagrees and instead finds that a sufficiently credible threat exists to establish standing.

By bringing this action, the Individual Plaintiffs place themselves in potential jeopardy due to acknowledging their possession of FRTs. *See Mock v. Garland*, No. 4:23-cv-00095-O, 2023 WL 6457920, at *8 (N.D. Tex. Oct. 2, 2023) (noting that the plaintiffs, by bringing their lawsuit, necessarily provided sensitive information to the ATF regarding their regulatory noncompliance and facilitating potential future prosecution based on that information). Despite Defendants' rejection of this reality based on the claim that law-abiding FRT owners have not been subject to prosecution,[48] this misunderstands the enforcement concern. To date, Plaintiff Carey has experienced armed ATF agents arriving at his home to warn that he could face

---

[46] Notably, it seems that the Fifth Circuit finds the government's refusal to fully disavow enforcement during litigation instructive. *See* Request for Supplemental Briefing at 1, *VanDerStok v. Garland*, No. 23-10718 (requesting the government answer whether it "intend[s] to enforce ATF's Final Rule pending appeal with respect to the parties in this case?").

[47] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 9, 11, ECF No. 81.

[48] Defs.' Reply Br. in Further Support of Cross-Mot. for Summ. J. 4, ECF No. 87.

14

**RE37**

prosecution by not surrendering his FRTs and by purchasing additional FRTs in the future.[49] Plaintiffs also cite to examples of enforcement activity, seizures, and search warrants carried out against other individual owners of FRTs, including new examples since the filing of this lawsuit.[50] Certain individuals have even faced prosecution.[51] These enforcement activities—even if not formal prosecution based only on FRT possession by otherwise law-abiding citizens— continues to breathe life into the Individual Plaintiffs' fears. At the end of the day, Defendants' classification decision treats FRTs as machineguns, which means that the ATF could turn its attention to law-abiding citizens at any moment. The factual record bears this out. As recently as June 20, 2024, Plaintiffs notified the Court of Defendants' continued contact with law-abiding FRT owners.[52]

Based on this record, Defendants certainly appear to be "chomping at the bit" to seize FRTs.[53] Further evidence of this is Defendants' refusal to disavow prosecuting the Individual Plaintiffs during the pendency of this case—the exact type of "prosecutorial indecision" that the Fifth Circuit has "repeatedly held" as more than enough to "have standing." *Franciscan All.*, 47 F.4th at 376. Given this flurry of recent enforcement activity—stemming from the same interpretation of the law that proscribes Plaintiffs' conduct here—and Defendants refusal to guarantee that no action will be taken against the Individual Plaintiffs pending disposition of this action, there is more than a specter of enforcement sufficient to confer standing. More to the point, the Court has now reached this conclusion *three* times. Even if Defendants' contention that

---

[49] Pls.' Am. Mem. in Support of Mot. for Summ. J. 12, ECF No. 62.
[50] Pls.' Compl. 11, ECF No. 1; Pls.' Am. Mem. in Support of Mot. for Summ. J. 9, ECF No. 62; Pls.' App. 294, ECF No. 62-1 (declaration of Ryan Flugaur); *see also* Pls.' Reply in Support of Mot. for Prelim. Inj. 20, ECF No. 47 (declarations of Ryan Flugaur, Chris McNutt, and John Kordenbrock). *id.* at 85–93, 95–98, 101–04 (declarations of other NAGR Members).
[51] Plaintiffs previously referenced earlier in this litigation the ATF's Official Notification showing multiple seizures of FRTs. Pls.' Reply App. 66, ECF No. 34.
[52] Pls.' Notice of Non-Compliance, ECF No. 98.
[53] Decl. of Michael Columbo, Pls.' Br. App. 9, ECF No. 62-1.

it "has been faithful to its representations that it has no current intention to take action against Individual Plaintiffs"[54] is true, this does not overcome the fact that a credible specter of enforcement hangs in the balance. The threat is not "imaginary or wholly speculative." *Susan B. Anthony*, 573 U.S. at 160. And even if Defendants' faithful adhere to its representations somehow lessen the threat today, those representations do not overcome the most important consideration for the standing inquiry: this threatened harm was present at the time this lawsuit was filed. *Energy Mgmt. Corp. v. City of Shreveport*, 397 F.3d 297, 301 n.3 (5th Cir. 2005) ("Standing is determined as of the time that suit is filed.") (citation omitted)).

Consequently, the Court finds—just as it did on two previous occasions—that the Individual Plaintiffs face a credible threat of civil or criminal prosecution for prior and current ownership of FRTs. This constitutes more than a *de minimis* harm to confer standing.

### B. Associational Standing[55]

The Court must also determine whether there is associational standing. When an organization seeks relief on behalf of its members, it must establish associational standing. *Hunt v. Wash. St. Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Defendants argue that the Organizational Plaintiffs fail to do so.[56] The associational standing doctrine permits a traditional membership organization "to invoke the court's [injunctive or declaratory] remedial powers on behalf of its members." *Warth v. Seldin*, 422 U.S. 490, 515 (1975). To establish associational

---

[54] Defs.' Reply Br. in Further Support of Cross-Mot. for Summ. J. 5, ECF No. 87.

[55] Justice Thomas recently suggested that the Constitution may impose some limits on associational standing. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 398–99 (2024) (Thomas, J., concurring) ("Associational standing, however, is simply another form of third-party standing. And, the Court has never explained or justified either doctrine's expansion of Article III standing. In an appropriate case, we should explain just how the Constitution permits associational standing."). Having reviewed the concerns articulated by Justice Thomas, the Court is satisfied that this case does not involve an attenuated connection between the Individual Plaintiffs and Organizational Plaintiffs. And the Organizational Plaintiffs have "arguably faced an injury of [their] own." *Id.* at 404.

[56] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 10–12, ECF No. 81.

standing, the organization must satisfy a three-prong *Hunt* test by showing that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2157 (2023) (quoting *Hunt*, 432 U.S. at 343). Finally, the Fifth Circuit has explained that, "[w]here the policy remains non-moribund, . . . the policy causes self-censorship among those who are subject to it" shows that "there is standing." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 336–37 (5th Cir. 2020).

Here, the Organizational Plaintiffs satisfy the three-prong *Hunt* test. First, NAGR and TGR both seek relief on behalf of their members.[57] Among these members are the Individual Plaintiffs, who have standing to sue for the reasons stated above.[58] Moreover, additional members of the Organizational Plaintiffs have received warning letters for their possession of FRTs, including a member within the Northern District of Texas.[59] And other unnamed members desired to purchase and own an FRT but for the ATF's classification of FRTs as illegal machineguns.[60] It is well established that a plaintiff does not need to "expose himself to liability before bringing suit." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007). "The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." *Id.* at 129. Thus, each Individual Plaintiff's prior or current possession of FRTs gives rise to a credible threat of civil or criminal prosecution that establishes "standing to sue in their own right," satisfying prong one of

---

[57] Pls.' Compl. 2–4, ECF No. 1.
[58] As another example, Plaintiff Wheeler has standing since he either owned or wished to own FRTs at the time the Complaint was filed. Pls.' Reply App. 7, ECF No. 85 (Flugaur Declaration) (identifying Plaintiff Wheeler as an example of an NAGR member with standing).
[59] Pls.' Compl. 3, ECF No. 1.
[60] Pls.' Reply App. 9, ECF No. 85 (McNutt Declaration).

the *Hunt* test. *See Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (recognizing the need to identify a member with standing for the "association to have standing to bring suit on behalf of its members" (cleaned up)).

Second, NAGR and TGR share similar organizational purposes that are clearly germane to this lawsuit challenging Defendants' asserted authority to classify and regulate FRTs as machineguns. NAGR's mission is "to preserve and defend the Second Amendment rights of gun owners."[61] Likewise, TGR's mission is "to protect the Second Amendment rights of its members, including protecting the liberty of individuals to defend themselves, their families, and their property without having to first ask government for permission and to push back on firearms-related licensing requirements."[62] And, third, because NAGR and TGR seek relief that is universal in character—vacatur and permanent injunctive relief—there is no need for all of their individual members to participate in the lawsuit.

Notwithstanding the Organizational Plaintiffs satisfying the *Hunt* test, Defendants once again challenge associational standing. This attempt falls flat for a third time. For starters, Defendants seek to impose more stringent standing requirements on the Organizational Plaintiffs. According to Defendants, Plaintiffs' members must have "received a warning letter at the relevant time" to have standing to sue.[63] But this misstates the law. To establish standing, a member of an Organizational Plaintiff must simply "intend to engage in a course of conduct arguably affected with a constitutional interest, but proscribed." *Zimmerman*, 881 F.3d at 391. Merely possessing or seeking to possess an FRT qualifies. Especially against the backdrop of the ATF's aggressive retrieval efforts, the absence of a personalized warning letter does not

---

[61] Pls.' Compl. 2, ECF No. 1.
[62] *Id.* at 2–3.
[63] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 11, ECF No. 81.

18

**RE41**

undermine the credible threat of enforcement facing Plaintiffs. Indeed, the record shows that ATF's enforcement policy "remains non-moribund" and is "caus[ing] self-censorship among those who are subject to it," the Court is satisfied that "there is standing." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 336–37 (5th Cir. 2020).

Defendants also contest that the Organizational Plaintiffs are "bona fide membership organizations empowered to seek relief on behalf of their members."[64] Again, Defendants get the law wrong. An association has standing when it has "traditional members," or, alternatively, exhibits "indicia of membership." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 n.9 (5th Cir. 2012) (citing *Hunt*, 432 U.S. at 344–45). Here, the Organizational Plaintiffs are traditional voluntary membership organizations.[65] NAGR's bylaws contain preset criteria for a bipartite membership structure comprised of voting and supporting members.[66] NAGR's supporting members are those who either make a financial contribution above a certain amount or have specified relationships with the organization.[67] These members are able to influence the policy direction of NAGR by voting on policy referendums put forward by the Board of Directors.[68] Likewise, TGR exhibits a comparable membership structure of voting and supporting members.[69] TGR's supporting members are similar to those in NAGR, as stated in the March 2023 Resolution of the Board of Directors of TGR, which means they also provide policy

---

[64] *Id.* at 12.
[65] Plaintiffs submitted declarations discussing the membership structure of each Organizational Plaintiff. While this responsive information satisfies the Court that Defendants' newest effort to challenge associational is unavailing, Defendants nevertheless point to an out-of-circuit case that found the submission of affidavits insufficient to provide insight regarding membership. Defs.' Reply Br. in Further Support of Cross-Mot. for Summ. J. 6, ECF No. 87 (citing *Viasat, Inc. v. FCC*, 47 F.4th 769, 782 (D.C. Cir. 2022)). In *Viasat*, the D.C. Circuit took issue with the affidavits only providing a "bare assertion of membership." 47 F.4th at 782. Even if this Court found *Viasat* persuasive, it nevertheless finds that such a characterization does not apply to the declarations in this case.
[66] Pls.' Reply App. 7–8, ECF No. 85 (Flugaur Declaration).
[67] *Id.* at 7–8.
[68] *Id.* at 8.
[69] Pls.' Reply App. 9, ECF No. 85 (McNutt Declaration).

input through certain referenda.[70] Because the Organizational Plaintiffs have predetermined membership structures set forth in either their guiding documents and Defendants do not otherwise dispute compliance with those guiding documents, the Court finds that NAGR and TGR are traditional voluntary membership organizations.[71]

Given these attributes, another factor to consider is how other courts have treated these particular organizations. *See Students for Fair Admissions, Inc.*, 37 F.4th at 1085 (considering both the organization's guiding documents and whether "every other court to consider the issue . . . [is] in agreement"). Applying the same approach as the Fifth Circuit here, it is noteworthy that other courts, including this one, previously found associational standing for these particular organizations. *See, e.g.*, *Nat'l Assoc. for Gun Rights v. Grisham*, No. 1:23-cv-00771-DHU-LF, 2023 WL 5951940, at *2 (D.N.M. Sept. 13, 2023) (describing NAGR as an organizational plaintiff bringing suit on behalf of its members); *Bevis v. City of Naperville*, 657 F. Supp. 3d 1052, 1061 (N.D. Ill. 2023) (finding NAGR has associational standing); *Texas Gun Rights, Inc. v. ATF*, No. 4:23-cv-00578-O, 2023 WL 8352316, at *2 (N.D. Tex. Oct. 4, 2023) (finding NAGR and TGR have associational standing).

Therefore, having assuaged this Court of their ability to represent members along with satisfying all three prongs of the *Hunt* test, the Court once again finds that the Organizational

---

[70] *Id.* at 9–10.

[71] Given this determination and because Defendants present no contrary evidence that the Organizational Plaintiffs "violated [their] own bylaws," the Court does not engage in an alternative analysis of whether or not the Organizational Plaintiffs otherwise exhibit "indicia of membership." *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1085 (5th Cir. 2022) (determining it unnecessary to conduct an indicia-of-membership analysis); *see also Friends of the Earth, Inc. v. Chevron Chem, Co.*, 129 F.3d 826, 827, 829 (5th Cir. 1997) (conducting an indicia-of-membership analysis after determining that the organization violated its own bylaws by merely treating "those who gave a donation" as its "members"). Even if the Court were to conduct the indicia-of-membership analysis, Plaintiffs would satisfy its requirements based on evidence that, among other things, members finance activities and "voluntarily associated themselves with [the organization]." *Friends of the Earth, Inc.*, 129 F.3d at 829.

Plaintiffs demonstrate associational standing. Accordingly, the Organizational Plaintiffs may pursue relief on behalf of their members.

### C.  Conduct Beyond Possession

Defendants also challenge standing as to any conduct beyond mere possession.[72] This is nonsensical. While "[s]tanding is not dispensed in gross," *Fontenot v. McCraw*, 777 F.3d 741, 746 (5th Cir. 2015) (citation omitted), and Plaintiffs "must demonstrate standing for each claim [they] seek[] to press," *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 430 (2017) (citation omitted), the Court finds no principled basis for distinguishing possession from manufacturing and selling. That is because possession of FRTs requires a fully functioning FRT market. Put differently, the manufacture, sale, and transfer of FRTs is a necessary precondition for possession by Plaintiffs who do not already own—but would own—FRTs without the ATF's classification decision. The Fifth Circuit already recognized as much *in this case*.[73] Without FRT manufacturers and sellers—both existing and would-be entities—the ability of Plaintiffs to possess FRTs is severely undermined. And this likely explains why the GCA criminalizes both "possession" *and* "transfer" of machineguns because these conduct categories are the two halves that form the whole. *See* 18 U.S.C. § 922(o) ("[I]t shall be unlawful for any person to transfer or possess a machinegun."). Thus, even if the Court previously focused most of its attention on individual possession at the TRO and preliminary injunction stages and even if the Organizational Plaintiffs lack any manufacturers or sellers within their membership,[74] this does

---

[72] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 12–14, ECF No. 81.

[73] *See* Nov. 30, 2023 Order 7, *Nat'l Assoc. for Gun Rights, Inc. v. Garland*, No. 23-11138 (5th Cir. Nov. 30, 2023) ("Plaintiffs must be able to acquire FRTs in order to use them.").

[74] Defendants contend that Plaintiffs "state, for the first time, that the Rare Breed Parties in the E.D.N.Y. Lawsuit are members of NAGR . . . at the summary judgment stage." Defs.' Reply Br. in Further Support of Cross-Mot. for Summ. J. 8, ECF No. 87. The Court disagrees. Plaintiffs plead in the Complaint under the section entitled, "Plaintiffs Face a Credible Threat of Enforcement," the search warrant executed

not change the reality that manufacturing and selling FRTs are part and parcel of broader FRT possession.[75]

Moreover, Defendants attempt to paint a picture that sellers are not implicated in this lawsuit by characterizing Plaintiffs "as private owners and associations whose members are private owners."[76] This is incorrect. Certain Plaintiffs (or their members) already manufacture or sell FRTs, such as Rare Breed Triggers, and others would like to do so, such as Plaintiff Wheeler.[77] Taking as true Defendants' representation that "enforcement priorities have been focused on large-scale manufacturers and sellers of FRTs,"[78] it follows that there is an even *more* credible threat to manufacturers sellers of FRTs. Indeed, Defendants have already taken legal action against one such entity, Rare Breed Triggers, for manufacturing and selling FRTs.[79] Defendants cannot have it both ways: on the one hand, claiming individual FRT owners are not

---

against the Rare Breed Parties as an example of enforcement "against one or more Plaintiffs." Pls.' Compl. 12, ECF No. 1. The Complaint is also full of references to the FRT-15 manufactured and sold by Rare Breed Triggers, along with the legal action taken against this commercial member. *Id.* at 3, 10, 11, 12. Even if Defendants are correct that Plaintiffs did not sufficiently identify the Rare Breed Parties as NAGR members in the Complaint, there simply is no obligation to do so. The Organizational Plaintiffs need not disclose at the time of filing each and every member by name. To impose such a requirement would completely erase associational standing. Unless and until the Supreme Court modifies associational standing, the Court will not accept Defendants' implicit invitation to deviate from prevailing doctrine.

[75] *See* Oct. 7, 2024 Op. & Order on Pls.' Mot. for Prelim. Inj. 14, ECF No. 53 (finding that "each Individual Plaintiff's prior or current possession of FRTs gives rise to a credible threat of civil or criminal prosecution that establishes standing to sue in their own right" as well as for purposes of associational standing).

[76] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 13, ECF No. 81.

[77] *See, e.g.*, Pls.' App. 1–2, ECF No. 62-1 (Wheeler declaration) (indicating a personal desire and intent to sell FRTs as the co-owner of a small business selling other firearms and ammunition).

[78] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 9, ECF No. 81.

[79] *See* Compl., *Rare Breed Triggers, LLC, et al.*, No. 1:23-cv-00369-NRM-RML (E.D.N.Y. Jan. 19, 2023) (ECF No. 1) (seeking injunctive relief to enjoin a commercial entity and related individuals from marketing FRT-15s as lawful weapons despite the ATF's contrary interpretation that FRTs are machineguns).

22

in danger for mere possession due to the ATF's focus on "sellers," and, on the other hand, claiming that selling is "far too 'speculative' to establish an injury."[80]

Therefore, the Court finds that standing exists for conduct beyond mere possession. Plaintiffs (or their members) already engage in the manufacturing and selling of FRTs and others would do so but for the ATF's classification decision.

### D. Pre-Enforcement Challenges

Once again, Defendants call into question the veracity of pre-enforcement judicial review of laws carrying criminal penalties.[81] Defendants have suggested throughout this lawsuit that allowing pre-enforcement review in this case would "ride roughshod across constitutional limitations on the judiciary's equitable powers to enjoin hypothetical future law enforcement action."[82] As the Court previously explained, the basic contours of Defendants' pre-enforcement contentions are true.[83] But it still remains that separation of powers does not preclude pre-enforcement judicial review of laws carrying criminal penalties. *See Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979) (emphasizing that a plaintiff facing "a credible threat of prosecution . . . should not be required to await and undergo a criminal prosecution as the sole means of seeking relief") (internal quotation marks omitted)); *see also Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) ("Although in regard to criminal statutes, courts are wary of . . . intervening prior to prosecution and foreshortening the prosecutor's action, courts have allowed pre-enforcement review of a statute with criminal penalties.").

---

[80] *Compare* Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 9, ECF No. 81 *with id.* at 14 (quoting *Lujan*, 504 U.S. at 560).

[81] *Id.* at 8–10.

[82] Defs.' Resp. in Opp. to Pls. Mot. for Prelim. Inj. 21, ECF No. 39.

[83] Aug. 30, 2024 Op. & Order on Pls.' Mot. for TRO 9, ECF No. 36.

To begin, Defendants still do not retract from their previous averments that certain safeguards weigh in favor of no pre-enforcement intervention by the judicial branch.[84] "This runs afoul of multiple Supreme Court decisions. *See, e.g.*, *Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that [a plaintiff] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) ("When an individual is subject to such a threat [of enforcement of a law], an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law."). And that is to say nothing of the potential harm that such insulation from pre-enforcement judicial review would likely cause individuals subject to prosecution. Without access to courts to bring pre-enforcement challenges, vulnerable citizens may surrender the ability to promptly challenge unlawful executive branch actions. This cannot be.

Defendants concede that a narrow exception exists for "vindcat[ing] *constitutional* rights" alone.[85] But Defendants offer little support for this bold proposition. One of the cases Defendants cite in an effort to shore up their position is *Stolt-Nielsen v. United States*, 442 F.3d 177 (3d Cir. 2006), *as amended* (May 16, 2006).[86] According to the Third Circuit in *Stolt-Nielsen*, the district court lacked the authority to enjoin executive branch officials from filing an indictment because the plaintiffs had access to a federal forum post-indictment. *Id.* at 187. The Third Circuit only recognized the narrow exception for chilled constitutional rights. *Id.* To be sure, *Stolt-Nielsen* contains broad language consistent with Defendants' position that pre-enforcement review of future enforcement is only available where constitutional rights are at stake. But a comparison

---

[84] *See generally* Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 8–10, ECF No. 81.
[85] *Id.* at 28.
[86] *Id.* at 29.

with the issue in this case renders that language unpersuasive. In *Stolt-Nielsen*, the plaintiff sued to enforce a conditional leniency agreement that the government purported to revoke as a consequence of plaintiff's behavior. *Id.* at 179–80. This was a fundamentally individualized determination rather than a review of a generally applicable administrative action. And this distinction is key. The stakes for Plaintiffs are of a comparable gravity to situations in which constitutional rights are violated: unlawful executive action that leadings to the deprivation of a liberty interest.

Furthermore, the APA does not prohibit pre-enforcement judicial review. Under the APA, federal courts have the authority to review challenges to agency actions on a pre-enforcement basis.[87] To be sure, Defendants are correct that this authorization does not expand the Court's jurisdictional beyond tradition limitations.[88] *See* 5 U.S.C. § 702 ("Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought."). But permissible challenges nevertheless include an endless variety of agency actions that are "otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Notably, judicial review of agency actions that may be "contrary to constitutional right, power, privilege, or immunity . . . [or] in excess of statutory jurisdiction, authority, or limitations," *id.* § 706(2)(B)–(C), is cumulative under the arbitrary-and-capriciousness standard, which "governs review of *all* proceedings that are subject to challenge under the APA." *Menkes v. DHS*, 637 F.3d 319, 330 (D.C. Cir. 2011) (citing *Consumers Union of U.S., Inc. v. FTC*, 801

---

[87] *See generally* Kathryn Kimball Mizelle, *To Vacate or Not to Vacate: Some (Still) Unanswered Questions in the APA Vacatur Debate*, 38 HARV. J.L. & PUB. POL'Y PER CURIAM 1, 12–13 (2022) (discussing vacatur on a pre-enforcement basis).
[88] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. 29, ECF No. 81.

F.2d 417, 422 (D.C. Cir. 1986)). Thus, "[i]n *all* cases" of judicial review under § 706, "agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413–14 (1971) (citing 5 U.S.C. § 706(2)(A)–(D)) (emphasis added). This is also consistent with the Supreme Court's emphasis that the APA's "'generous review provisions' must be given a 'hospitable' interpretation." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140–41 (1967) (quoting *Shaughnessy v. Pedreiro*, 349 U.S. 48, 51 (1955)).

Even so, Defendants reject this broad statutory authorization of judicial review for a third time, suggesting that the APA's general conferral of authority to review certain agency actions and to grant interim relief has no bearing on whether the injunctive relief sought here is available.[89] Once again, this bold statement lacks any direct support. Not only that, Defendants' interpretation also runs counter to the text of the APA itself. The APA's text refers to "mandatory or injunctive decree[s]" issued thereunder. 5 U.S.C. § 702. The import of this text is that injunctive relief is available under the APA without any express limitation precluding the availability of such relief on a pre-enforcement basis. Moreover, the text of § 702 makes clear that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action" is "entitled to judicial review thereof." *Id.* And the APA expressly provides that criminal proceedings are *included* in such review. *Id.* § 703. This ability to obtain an appropriate remedy is not contingent on the person being subject to existing enforcement. To the contrary, the APA recognizes judicial authority to "issue all necessary and appropriate

---

[89] *Id.* at 29–30.

**RE49**

process . . . to preserve status or rights" from "irreparable injury" caused by agency action.[90] *Id.* § 705. Indeed, the APA's explicit textual entitlement would be undermined by an interpretation that § 702 confers no right to obtain meaningful equitable relief on a pre-enforcement basis when wronged by agency action. Provided that the claim is justiciable, the APA's broad entitlement to judicial review is not limited in the way Defendants portray.

Based on the text, the APA empowers courts with specific authority to "hold unlawful and set aside agency action, findings, and conclusions found to be" unlawful without subjecting that authority only to post-enforcement situations. *Id.* § 706. This is the only reading of the text that gives "a 'hospitable' interpretation" to the APA's "'generous review provisions.'" *Abbott Lab'ys*, 387 U.S. at 140 (quoting *Shaughnessy*, 349 U.S. at 51). It also tracks with the important purpose the APA serves. *See Franciscan All.*, 47 F.4th at 378 ("[A]n agency 'literally has no power to act . . . unless and until Congress authorizes it to do so by statute.'" (quoting *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1649 (2022)).

James Madison warned that "[t]he accumulation of all powers, legislative, executive and judiciary, in the same hands . . . may justly be pronounced the very definition of tyranny." THE FEDERALIST NO. 47, at 301 (James Madison) (Clinton Rossiter ed. 1961). The crux of this case is that the executive branch has improperly usurped legislative authority by enacting criminal prohibitions that are beyond the scope of its legislatively granted authority. Now, Defendants seek to arrogate unto themselves the judicial authority as well by placing their actions beyond the reach of pre-enforcement judicial review. This is not and cannot be.

To be sure, the constitutional check of judicial review is an essential component of separation-of-powers principles to oblige another branch to control itself. *See* THE FEDERALIST

---

[90] *See generally* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933, 1012–17 (2018) (explaining that, although the power of judicial review is not akin to an executive veto, the APA expressly grants courts additional authority to review agency action).

**RE50**

24-10707.3689

No. 78, at 380 (Alexander Hamilton) (Dover ed., 2014) ("There is no position which depends on clearer principles, than that every act of a delegated authority, contrary to the tenor of the commission under which it is exercised, is void."). And this remains just as important today as it was at the Founding. Not only would Defendants have this Court ignore decades of Supreme Court precedent and the APA's plain textual authorization of judicial review, they would also have this Court twist the foundational value of separation of powers into something it is not. The Court declines this invitation for the second time. Instead, the Court finds that it possesses both constitutional and statutory authority to review pre-enforcement challenges to agency action with criminal consequences and it does so here.

*     *     *     *     *

Accordingly, finding no bar to the authority to afford equitable relief to Plaintiffs, the Court proceeds with its analysis of the merits.

## III.   LEGAL STANDARDS

### A.  Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[A] material fact is genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotations omitted). "[T]he substantive law will identify which facts are material[,]" and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

A party seeking summary judgment must inform the court of the basis for its motion and identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing summary judgment must then set forth specific facts showing that there is a genuine issue for trial. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). "If reasonable minds could differ as to the import of the evidence," then the court should deny the motion. *Anderson*, 477 U.S. at 250. Here, the questions before the Court are of a purely legal nature and contain no fact disputes.

### B.  The APA

The APA "authorizes suit by '[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute.'" *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61 (2004) (quoting 5 U.S.C. § 702). Disputes arising under the APA are commonly resolved on summary judgment, where district courts sit as an appellate tribunal to decide legal questions on the basis of the administrative record. *Amin v. Mayorkas*, 24 F.4th 383, 391 (5th Cir. 2022). Upon review of agency action, the APA requires the district court to "hold unlawful and set aside agency action" found to be "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [and] (D) without observance of procedure required by law." 5 U.S.C. § 706(2)(A)–(D). Once a court determines the contested agency action falls short of the APA's substantive or procedural requirements, the reviewing court "shall" set aside the unlawful agency action. *Id.*; *Data Mktg. P'ship v. U.S. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022).

Among other procedural requirements, the APA requires agencies to provide "legislative" rules (*i.e.*, substantive regulations) for public notice and comment, 5 U.S.C. § 553(b), and to ensure that the final version of such a rule is a "logical outgrowth" of the agency's initial regulatory proposal. *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 447 (5th Cir. 2021). The APA's arbitrary and capricious standard requires that agency action be both "reasonable and reasonably explained," *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). This means that agencies must not "rel[y] on factors which Congress has not intended it to consider" or "entirely fail[] to consider an important aspect of the problem" when issuing regulations. *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

The APA instructs courts to "hold unlawful and set aside agency action . . . found to be . . . "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Likewise, this same instruction applies to other agency action, including that which is "in excess of statutory jurisdiction, authority, or limitations." *Id.* § 706(2)(C). Judicial review of agency actions "contrary to constitutional right, power, privilege, or immunity" or "in excess of statutory jurisdiction, authority, or limitations," *id.* § 706(2)(B)–(C), are cumulative under the arbitrary and capriciousness standard, which "governs review of *all* proceedings that are subject to challenge under the APA." *Menkes v. DHS*, 637 F.3d 319, 330 (D.C. Cir. 2011) (citing *Consumers Union of U.S., Inc. v. FTC*, 801 F.2d 417, 422 (D.C. Cir. 1986)). Thus, "[i]n *all* cases" of judicial review under Section 706, "agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, *or* constitutional requirements." *Citizens to*

30

*Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 413–14 (1971) (citing 5 U.S.C. § 706(2)(A)–(D)) (emphases added).

In APA cases challenging agency action, summary judgment "serves as the mechanism for deciding" whether the action "is supported by the administrative record and otherwise consistent with the APA standard of review." *Gadhave v. Thompson*, 2023 WL 6931334, at *1 (N.D. Tex. Oct. 19, 2023) (citation omitted). The agency resolves "factual issues to arrive at a decision that is supported by the administrative record," and the district court applies the APA standards of review to determine whether, as a matter of law, "the evidence in the administrative record permitted the agency to make the decision it did." *Yogi Metals Grp. Inc. v. Garland*, 567 F. Supp. 3d 793, 797–98 (S.D. Tex. 2021), *aff'd*, 38 F.4th 455 (5th Cir. 2022) (citation omitted). Such cases generally involve pure questions of law, with the district court functionally operating as an appellate tribunal over the agency. *MRC Energy Co. v. U.S. Citizenship & Immigr. Servs.*, No. 3:19-cv-2003-K, 2021 WL 1209188, at *3 (N.D. Tex. Mar. 31, 2021).

## IV.   ANALYSIS[91]

Plaintiffs contend that the ATF's broadened view of the machinegun definition as applied to FRTs is an unlawful expansion of the agency's authority.[92] Plaintiffs are correct. Because there is no genuine dispute regarding material facts and statutory interpretation is a question of law, the Court concludes that the ATF exceeded its statutory authority by expanding definition of machinegun and subsequently classifying FRTs as machineguns.

### A. Administrative Record

---

[91] The Court's discussion of facts concerning the basic mechanical operation of FRTs is drawn from (1) the administrative record, (2) the pleadings, and (3) the October 2, 2023 hearing.
[92] Pls.' Compl. 15, ECF No. 1.

In reviewing a final agency action under the APA, "the court shall review the whole record or those parts of it cited by a party." 5 U.S.C. § 706. "The focal point for judicial review" of an administrative agency's action "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). A court must "apply the appropriate APA standard of review to the agency decision based on the record the agency presents to the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (citation omitted). As such, review is limited to the administrative record that existed before the agency at the time of the decision. *See, e.g., id.* (explaining that a court's "factfinding capacity" is "typically unnecessary to judicial review" in an APA case). Only "in rare circumstances" is a court empowered "to conduct de novo inquiry into an agency's action." *Sierra Club v. Peterson*, 185 F.3d 349, 369 (5th Cir. 1999) (quoting *Fla. Power & Light Co.*, 470 U.S. at 744), *vacated on other grounds on reh'g*, 228 F.3d 559 (5th Cir. 2000).

Defendants argue that "the Court should decline to consider . . . materials outside the administrative record—including those presented at the preliminary injunction hearing—in support of the merits of [Plaintiffs'] claims."[93] Plaintiffs respond that limiting review in this way is inappropriate for a variety of response. One of those reason is that at least one exception to the general record requirement applies given the nature of the claims presented and the fact that Plaintiffs, along with the entire public at large, played no role whatsoever in producing or contributing to the administrative record.[94] The Court agrees with Plaintiffs.

---

[93] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 7, ECF No. 81.
[94] Pls.' Combined Br. in Resp. to Defs.' Cross-Mot. for Summ. J & Reply in Support of Mot. for Summ. J. 3, ECF No. 84.

Courts in the Fifth Circuit routinely allow supplementation of the administrative record when certain circumstances are present: (1) when the agency action is not adequately explained in the record, (2) when the agency failed to consider factors which are relevant to its final decision, (3) when an agency considered evidence which it failed to include in the record, (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly, (5) where evidence arising after the agency action shows whether the decision was correct or not, (6) where agencies are sued for a failure to take action, (7) when a case arises under the National Environmental Policy Act, or (8) where relief is at issue. *Davis Mts. Trans-Pecos Heritage Ass'n v. U.S. Air Force*, 249 F. Supp. 2d 763, 776 (N.D. Tex. 2003) (citation omitted), *vacated sub nom. on other grounds*, *Davis Mts. Trans-Pecos Heritage Ass'n v. FAA*, 116 F. App'x 3 (5th Cir. 2004).[95] The extra-record evidence at issue in this case fits comfortably in more than one of these categories—namely, scenarios (2), (4), and (5).

The second and fifth circumstances are closely related. In the second scenario, a court may consider relevant factors that the agency did not take into account when making its final decision. "Whether an agency considered all relevant factors 'can sometimes only be determined by looking outside the record to see what the agency may have ignored.'" *Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-cv-00007, 2023 WL 2842760, at *3 (S.D. Tex. Apr. 7, 2023) (quoting *City of Dall. v. Hall*, Case Nos. 3:07-CV-0060-P, 3:07-CV-0213-P, 2007 WL 3257188, at *4 (N.D. Tex. Oct. 29, 2007)). That is the case here. There was no public comment period during

---

[95] These eight circumstances fit within the three broad categories outlined by the Fifth Circuit: "(1) the agency deliberately or negligently excluded documents that may have been adverse to its decision, . . . (2) the district court needed to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors, or (3) the agency failed to explain administrative action so as to frustrate judicial review." *Medina Cnty. Envir. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 706 (5th Cir. 2010) (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)). *Medina* was not "a sea change in this circuit's law on extra-record evidence." *Gulf Coast Rod Reel & Gun Club, Inc. v. U.S. Army Corps of Engineers*, No. 3:13-cv-126, 2015 WL 1883522, at *3 (S.D. Tex. Apr. 20, 2015).

which Plaintiffs, or anyone else, could weigh in and correct errors in the agency's administrative process as it relates to FRT operation. Rather, Defendants classified FRTs as "machineguns" based entirely on their own analysis and on a record of their own making. The extra-record information reflects documentation that is adverse to the agency's determination and reveals "factors which are relevant to [the ATF's] final decision." *Davis Mts. Trans-Pecos Heritage Ass'n*, 249 F. Supp. 2d at 776. Likewise, in the fifth scenario, testimony from each side's expert concerning how FRTs operate supplies "evidence arising after the agency action [that] shows whether the decision was correct or not." *Id.* Both of these concerns raise questions as to whether "the agency deliberately or negligently excluded [evidence] that may have been adverse to its decision." *Medina*, 602 F.3d at 706.

Even if neither of the above circumstances applies in this case, information outside of the administrative record that provides "background information" regarding the functioning of an FRT is proper to consider. *Davis Mts. Trans-Pecos Heritage Ass'n*, 249 F. Supp. 2d at 776. To be sure, the mechanical operation of an FRT is an issue sufficiently "complex that a court needs more evidence to enable it to understand the issues clearly" and how these particular devices operate. *Id.* Defendants argue that reliance on any extra-record evidence regarding "the functionality of FRTs and whether those devices are properly deemed 'machineguns' . . . goes to key issues on the merits . . . and cannot be considered mere 'background information.'"[96] But just as the E.D.N.Y. Court deemed expert testimony necessary to understand how FRTs function before it could make a ruling, this Court similarly requested expert testimony at the preliminary

---

[96] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 4, ECF No. 81.

injunction hearing.[97] All questions of law—here, the straightforward application of *Cargill*—are not based on extra-record evidence.

Finally, the record rule does not apply to the Court's review of certain issues separate from the merits. For instance, consideration of extra-record evidence is appropriate to evaluate standing. *Texas v. U.S. Dep't of Homeland Sec.*, No. 6:23-cv-00007, 2023 WL 2842760, at *2 (S.D. Tex. Apr. 7, 2023) (Tipton, J.). This makes good sense given the importance of ascertaining whether a plaintiff has standing to proceed before deciding the merits. Likewise, "the record rule also does not limit the evidence this Court can consider when determining the propriety of injunctive relief." *Texas v. Biden*, 2:21-cv-00067-Z, 2021 WL 4552547, at *3 (N.D. Tex. July 19, 2021). The reason for this exception is because "'injunctive relief is generally not raised in the administrative proceedings below and, consequently, there usually will be no administrative record developed on these issues.'" *Id.* (quoting *Eco Tour Adventures, Inc. v. Zinke*, 249 F. Supp. 3d. 360, 369 n.7 (D.D.C. 2017)). It is for this very reason the Court previously considered extra-record evidence at the TRO and preliminary injunction stages notwithstanding Defendants' objections.[98]

Upon closer examination, Defendants' record-rule arguments are little more than a thinly veiled backdoor effort to import *Chevron*-style deference into this case. True, Defendants have "never claimed that *Chevron* deference applies in this case" directly.[99] But by limiting review to the administrative record, the functional result is the equivalent of *Chevron* deference. Following

---

[97] *See* Defs.' Resp. in Opp. to Mot. for Prelim. Inj. 24, ECF No. 39 (referencing the evidentiary hearing held in the E.D.N.Y. Lawsuit)

[98] *See, e.g.*, *id.* at 4 n.2, ECF No. 39 ("Defendants do not concede . . . the propriety of Plaintiffs' reliance on evidence outside the administrative record to contest the merits.").

[99] *Id.* at 4. Until recently, *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.* required courts to bestow significant deference to an administering agency's interpretation of a statute, even if the court would read that statute differently. 467 U.S. 837, 843 (1984); *see also Loper Bright Enters.*, 144 S. Ct. at 2270 ("*Chevron* has proved to be fundamentally misguided.").

the Supreme Court's recent decision in *Loper Bright Enterprises v. Raimondo*, a court may not

defer to an agency's interpretation of the law—even an ambiguous law—given the APA's

requirement that "court must exercise independent judgment." 144 S. Ct. 2244, 2262 (2024). To

allow such an artificially constrained review of the record here, this Court would functionally

defer to Defendants' factual and legal determinations, which were made without any opportunity

for input or challenge from Plaintiffs and the broader public. This is particularly problematic

when the agency's interpretation of the NFA and GCA could result in criminal penalties.

Plaintiffs aptly illustrate why this is so:

> [I]magine that, instead of machineguns, Defendants were classifying fruits.
> Imagine further that Defendants decided to evaluate an orange and in doing so, on
> their own and with no public input, determined that the orange is really a potato.
> Under Defendants' view of the world, there would be no mechanism for
> challenging Defendants' classification, even though it is plainly wrong, because
> there is nothing in the administrative record that says differently.[100]

This is not and cannot be correct. If it were, one need not exert much energy to imagine the

abuses that could result.

Finally, even if this Court is incorrect to consider materials outside of the administrative

record, the record-rule conclusion reached in this opinion does not change. That is because

Defendants' briefing does not appear to dispute the key facts: (1) the ATF made a final

determination to classify FRTs as "machineguns,"[101] (2) the trigger moves forward into its reset

state and is depressed to release the hammer from its sear surface for every round fired,[102] (3) the

---

[100] Pls.' Combined Br. in Resp. to Defs.' Cross-Mot. for Summary J. 3, ECF No. 84.

[101] Defendants do not appear to contest this fact at all. *See generally* Defs.' Reply Br. in Further Support of Cross-Mot. for Summ. J. 11, ECF No. 87 (repeatedly referring to the ATF's "classification decision" of FRTs as machineguns without once arguing this is not final agency action).

[102] *Id.* at 11 (describing the administrative record and acknowledging that "the purported 'forced reset' push[es] the trigger forward." (quoting ATF FRT-15 Classification Report, Apr. 27, 2023 (AR246)); *see also* Pls.' App. 67, 529–32, ECF No. 62-1 (noting the trigger moves forward into its reset state and depresses to release the hammer from its sear surface for each round fired).

trigger in an FRT-equipped firearm must reset after every round fired,[103] and (4) a shooter who attempts to prevent the reset by holding the trigger in a fully depressed position will cause the weapon to malfunction.[104] These facts can be drawn from the administrative record alone and demonstrate that an FRT-equipped firearm must function for each and every round fired.[105] The live testimony during the preliminary confirmed the lack of any such dispute regarding the material facts.

---

[103] Defs.' Reply Br. in Further Support of Cross-Mot. for Summ. J. 10, ECF No. 87 (claiming that "movement does not equate to function" despite "the fact that the trigger shoe on an FRT-equipped firearm automatically moves back and forth (i.e., resets)"); *id.* at 11 (acknowledging "the fact that the trigger forcibly resets and thus moves back and forth when subject to a single continuous pull of the trigger"); *see also* Pls.' App. 67–68, 532–33, ECF No. 62-1 (noting the trigger in an FRT-equipped firearm must reset after every round that is fired).

[104] Defendants do not appear to contest this fact at all. If anything, Defendants' suggest agreement. *See* Defs.' Reply Br. in Further Support of Cross-Mot. for Summ. J. 11, ECF No. 87 (stating that an FRT-equipped weapon will "continue[] to fire until the finger is removed from the trigger, the weapon malfunctions, or the ammunition is exhausted" (ATF FRT-15 Classification Report, Apr. 27, 2023 (AR246)); *see also* Pls.' App. 533, ECF No. 62-1 (noting that the weapon will malfunction if the shooter attempts to overcome the reset by holding the trigger in a fully depressed position).

[105] Because the Court determines that it may properly consider extra-record evidence in this case given that the circumstances fall within at least one of the previously recognized exceptions, the Court need not reach Plaintiff's additional arguments regarding the *ultra vires* exception. Pls.' Combined Br. in Resp. to Defs.' Cross-Mot. for Summ. J & Reply in Support of Mot. for Summ. J. 3–4, ECF No. 84. Nor does the Court need to reconcile whether Plaintiff should have filed a motion to supplement the administrative record, as Defendants suggest. Defs.' Reply Br. in Further Support of Cross-Mot. for Summ. J. 2–3, ECF No. 87. Or whether Defendants should have filed a motion to strike, as Plaintiffs suggest. Pls.' Combined Br. in Resp. to Defs.' Cross-Mot. for Summ. J & Reply in Support of Mot. for Summ. J. 3, ECF No. 84. Neither party cites a case that requires either party to take some *affirmative* step with respect to this issue. And the Court was unable to locate such a case from its own research. Therefore, this issue rests within the sound discretion of the Court whether to permit the extra-record evidence or to disregard it.

### B.  Statutory Interpretation in *Cargill*[106]

The Court does not begin its statutory analysis on a blank slate. Rather, the Court's analysis is informed by the reasoning employed by a plurality of judges in the Fifth Circuit concerning the exact statutory language at issue here. *Cargill*, 57 F.4th at 458–64. Critically, this plurality's statutory interpretation was recently affirmed by the Supreme Court. *Cargill*, 602 U.S. at 410. As the Supreme Court agreed, a weapon that qualifies as a machinegun under § 5845(b) of the NFA must be capable of (1) firing multiple rounds by a single function of the trigger and (2) do so automatically. *Id.* at 415. In other words, the NFA unambiguously defines a machinegun as a weapon that fires automatically once the *trigger* performs a single function. *Id.* at 410–11, 415. The statutory text grammatically links the definition to the movement of the trigger. *See id.* at 422 ("The statutory definition instead hinges on how many shots discharge when the shooter engages the trigger."). *Cargill* underscores that the definition is solely concerned with the mechanical operation of the trigger rather than the actions of the user. *Id.* As a result, which firearms qualify as machineguns turns entirely on the movement of the trigger itself rather than the trigger finger. *Id.* (emphasizing that "§ 5845(b) does not define a machinegun based on what type of human input engages the trigger"). Based on this, *Cargill*

---

[106] *Cargill* also discussed the relevance of deference under *Chevron*. 57 F.4th at 456–57. The Court recognizes that the ATF does not receive interpretive deference under *Chevron* following *Loper Bright*. 144 S. Ct. at 2273 ("*Chevron* is overruled."). And even if *Loper Bright* left open any application of *Chevron*-style or similar deference, the Court has previously explained at earlier stages of this litigation how such deference would not apply here. For instance, the Step Zero command that interpretive rules—which the ATF's broadened machinegun definition appears to be—are not eligible for *Chevron* deference. *United States v. Mead Corp.*, 533 U.S. 218, 232 (2001). Even assuming otherwise, *Chevron* deference would still not apply for at least two reasons. First, the Court has found the statutory definition to be unambiguous. *See, e.g.*, *Western Refining Southwest, Inc. v. FERC*, 636 F.3d 719, 727 (5th Cir. 2011) ("[I]f the statute's text is unambiguous, we need not proceed to Step Two of *Chevron*."). Additionally, "[t]he Supreme Court has never held that the Government's reading of a criminal statute is entitled to any deference." *Cargill*, 57 F.4th at 466–67 (cleaned up).

rejected the ATF's regulatory interpretation of "machinegun" because it exceeded the agency's statutory authority in violation of the APA. *Id.* at 415.

*Cargill* emphatically rejected the ATF's interpretation of machinegun set forth in § 479.11. As *Cargill* explained, the ATF's expanded definition was aimed at criminalizing the manufacture, sale, and possession of bump stocks following the tragic Las Vegas shooting. *Id.* at 412. Similar to FRTs, a bump stock is an accessory that attaches to a semi-automatic weapon to increase the rate of fire. *Id.* at 411–12. By harnessing the firearm's natural recoil to quickly reengage the trigger, a skilled shooter utilizing this "bump firing" technique can rapidly fire multiple rounds. *Id.* Yet despite this increase in firing speed, *Cargill* determined that bump stocks are not machineguns because the device does not meet both elements of the statutory definition: (1) capable of firing multiple rounds by a single function of the trigger and (2) operate automatically. *Id.* at 415.

As the Supreme Court's statutory interpretation makes clear, a "single function of the trigger" means what it says: a single function of the *trigger*. It does not mean a single pull by the shooter or some analogous motion. *Id.* at 421–22. In fact, the word "pull" is not found anywhere in the statutory definition. The only place "pull" exists is in the ATF's broadened regulatory definition interpreting the statute. *See* 27 C.F.R § 479.11 (2018) ("'[S]ingle function of the trigger' means a single pull of the trigger[.]"). But according to *Cargill*, the statutory definition unambiguously turns on the movement of the trigger and not a trigger finger. *Cargill*, 602 U.S. at 422. Indeed, the statute does not say "by a single *pull* of the trigger." Nor does it say "by single function of the trigger *finger*." Rather, the best reading of the statutory definition is that after the shooter initiates the trigger's relevant function by some action—such as pulling the trigger or some other action by the user—it is the follow-on action of the trigger acting out its mechanical

purpose that informs the operative "function." Based on this reasoning, accepting Defendants'
suggestion that "function" is synonymous with "pull" would impermissibly read words into the
statute.[107] To do so would directly contradict the statutory definition and *Cargill*'s holding.

"Function" and "pull" are *not* synonymous. The former is based on a mechanical
perspective whereas the latter is based on the shooter's perspective. *Cf. Cargill*, 602 U.S. at 416
("The phrase 'function of the trigger' thus refers to the mode of action by which the trigger
activates the firing mechanism."). Even if Defendants are correct to interpret "single function of
the trigger" as referring to "single pull of the trigger," they must still satisfy the second
definitional requirement: "automatically." 26 U.S.C. § 5845(b). Importantly, the statutory
definition does not endorse an isolated reading of this second requirement. Rather, "the phrase
'by a single function of the trigger' modifies the adverb 'automatically.'" *Cargill*, 57 F.4th at
463. That is because "automatically" is understood as limited by the "single function of the

---

[107] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for
Summ. J. 14–15, ECF No. 81 (citing *Staples v. United States*, 511 U.S. 600, 602 n.1 (1994)). Although
*Staples* uses the same terms as Defendants—"release" and "pull" of the trigger—in a footnote discussing
the characteristics of a machinegun, the Court determines that the holding in *Staples* is not applicable to
these facts. First, *Staples* involved a different context than the one before this Court. *Staples*, 511 U.S. at
602 n.1. The Supreme Court addressed the government's burden of proof regarding a *mens rea* question
about an individual's knowledge that he possessed an unregistered machinegun. *Id.* at 604–05. Not only
was a specific semi-automatic accessory like an FRT or bump stock not before the Court, but the footnote
in *Staples* only unpacks the meanings of "automatic" and "fully automatic." *Id.* at 602, 602 n.1. That is
because the statutory definition at issue in the instant case was not before the *Staples* Court, making an
analysis of *both* required statutory elements—(1) automatic and (2) single function of the trigger—
unnecessary. The Supreme Court did not—and did not need to—address how "single function of the
trigger" modifies "automatically" in order to answer the question before it. However, this question
regarding the interplay of the two required elements was directly addressed in *Cargill*. Therefore, the
footnote containing the terms "release" and "pull" in *Staples* does not constitute a binding holding of the
Supreme Court. *See Webster v. Fall*, 266 U.S. 507, 511 (1924) ("Questions which merely lurk in the
record, neither brought to the attention of the court nor ruled upon, are not to be considered as having
been so decided as to constitute precedents."); *see also District of Columbia v. Heller*, 554 U.S. 570, 625
n.25 (2008) (refusing to follow statement in previous decision characterized as "dictum" because "the
point was not at issue and was not argued"); *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) ("[S]ince
we have never squarely addressed the issue, and have at most assumed [it], we are free to address the
issue on the merits.").

trigger" clause. *Id.* On its own, "automatically" simply means that firing "maintain[s] if all a shooter does it initially pull the trigger." *Id.* This alone is insufficient to qualify as a machinegun.

Moreover, Defendants read too much into mechanical versus non-mechanical bump stocks. In Defendants' view, the Fifth Circuit suggested the outcome depends on whether the device is a mechanical bump stock that only required the shooter to pull the trigger once to activate the firing sequence and thereafter maintain bump fire on its own accord.[108] This is an inaccurate reading of the Fifth Circuit's opinion. The Fifth Circuit merely recognized that the only issue before it was whether non-mechanical bump stocks were machineguns, and that the outcome may differ for a mechanical bump stock depending on how it worked. *Id.* at 462 ("[T]he case *might* well be different if we were considering a semiautomatic weapon equipped with a mechanical bump stock." (emphasis added)). While "[i]t could be the case that a switch activating a mechanical bump stock would be the legal trigger," the Fifth Circuit acknowledged that it was "not considering that case." *Id.* Likewise, the Supreme Court treated mechanical bumps stocks in the same manner since they were "not at issue" in the case. *Cargill*, 602 U.S. at 411 n.1. Certainly, other cases involved firearm devices that functionally replaced the traditional trigger and converted the weapon into a machinegun. *Cargill*, 57 F.4th at 453, 462 (referencing a switch-operated mechanical bump stock and a switch-operated electric motor add-on). That a "trigger activator" pushes the trigger towards its reset position does not mean it becomes the new trigger. *Id.* at 462 (citing *United States v. Camp*, 343 F.3d 743, 745 (5th Cir. 2003)).

### C.  Application of *Cargill* to FRTs

Applying the guidance from both *Cargill* decisions here, FRTs do not fire multiple rounds with a single function of the trigger and, thus, do not qualify as machineguns. For each

---

[108] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 14–19, ECF No. 81.

and every round fired, the trigger moves forward into its reset state and is depressed to release the hammer from its sear surface. Because the operative mechanical function of the trigger is to release the hammer, that the trigger of an FRT-equipped firearm functions for each shot fired disqualifies it as a machinegun under the current statutory definition. Moreover, if all the shooter does is initially pull the trigger, the FRT-equipped firearm will only fire one round. And if the shooter attempts to reset and hold the trigger in a fully depressed position so that the trigger cannot reset, the weapon will malfunction.

By continuing to characterize a "single function of the trigger" as a "single constant rearward pull of the trigger," Defendants transform the required statutory focus away from the objective trigger mechanics to the subjective actions of the gun user instead.[109] This is incorrect and is the same rewriting of the statute Defendants already attempted—and failed—to do with bump stocks. *Cargill*, 602 U.S. at 428–29; *see also id.* at 429 (Alito, J., concurring) (recognizing that "the statutory text is clear, and we must follow it"). For purposes of statutory interpretation, it matters not what human input is required to activate the trigger. All that matters is whether more than one shot is fired each time the trigger functions. As *Cargill* explained, courts cannot look to the shooter's actions in deciding whether FRTs are machineguns. *Id.* at 422–23 (majority op.). Indeed, the "notion that the definition turns on the actions of an unnamed shooter is inconsistent with both the [definition's] grammatical and statutory contexts." *Cargill*, 57 F.4th at 461.

In light of the Supreme Court's decision, the critical consideration is how the trigger mechanically functions. *Cargill*, 602 U.S. at 412; *see also id.* at 436 (Sotomayor, J., dissenting) (characterizing the majority opinion as employing a "reading [that] fixates on a firearm's internal

---

[109] *Id.* at 15.

**RE65**

mechanics while ignoring the human act on the trigger"). That function is the "follow-on action where the trigger acts out its mechanical design or purposes" *after* the shooter has initiated it by some action. *Cargill*, 57 F.4th at 460. *Cargill* leaves no doubt that this required "action" is in relation to the function of the trigger itself, which is defined purely mechanically under the statute rather than an action taken by the user. *Id.* at 461 ("Congress did not use words describing the shooter's perspective of the weapon's rate of fire. . . . Instead, it made up an entirely new phrase—by single function of the trigger—that specifically pertains to the mechanics of a firearm."). Whether prudent or not, "Congress defined the term 'machinegun' by reference to the trigger's mechanics." *Id.* In a hammer-fired gun like those an FRT enhances, the trigger's function is to release the hammer as part of a "simple mechanical process." *Id.* at 459. By disengaging the hammer from the sear, the trigger in FRTs still initiates the "process" that "happens every single time one bullet is fired." *Id.*

This mechanically-grounded definition is consistent with prior Fifth Circuit precedent. *See, e.g.*, *United States v. Jokel*, 969 F.2d 132, 134 (5th Cir. 1992) (concluding that the role of the trigger is "the part of the action of a firearm moved by the finger *to release the hammer* . . . in firing") (emphasis added)). Defendants attempt to characterize *Jokel* as describing the trigger's relevant function as "initiat[ing] the firing sequence" is misplaced.[110] To be sure, the initial trigger pull sets off a sequence that enables a weapon to continue firing without additional physical manipulation. *Cargill*, 602 U.S. at 422. But, as *Cargill* makes clear, "Congress did not write a statutory definition . . . keyed to when a firing sequence begins and ends." *Id.* at 423. Instead, the statutory definition hinges on the trigger's operative mechanical function: the release

---

[110] *Id.* at 14.

and reset of the hammer as part of certain functions in the firing sequence that must recur before each round is fired. *Id.*

Defendants agree that the trigger in an FRT-equipped firearm releases the hammer for every shot.[111] By contrast, the auto sear in a fully automatic gun takes over to retain and release the hammer for all subsequent shots so that its trigger functions only once in a string of automatic fire. *See Cargill*, 57 F.4th at 454 (contrasting the auto sear of a "fully automatic gun" with a bump stock). An FRT-equipped firearm contains a locking bar that prevents a subsequent trigger function until the weapon is safe to fire again. But this is not the same as an auto sear. Unlike an auto sear, the locking bar still prevents firing until it is safe to do so again after unlocking the trigger. Because the FRT's locking bar does not alter the basic mechanical process where the trigger moves for every shot fired, this distinguishes an FRT from a fully automatic weapon with an auto sear. Whether that movement occurs by the shooter "apply[ing] forward pressure to the weapon's forebody in order to maintain the shooting mechanism" for bump stocks, *id.* at 454, or by the hammer maintaining the shooting mechanism for FRTs, the fact remains that the trigger resets the hammer each time before the next shot can be fired. *Cargill* explains that this is a separate function of the trigger. *Id.* at 459. Like bump stocks, FRTs do not enable a weapon to automatically fire multiple rounds with a single function of the trigger itself. To wit, even the name for the device makes this clear: a *forced* reset trigger rather than an *automatic* reset trigger.

---

[111] *Id.* at 1 ("[T]he trigger on an FRT moves and releases the hammer for each shot fired."); *see also* Defs.' Resp. in Opp. to Mot. for Prelim. Inj. 9, ECF No. 39 ("[T]he FRT uses the firing sequence to automatically reset itself along with the locking bar to lock and then automatically time the re-release of the hammer so that as soon as the bolt locks into battery the next round will automatically be fired."). Moreover, the parties confirmed at the October 2, 2023 hearing that there is no disagreement as to how FRTs function. *See* Tr. of Oct. 2, 2023 Hr'g 13, ECF No. 56 ("I think we agree on the way that [these] guns work. I think the disagreement is on how the statute is applied.").

This determination still remains true for Defendants' video of the zip-tie test, which purports to show that FRTs fire with "a single constant depression of the trigger."[112] In a machinegun, the trigger must be held in its rearmost position for the gun to fire automatically. The machinegun's trigger does not reset in between each shot. But in an FRT-equipped firearm, the trigger *must* still reset in between each shot—even when depressed in a rearward state by the zip tie. Defendants' zip tie does not appear to hold the FRT trigger still in its most rearward position. If it did, the weapon would malfunction and not fire subsequent shots. Instead, the elasticity in the zip tie allows for sufficient movement to allow for a trigger reset. All this test establishes is that the trigger need not move to its most rearward position. It can still reset from sufficient rearward pressure and forward movement propelled by the stretched zip tie. In other words, the zip tie test fails to demonstrate that a single function of the trigger does not otherwise occur for each shot since the trigger's operative function is the reset of the hammer—not how the user or a zip tip pulls the trigger. The zip tie test is irrelevant to the statutory definition provided by Congress and as interpreted by *Cargill*.

Even without the aid of expert testimony during the October 2, 2023 hearing—which revealed that there are no relevant fact issues regarding the mechanics of FRTs—Defendants' efforts to distinguish *Cargill* are unavailing. Similar to the government in *Cargill*, the Defendants here cannot overcome the plain reading of the statutory language. When the ATF revised its interpretation of machinegun to define a "single function of the trigger" as the same thing as "a single pull of the trigger and analogous motion," its definition conflicted with the definition provided by the controlling statutes. 27 C.F.R. § 479.11 (2018). And where an agency regulation contradicts the statute, not only is that regulation arbitrary and capricious, but the

---

[112] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 17, ECF No. 81.

statute governs. Because of this contradiction, the ATF's broadened definition of machinegun—and subsequent classification of FRTs—is unlawful.

Furthermore, unlike a switch-activated device that takes over as the legal trigger of the weapon, FRTs do not alter the basic operation the trigger: the trigger must still move sufficiently rearward for each shot based on external manual input from the shooter. This, in turn, activates the trigger's function—releasing and resetting the hammer—which occurs before each subsequent shot and is not set in motion by a switch. Unlike Defendants' comparison to the Akins Accelerator and electronic motor devices,[113] triggers in FRT-equipped firearms perform the same mechanical function as any normal trigger by releasing the hammer prior to each shot. While the Akins Accelerator may not have "any trigger other than the rifle trigger pulled by the shooter," as Defendants contend,[114] that misunderstands what mechanically occurs. The Akins device contains an internal spring that alters the *actuation* of the trigger rather than resetting of the trigger.[115] This is critical because the actuation is what causes the automatic function. FRTs do not include any internal spring or other means to assist actuation of the trigger. With FRTs, an external force must be applied by the user to cause the trigger to function (or actuate) each time a shot is fired. The only force that moves the trigger rearward in an FRT comes from the user's finger.[116] What, then, would be comparable to the Akins Accelerator? One example is the zip-tie demonstration in which the zip tie added external force akin to a spring. Without a similar zip-tie modification, an FRT, like a nonmechanical bump stock, still requires an external force to be applied by the user to cause the trigger to function each time a shot is fired.

---

[113] *Id.* at 17–19; Defs.' Reply Br. in Further Support of Cross-Mot. for Summ. J. 11–13, ECF No. 87.
[114] Defs.' Reply Br. in Further Support of Cross-Mot. for Summ. J. 13, ECF No. 87.
[115] Pls.' Am. Mem. in Support of Mot. for Summ. J. 17, ECF No. 62.
[116] *Id.* at 17–18 (citing Tr. of Oct. 2, 2023 Hr'g. at 111, ECF No. 56).

The closest Defendants come to analogizing FRTs to machineguns is by pointing to two similarities that FRTs and machineguns share: (1) the comparable rates of fire and (2) the absence of a disconnector.[117] But these arguments are foreclosed by the statutory definition and *Cargill*. The statutory definition does not define machineguns "according to how quickly they fire." *Cargill*, 57 F.4th at 464. Nor does it identify the absence of a disconnector as the dispositive characteristic. *See id.* at 460 (declining to "read words into the statute"). Instead, a weapon need only be capable of firing automatically once the trigger itself performs a single function to qualify as a machinegun under the statute. *Id.* at 460, 465. If Congress wants to amend the statutory definition in the future to define machineguns based on rate of fire or absence of a disconnector, it knows how to do so. Until such time, a comparable—and even identical—rate of fire and absence of a disconnector have no bearing on whether a firearm is a machinegun. Therefore, these comparators do not alter the Court's determination that FRTs are not machineguns.[118]

*   *   *   *   *

Because the *Cargill* decisions from the en banc Fifth Circuit and the Supreme Court are squarely dispositive of the issue in this case, the Court concludes that ATF's regulation is not in accord with the statutory definition of "machinegun." By redefining the statutory definition, the ATF exceeded the scope of its authority. Upon determining that an agency's action is unlawful, that "agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory,

---

[117] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 16, 16 n.8, ECF No. 81.

[118] The Court's determination is based on its finding that the relevant statutory language is *not* ambiguous. If it were ambiguous, the rule of lenity would surely apply for the same reasons agreed to by a majority of the en banc *Cargill* panel. 57 F.4th at 469; *see also Cargill*, 602 U.S. at 414 (noting that "the [Fifth Circuit] majority concluded that the rule of lenity required resolving that ambiguity in Cargill's favor").

47

**RE70**

procedural, *or* constitutional requirements." *Citizens to Preserve Overton Park*, 401 U.S. at 413–14 (1971) (citing 5 U.S.C. § 706(2)(A)–(D)).

## V.   REMEDIES[119]

Having found in favor of Plaintiffs on the merits, the Court must finally consider the proper remedy. To alleviate the harms and injuries suffered as a result of Defendants' actions, Plaintiffs request that this Court (1) set aside (or vacate) as unlawful ATF's unlawful classification of FRTs as machineguns, (2) declare unlawful ATF's determination that FRTs are "machineguns," and (3) permanently enjoin Defendants from implementing or enforcing against the parties in this lawsuit, in any civil or criminal manner described below, any regulation that based on the determination that FRTs are "machineguns."[120]

### A.   Vacatur

Plaintiffs are entitled to a vacatur of Defendants' classification of FRTs as machineguns. The proper remedy upon determining that an agency has exceeded its authority is vacatur of the unlawful agency action. 5 U.S.C. § 706(2). While in some cases a court may remand a rule or decision to the agency to cure procedural defects, the Fifth Circuit considers vacatur the "default rule" for agency action otherwise found to be unlawful. *Data Mktg. P'ship*, 45 F.4th at 859–60 (describing vacatur as the default remedy under 5 U.S.C. § 706(2)); *accord Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 374–75, 375 n.29 (5th Cir. 2022) (concluding that "[v]acatur is the *only* statutorily prescribed remedy for a successful APA challenge to a regulation") (emphasis added)). The D.C. Circuit agrees. *See United Steel v. Mine Safety & Health Admin.*, 925 F.3d

---

[119] Even if the Supreme Court alters associational standing doctrine, these remedies would still be appropriate to award based on the Individual Plaintiffs' standing.
[120] Pls.' Compl. 15–16, ECF No. 1; Pls.' Am. Mem. in Support of Mot. for Summ. J. 32, ECF No. 62. Although Plaintiffs do not use the word "vacate," their Complaint nonetheless seeks relief under 5 U.S.C. § 706's set aside or vacatur clause. *See id.* at 15 (requesting the Court to "hold[] unlawful and set[] aside ATF's action" pursuant to "5 U.S.C. § 706"). Pls.' Compl. 15, ECF No. 1.

1279, 1287 (D.C. Cir. 2019) ("The ordinary practice is to vacate unlawful agency action. . . . In rare cases, however, we do not vacate the action but instead remand for the agency to correct its errors."). And, recently, Justice Kavanaugh endorsed vacatur as the appropriate remedy in APA cases despite its universal scope. *Corner Post, Inc. v. Bd. of Governors*, No. 22-1008., 2024 WL 3237691, at *15 (July 1, 2024) (Kavanaugh, J., concurring) (criticizing the "far-reaching argument that the APA does not allow vacatur . . . but instead permits a court only to enjoin . . . a rule against the plaintiff" alone because that position "would revolutionize long-settled administrative law" and "shut[] the door on entire classes of everyday administrative law cases"). The propriety of vacatur-without-remand "turns on two factors: (1) the seriousness of the deficiencies of the action, that is, how likely it is the agency will be able to justify its decision on remand; and (2) the disruptive consequences of vacatur." *Id.* (cleaned up). Applying these factors here, the Court cannot envision how the ATF could satisfactorily salvage its classification of FRTs as machineguns on remand.

### 1. Seriousness of Deficiencies and Ability to Provide Justification on Remand.

Regarding the first vacatur-versus-remand factor, Defendants will not be able to justify its decision to create law that Congress did not pass and that the Supreme Court did not allow. Broadly speaking, remand to the agency "is generally appropriate when there is at least a serious possibility that the agency will be able to substantiate its decision given an opportunity to do so." *Tex. Ass'n of Mfrs. v. U.S. Consumer Prod. Safety Comm'n*, 989 F.3d 368, 389 (5th Cir. 2021) (citing *Cent. & S.W. Servs., Inc. v. EPA*, 220 F.3d 683, 692 (5th Cir. 2000)). Under this factor, remand without vacatur is proper only where the agency failed "adequately to explain why it chose one approach rather than another for one aspect of an otherwise permissible rule." *Tex. Med. Ass'n*, 2023 WL 4977746, at *13 (quoting *Heartland Reg'l Med. Ctr. v. Sebelius*, 566 F.3d 193, 199 (D.C. Cir. 2009)). That is not what occurred with the agency action here. Likewise, the

complete "[f]ailure to provide the required notice and to invite public comment is a fundamental flaw that normally requires vacatur of the rule." *Wheeler*, 955 F.3d at 85; *see also Daimler Trucks N. Am. LLC v. EPA*, 737 F.3d 95, 103 (D.C. Cir. 2013) (noting that "the court typically vacates rules when an agency 'entirely fail[s]' to provide notice and comment"); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 985 F.3d 1032, 1052 (D.C. Cir. 2021) ("[A]n agency that bypassed required notice and comment rulemaking obviously could not ordinarily keep in place a regulation while it completed that fundamental procedural prerequisite.").

These severe deficiencies do not warrant remand. *Texas v. United States* (*DACA*), 50 F.4th 498, 529 (5th Cir. 2022) (concluding that there was "no possibility that [the agency] could obviate the[] conflicts on remand" because the challenge document had "severe . . . deficiencies" and "fundamental substantive defects" that "contradict[ed] significant portions of the [enabling statute]"). The same holds here. Not only is the classification of FRTs as machineguns contrary to law, the ATF will not be able to substantiate its classification decision on remand because there is no possibility that it could correct the fundamental substantive errors.

### 2. Disruptive Consequences

As to the second factor—disruptiveness—Defendants may not rely on the "uncertainty that typically attends vacatur of any rule." *Wheeler*, 955 F.3d at 85 (rejecting agency's disruption argument). "[T]he threat of disruptive consequences cannot save a rule when its fundamental flaws 'foreclose [the agency] from promulgating the same standards on remand.'" *North Carolina v. EPA*, 531 F.3d 896, 929 (D.C. Cir. 2008) (quoting *Nat. Res. Def. Council v. EPA*, 489 F.3d 1250, 1261–62 (D.C. Cir. 2007)). No amount of asserted disruptiveness can save the classification of FRTs as machineguns here.

Not only does the classification of FRTs as machineguns suffer from severe deficiencies that cannot be corrected on remand, but a vacatur that simply reinstates the longstanding status

quo prior to 2018 would not cause disruptive consequences. Vacatur is, thus, appropriate given the Court's conclusion that Defendants have engaged in unlawful agency action. An illegitimate agency action is void *ab initio* that cannot be remanded as there is nothing for the agency to justify. Moreover, vacating this unlawful assertion of Defendants' authority would be minimally disruptive because vacatur simply "establish[es] the status quo" that existed prior to the agency action. *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022) ("[A] vacatur does nothing but re-establish the status quo absent the unlawful agency action.").

If the opposite remedy—remand to the agency—were the default, it would "create[] a risk that an agency may drag its feet and keep in place an unlawful agency rule. *EME Homer City Generation, L.P. v. EPA*, 795 F.3d 118, 132 (D.C. Cir. 2015) (Kavanaugh, J.). Remand would also "invite[] agency indifference." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 862 (D.C. Cir. 2008) (Griffith, J., concurring) (urging courts "to consider the alternatives to the open-ended remand without vacatur"); *see also Nat. Res. Def. Council v. EPA*, 489 F.3d 1250, 1264 (D.C. Cir. 2007) (Randolph, J., concurring) ("A remand-only disposition is, in effect, an indefinite stay of the effectiveness of the court's decision and agencies naturally treat it as such."). And "[b]ecause vacatur is the default remedy . . . defendants bear the burden to prove that vacatur is unnecessary." *Tex. Med. Ass'n v. U.S. Dep't of Health & Hum. Servs.*, No. 6:23-cv-59-JDK, 2023 WL 4977746, at *13 (E.D. Tex. Aug. 3, 2023) (citation omitted). Defendants have not done so here. Thus, applying the default remedy, the Court **VACATES** the ATF's classification of FRTs as machineguns.

**RE74**

### 3. Scope of Vacatur

"Vacatur is inherently universal."[121] There may be circumstances that justify a court fashioning a more limited vacatur. *Cf. VanDerStok v. Garland*, 86 F. 4th 179, 196–97 (5th Cir. 2023) (remanding in part for consideration of narrowing the vacatur to only cover certain provisions of the final rule rather than the entire rule), *cert. granted*, No. 23-852, 2024 WL 1706014 (U.S. 2024). But a more limited vacatur cannot logically be limited just to the parties in the lawsuit. By its very nature, a vacatur is universal in scope because it "erase[s] [an unlawful regulation] from the books." *United States v. Texas*, 599 U.S. 670, 696 (2023) (Gorsuch, J., concurring in the judgment). Erasure cannot be limited to only one party when the agency action no longer exists. *See Data Mktg. P'ship*, 45 F.4th at 859 (explaining that vacatur "retroactively undoes or expunges a past [agency] action") (citation omitted)); *see also Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (2024) (Jones, J.) (concluding "that the scope of preliminary relief or ultimate relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted and allows a court to 'set aside' an unlawful agency action").

Defendants contend that "the Court should construe the 'set aside' language in Section 706(2) as applying only to the named Plaintiffs."[122] But this misunderstands the remedial nature of a vacatur. "Vacatur operates on the legal status of a rule, causing the rule to lose binding force" whereas injunctions are party-specific.[123] Put simply, the only option is to wholly set aside the final agency action. Only the scope of the vacatur lends itself to limitation as to some or all

---

[121] John Harrison, *Vacatur of Rules Under the Administrative Procedure Act*, 40 YALE J. ON REGUL. 119, 120 (2023).
[122] Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 26, ECF No. 81.
[123] Harrison, *supra* note 80, at 119–20.

provisions of a Final Rule, for example, but the scope logically cannot be limited to specific parties.

Avoiding the pitfalls that accompany remand-without-vacatur and finding no statutory authorization to limit vacatur to specific parties, the Court **VACATES** Defendants' unlawful classification of FRTs as "machineguns." Such a classification is contrary to law and was done in a manner beyond the scope of its legitimate statutory authority to promulgate it in the first place. Vacatur of the ATF's unlawful action—classification of FRTs as machineguns—achieves the same effect here as a nationwide injunction. At its core, vacatur is inherently universal in character like a nationwide injunction. *Data Mktg. P'ship*, 45 F.4th at 859. But "'[u]nlike an injunction, which merely blocks enforcement, vacatur unwinds the challenged agency action.'" *Id.* That is why the statutorily authorized vacatur is viewed as a less drastic remedy. *Id*; *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010) ("If a less drastic remedy (such as a partial or complete vacatur of [the agency's] deregulation decision) was sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction was warranted.").

### B. Declaratory Relief

Plaintiffs are also entitled to declaratory relief in this case. Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 220l(a). "Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id.* The Declaratory Judgment Act is "an enabling Act, which confers . . . discretion on courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (citation omitted). Moreover, the APA expressly

contemplates declaratory relief: "The form of proceeding for judicial review . . . includ[es] actions for declaratory judgments or writs of prohibitory or mandatory injunction[.]" 5 U.S.C. § 703. And "[t]he existence of another adequate remedy [such as a vacatur or injunction] does not preclude a declaratory judgment that is otherwise appropriate." FED. R. CIV. P. 57.

Plaintiffs successfully established that the ATF's classification of FRTs as machineguns is unlawful agency action. As a result, the Court finds that Plaintiffs are entitled to a declaration delineating the rights and legal relations among themselves and Defendants. Although the Court vacated the ATF's classification, a declaration is forward-looking in nature and provides prospective relief. Finding it necessary in this case to also award forward-looking declaratory relief, the Court **DECLARES** unlawful the ATF's determination that FRTs are "machineguns."

## C. Permanent Injunctive Relief

Finally, Plaintiffs are entitled to permanent injunctive relief. A permanent injunction is proper when a plaintiff prevails on the merits, there is no adequate remedy at law for the plaintiff's otherwise irreparable injury, the balance of the harms favors the plaintiff, and an injunction would serve the public interest. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiffs satisfy each of these elements.

As extensively explained earlier in this opinion, Plaintiffs satisfy the first requirement because they succeed on the merits of their claim that the classification of FRTs as machineguns is contrary to law. Regarding the remaining injunction factors, the Court stands on its prior analysis from the preliminary injunction stage.[124] The record reveals no meaningful changes that undermine the Court's previous findings that Plaintiffs are suffering, and will continue to suffer, irreparable harm due to credible threats of enforcement, compliance costs,

---

[124] *See* Oct. 7, 2024 Op. & Order on Pls.' Mot. for Prelim. Inj. 31–37, ECF No. 53 (discussing the irreparable harm Plaintiffs will face).

and the chilling of constitutional and ownership rights. Likewise, the balance of the equities and the public interest factors remain in Plaintiffs' favor.[125] Even in their third bite at the apple, Defendants still have not identified any concrete injuries to counterbalance the real harms facing Plaintiffs. And there is no public interest in unlawful and unconstitutional government action. *Wages & White Lion Invs., L.L.C. v. FDA*, 16 F.4th 1130, 1143 (5th Cir. 2021). Accordingly, having considered the arguments, evidence, and law, the Court holds that the relevant factors weigh in favor of entering a permanent injunction.

Because Plaintiffs carry their burden as to each of the permanent injunction factors, the Court next addresses the scope of the injunction. When ordering equitable relief, the Court is obligated to state "specifically" and "in reasonable detail . . . the act or acts restrained or required" under the injunction. FED. R. CIV. P. 65(d)(1)(b)–(c). The scope of injunctive relief is "dictated by the extent of the violation established." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). An injunction "should be crafted to provide 'complete relief to the plaintiffs.'" *Mock v. Garland*, 75 F.4th 563, 587 (5th Cir. 2023) (quoting *Yamasaki*, 442 U.S. at 702). At the same time, the injunction "should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (cleaned up). And it must be tailored to "redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018) (citation omitted). Under "certain circumstances," however, the demand for "complete" relief may necessitate that injunctive redress benefit many claimants of a common legal right in order to prevent "more confusion." *Mock*, 75 F.4th at 587 (citation omitted). But even when a nationwide injunction is appropriate under the circumstances,[126] a less

---

[125] *See id.* at 37–41 (discussing the lack of countervailing interests to Defendants and the public).

[126] The Court is especially mindful of the Supreme Court's concerns regarding nationwide injunctions. *See, e.g.*, *California v. Texas*, 593 U.S. 659, 672 (2021) (explaining that a valid Article III remedy generally must "'operate with respect to specific parties'" rather than "in the abstract") (quoting *Murphy*

drastic remedy—vacatur—may ameliorate future-looking concerns. Therefore, despite the Court finding no indication that issuing a nationwide injunction *in this case* would conflict with the historical limits on its equitable powers, the Court determines that an injunction focused on enforcement and implementation remains necessary to wholly redress Plaintiffs' injuries. Here, vacatur and declaratory relief are not enough without the additional protection that flows from the clarity of permanent injunctive relief, such as avoiding circumvention of any declaration[127] and preventing confusion in the absence of specifically enjoined actions should Defendants later attempt to promulgate a new interpretation of "machinegun" capturing FRTs in violation of the statutory text.[128]

Therefore, in keeping with these obligations, the Court tailors the scope of the injunction with careful attention to completely redress the violation established and to also avoid upsetting the competing interests. Thus, the Court **ENJOINS** Defendants from the following actions against any person or entity:

---

*v. NCAA*, 584 U.S. 453, 489 (2018) (Thomas, J., concurring)); *Dep't of Homeland Sec. v. New York*, 140 S. Ct. 599, 599–601 (2020) (mem.) (Gorsuch, J., concurring) (lamenting the "serious questions about the scope of courts' equitable powers under Article III" caused by "trial courts ordering relief that transcends the cases before them" by "direct[ing] how the defendant must act toward persons who are not parties to the case"); *Trump v. Hawaii*, 585 U.S. 667, 713–14 (2018) (Thomas, J. concurring) (conveying "skeptic[ism] that district courts have the authority to enter universal injunctions" without "authority . . . from a statute or the Constitution").

[127] Defendants' statement that "[a] broad injunction would undermine ATF's ability to respond in real time to serious future threats implicating FRTs" suggests a dogged intent to continue confiscation and enforcement practices despite this Court's ruling. Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 23, ECF No. 81; *see also id* at 22 ("[A] broad sweeping injunction . . . would cripple the government's ability to take virtually any enforcement action with regard to a FRT device anywhere in the United States.").

[128] So far, Defendants have advanced multiple interpretations of "machinegun" to capture FRTs. *See, e.g.*, 27 CFR § 479.11 ("single pull of the trigger and analogous motions"); *see also* Pls.' App. 112–77, ECF No. 62-1 ("continuous pull"); Tr. of Oct. 2, 2023 Hr'g. at 130, ECF No. 56 ("initiation of the firing sequence"); Defs.' Combined Mem. in Support of Cross-Mot. for Summ. J. & Resp. in Opp. to Pls.' Mot. for Summ. J. 1, ECF No. 81 ("constant rearward pressure").

(a)     Initiating or pursuing criminal prosecutions for possession of FRTs;

(b)     Initiating or pursuing civil proceedings for possessing, selling, or manufacturing FRTs based on the claim that FRTs are machineguns;

(c)     Initiating or pursuing criminal prosecutions for representing to the public of potential buyers and sellers that FRTs are not machineguns;

(d)     Initiating or pursuing civil actions for representing to the public of potential buyers and sellers that FRTs are not machineguns;

(e)     Sending "Notice Letters" or other similar communications stating that FRTs are machineguns;

(f)     Requesting "voluntarily" surrender of FRTs to the government based on the claim that FRTs are machineguns;

(g)     Destroying any previously surrendered or seized FRTs; and

(h)     Otherwise interfering in the possession, sale, manufacture, transfer, or exchange of FRTs based on the claim that FRTs are machineguns.

When determining the geographic scope of an injunction, the relevant considerations are similar to those in the analysis for the public-interest factor to justify an injunction in the first place. *Nuziard v. Minority Bus. Dev. Agency*, No. 4:23-cv-00278-P, 2024 WL 965299, at *46–*47 (N.D. Tex. Mar. 5, 2024). Those considerations include the avoidance of unconstitutional laws or government action, government efficiency, administrability of remedies, and public confidence in the judiciary. *Id.* Having carefully considered those circumstances here, the Court declines the invitation to extend the scope of the permanent injunction nationwide given that the statutorily authorized vacatur already supplies comparable universal relief. This determination is the result of diligent adherence to recent Supreme Court and Fifth Circuit guidance regarding appropriate remedies, along with an evaluation of the public-interest considerations that may warrant nationwide relief in select cases.[129]

---

[129] The first consideration—avoidance of an unconstitutional law or government action—favors a nationwide injunction. Likewise, the efficiency and administrability concerns that underlie the second and third factors also weigh in favor of a nationwide relief given the continued problems navigating the

Despite the Court finding no indication that issuing a nationwide injunction *in this case* would conflict with the historical limits on its equitable powers, the less drastic remedy—vacatur—sufficiently redresses Plaintiffs' concerns. However, the Court finds it appropriate to still issue party-specific relief to Plaintiffs to ensure that no harm from enforcement or implementation—be it through rulemaking or otherwise—continues going forward. Just as recently as June 20, 2024, Plaintiffs notified the Court of Defendants' continued contact with FRT owners.[130] Defendants respond that they cannot possibly know who is covered by the preliminary injunction "*before* ATF is aware of the person's membership status with an [Organizational] Plaintiff."[131] In other words, Defendants explain that they "have no means of knowing, prior to receiving a notice from Plaintiff, that they have contacted an individual or entity covered by the Preliminary Injunction."[132] Without questioning efforts to comply with the preliminary injunction, the Court fully recognizes administrability difficulties may cause improper contact with a member of an Organizational Plaintiff.[133] Vacatur of the ATF's unlawful action—classification of FRTs as machineguns—should prevent any such harms. But to the extent it does not, the Court also enters injunctive relief focused on enforcement and implementation of the unlawful classification.

---

preliminary injunction. And, finally, as to the remaining factor, the Supreme Court has made clear just how difficult it is to overcome the presumption that a nationwide injunction is "consistent with the historical limits on equity and judicial power." *Trump v. Hawaii*, 585 U.S. at 720 (Thomas, J. concurring).

[130] Pls.' Notice of Non-Compliance, ECF No. 98.

[131] Defs.' Resp. to Pls.' Notice of Non-Compliance 2 n.1, ECF No. 99.

[132] *Id.*

[133] *Id.* at 3 (admitting that the ATF "received a similar notification regarding a different NAGR member . . . and confused the second notification as regarding the same individual," which caused the ATF to "not relay the second notification down the chain of command to the ATF agent" and resulted in the "inadvertent error" of "the ATF agent sen[ding] a short follow-up email to the alleged member . . . without knowing that the individual was allegedly covered by the Preliminary Injunction").

Accordingly, the Court's injunction extends only to the plaintiffs in this lawsuit to protect them from civil or criminal enforcement of the challenged agency action to the extent not already covered by the vacatur. Parties beyond this lawsuit are *not* covered. And this injunction does not cover any pending criminal cases since that would interfere with another court. Crucially, this Court's award of permanent injunctive relief also does not offer any person blanket immunity from prosecution for all firearm-related offenses. Defendants may still prosecute violations of otherwise lawful provisions of the NFA and GCA, as well as other lawful firearms regulations. This relief should alleviate demonstrable injuries without unnecessarily burdening Defendants.

Finally, respect for coordinate courts also guides the scope of the relief awarded here. *See W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24*, 751 F.2d 721, 729 (5th Cir. 1985) (holding that district courts should "avoid rulings which may trench upon the authority of sister courts"). Although this Court reaches a different conclusion than the E.D.N.Y. Decision, Fifth Circuit precedent is clear regarding overlapping decisions from coordinate courts. As it relates to the Rare Breed Parties or any of their agents, officers, and employees,[134] the Court further narrows its permanent injunction by carving out the Rare Breed Parties despite membership in an Organizational Plaintiff. But unlike the preliminary injunction, the Court only carves out the Rare Breed Parties to the extent that the permanent injunction conflicts with the E.D.N.Y Lawsuit's civil scope. The E.D.N.Y. Lawsuit does *not* include any claims that the Rare Breed Parties engaged in criminal conduct.[135] Therefore, while recognizing that inclusion of the Rare Breed Parties in the civil aspects of the permanent injunction would likely conflict with the E.D.N.Y. Lawsuit, the Court also finds that protection from criminal prosecution would not.

---

[134] These individuals include Lawrence DeMonico and Kevin Maxwell. Pls.' Am. Mem. in Support of Mot. for Summ. J. 30, ECF No. 62.

[135] *See* Compl. at 33–38, *Rare Breed Triggers, LLC*, No. 1:23-cv-00369-NRM-RML (E.D.N.Y. Jan. 19, 2023) (ECF No. 1) (seeking injunctive relief to prevent conspiracy to defraud, mail fraud, wire fraud, conspiracy to commit mail fraud, and conspiracy to commit wire fraud).

Accordingly, the Court **ENJOINS** Defendants from pursuing criminal actions against the Rare Breed Parties based on the classification that FRTs are "machineguns." Besides this narrow carve out, other manufacturers or sellers may continue to fully manufacture, sell, exchange, transfer, and/or market FRTs under this permanent injunction without facing civil or criminal consequences from Defendants.

With these limitations in place, the Court finds that the aforementioned relief appropriately narrows the scope of this extraordinary remedy without overly burdening Defendants and without trenching upon the E.D.N.Y. Decision. Accordingly, this injunction covers the Individual Plaintiffs and their families, the Organizational Plaintiffs and their members, and the downstream customers of any commercial member of an Organizational Plaintiff. Furthermore, this injunctive relief shall not extend to any individual prohibited from possessing firearms under 18 U.S.C. § 922(g). For those parties covered by this injunction, the relief shall take effect immediately and remain in effect pending the final disposition of this lawsuit. *See* 5 U.S.C. § 705.

## VI.   CONCLUSION

There is no denying the tragic nature of the Las Vegas shooting that motivated the Final Rule. But no matter how terrible the circumstances, there is never a situation that justifies *a court* altering statutory text that was democratically enacted by those who are politically accountable. That responsibility belongs exclusively to Congress. The Constitution assigns such legislative choices to the appropriate *elected* officials—not *life-tenured judges* and *unelected bureaucrats*. Rather than respect this intentional feature of our democratic system, Defendants chose to advance an policy agenda wholly divorced from the NFA's statutory text. Thus, to allow Defendants' unlawful action to stand would be to functionally rewrite the NFA. That is not how

**RE83**

24-10707.3722

our democratic system functions. Indeed, "it is never [a court's] job to rewrite . . . statutory text." *Henson v. Santander Consumer USA Inc.*, 582 U. S. 79, 89 (2017). As Chief Justice John Marshall put it, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803) (1 Cranch). Nothing more. This remains true even when shocking events may underscore the need for legislative change. And even when this prudent constraint produces undesirable results, one must remember that circumventing the democratic process to effectuate desired change undermines the animating policy goals upon which our system rests. A democratic path to change already exists.

By jumping the gun, Defendants robbed Congress of the ability to capitalize on political support to alter the statutory language following the Las Vegas shooting. Indeed, multiple bills on *this exact issue* were pending in Congress when Defendants decided to act.[136] None of these bills were given the chance to become law. As is often the case, public attention waned, taking with it the momentum for legislative action.[137] But this result is even more pernicious than the mere inability to enact legislative change. Each time an agency circumvents the legislative process it chips away at the most prudent reason for the separation of powers—that is, ensuring unelected and unaccountable individuals do not make the law. This reason alone compels the Court's decision today.

For the foregoing reasons and with the above admonitions in mind, the Court **GRANTS** Plaintiffs' Motion for Summary Judgment (ECF No. 60) and **DENIES** Defendants' Cross-

---

[136] *E.g.*, S. 1916, 115th Cong., 1st Sess., § 2 (2017); H.R. 3947, 115th Cong., 1st Sess. (2017); H.R. 3999, 115th Cong., 1st Sess. (2017).

[137] Indeed, recent proposals directed at firearms with rates of fire similar to a machinegun appear to have stalled without the robust political support that existed shortly after the Las Vegas shooting. *E.g.*, H.R. 396, 118th Cong., 1st Sess. (2023); S. 1909, 118th Cong., 1st Sess. (2023); H.R. 5427, 117th Cong., 1st Sess. (2021).

Motion for Summary Judgment (ECF No. 79). Specifically, the Court **ORDERS** the following relief:

1. The Court **VACATES** Defendants' unlawful classification of FRTs as "machineguns."

2. The Court **DECLARES** unlawful Defendants' determination that FRTs are "machineguns."

3. The Court **ENJOINS** Defendants—along with their respective officers, agents, servants, and employees—from implementing or enforcing against the parties in this lawsuit, in any civil or criminal manner described below, the ATF's expanded definition of "machinegun" to FRTs that this Court has determined is unlawful:

    (a) Initiating or pursuing criminal prosecutions for possession of FRTs;

    (b) Initiating or pursuing civil proceedings for possessing, selling, or manufacturing FRTs based on the claim that FRTs are machineguns;

    (c) Initiating or pursuing criminal prosecutions for representing to the public of potential buyers and sellers that FRTs are not machineguns;

    (d) Initiating or pursuing civil actions for representing to the public of potential buyers and sellers that FRTs are not machineguns;

    (e) Sending "Notice Letters" or other similar communications stating that FRTs are machineguns;

    (f) Seizing or requesting "voluntarily" surrender of FRTs to the government based on the claim that FRTs are machineguns;

    (g) Destroying any previously surrendered or seized FRTs; and

    (h) Otherwise interfering in the possession, sale, manufacture, transfer, or exchange of FRTs based on the claim that FRTs are machineguns.

4. This scope of this injunction covers the Individual Plaintiffs and their families, the Organizational Plaintiffs and their members, and the downstream customers of any

**RE85**

commercial member of an Organizational Plaintiff to the extent that it does not interfere with other courts, such as the E.D.N.Y. Lawsuit's civil jurisdiction over the Rare Breed Parties and other pending criminal cases against individuals already subject to prosecution.

5. The Court further **ENJOINS** Defendants from pursuing criminal proceedings or criminal enforcement actions against the Rare Breed Parties on the grounds that FRTs are "machineguns."

6. The Court **ORDERS** Defendants to return to all parties, including manufacturers, distributors, resellers, and individuals, all FRTs and FRT components confiscated or seized pursuant to their unlawful classification within **thirty (30) days** of this decision.

7. The Court **ORDERS** Defendants to mail remedial notices correcting their prior mailing campaign that "warned" suspected FRT owners that possession of FRTs and FRT components was purportedly illegal.

Every year, our country commemorates the revolution waged against a tyrannical executive. To safeguard against future tyranny, our founding documents designed a system that prevents undue concentrations of power in order to protect important rights and to ensure that a legislative consensus is reached before enacting laws on the most important issues in society. Such foresight is especially prudent in cases like this one. Indeed, while this case may seem focused on firearms, it represents so much more. It is emblematic of a devastating problem that increasingly rears its head in federal courts: rampant evasion of the democratic process. Few issues more acutely underscore this problem than the present case. Our nation would do well to

remember the very reasons and spirit that inspired our democratic system of governance in the first place.

       **SO ORDERED** this **23rd day** of **July, 2024**.


                                 Reed O'Connor

                        **UNITED STATES DISTRICT JUDGE**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **NATIONAL ASSOCIATION FOR** | § | |
| **GUN RIGHTS, INC.,** *et al.*, | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-00830-O** |
| | § | |
| **MERRICK GARLAND,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**<u>FINAL JUDGMENT</u>**

This Judgment is issued pursuant to Federal Rule of Civil Procedure 58(a).

This action came on for consideration by the Court, and the issues having been duly considered and a decision duly rendered,

It is **ORDERED**, **ADJUDGED**, and **DECREED** that:

1. The Court **GRANTS** Plaintiffs' Motion for Summary Judgment (ECF No. 60) and **DENIES** Defendants' Cross-Motion for Summary Judgment (ECF No. 79).

2. The Court **VACATES** and **SETS ASIDE** Defendants' unlawful classification of FRTs as "machineguns."

3. The Court **DECLARES** unlawful Defendants' determination that FRTs are "machineguns."

4. The Court **ENJOINS** Defendants—along with their respective officers, agents, servants, and employees—from implementing or enforcing against the parties in this lawsuit, in any civil or criminal manner described below, the ATF's expanded definition of "machinegun" to FRTs that this Court has determined is unlawful:

   a. Initiating or pursuing criminal prosecutions for possession of FRTs;

1

**RE88**

    b.  Initiating or pursuing civil proceedings for possessing, selling, or manufacturing FRTs based on the claim that FRTs are machineguns;

    c.  Initiating or pursuing criminal prosecutions for representing to the public of potential buyers and sellers that FRTs are not machineguns;

    d.  Initiating or pursuing civil actions for representing to the public of potential buyers and sellers that FRTs are not machineguns;

    e.  Sending "Notice Letters" or other similar communications stating that FRTs are machineguns;

    f.  Seizing or requesting "voluntarily" surrender of FRTs to the government based on the claim that FRTs are machineguns;

    g.  Destroying any previously surrendered or seized FRTs; and

    h.  Otherwise interfering in the possession, sale, manufacture, transfer, or exchange of FRTs based on the claim that FRTs are machineguns.

5.  This scope of this injunction covers the Individual Plaintiffs and their families, the Organizational Plaintiffs and their members, and the downstream customers of any commercial member of an Organizational Plaintiff to the extent that it does not interfere with other courts, such as the Eastern District of New York's civil jurisdiction over the Rare Breed Parties and other pending criminal cases against individuals already subject to prosecution.

6.  The Court further **ENJOINS** Defendants from pursuing criminal proceedings or criminal enforcement actions against Rare Breed Triggers, LLC, Rare Breed Firearms, LLC, Lawrence DeMonico, and Kevin Maxwell on the grounds that FRTs are "machineguns."

7.  The Court **ORDERS** Defendants to return to all parties, including manufacturers, distributors, resellers, and individuals, all FRTs and FRT components confiscated or seized pursuant to their unlawful classification within **thirty (30) days** of this decision.

2

**RE89**

8. The Court **ORDERS** Defendants to mail remedial notices correcting their prior mailing campaign that "warned" suspected FRT owners that possession of FRTs and FRT components was purportedly illegal.

9. All other relief not expressly granted herein is **DENIED**.

This order **SHALL** fully bind Defendants and any officers, agents, servants, employees, attorneys, or other persons in active concert or participation with Defendants.

 **SO ORDERED** on this **24th day** of **July, 2024**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

NATIONAL ASSOCIATION FOR GUN
RIGHTS, INC., *et al.*,

               Plaintiffs,

     v.

MERRICK GARLAND, IN HIS OFFICIAL
CAPACITY AS ATTORNEY GENERAL
OF THE UNITED STATES, *et al.*,

               Defendants.

Case No. 4:23-cv-00830-O

### <u>NOTICE OF APPEAL</u>

All Defendants hereby appeal, to the U.S. Court of Appeals for the Fifth Circuit, the

Court's July 23, 2024 Memorandum Opinion & Order, ECF No. 100, and Final Judgment, ECF

No. 101.

24-10707.3733

DATED: August 1, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEX HAAS
Branch Director

BRIGHAM J. BOWEN
Assistant Branch Director

/s/ *Laura B. Bakst*
LAURA B. BAKST
MICHAEL P. CLENDENEN
ALEXANDER W. RESAR
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 514-3183
E-mail: Laura.B.Bakst@usdoj.gov

*Counsel for Defendants*

## Certificate of Service

On August 1, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Laura B. Bakst*

2

**RE92**

24-10707.3734

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:23-cv-00830-O |
| MERRICK GARLAND, *et al.*, | § § § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants' Motion to Stay Judgment Pending Appeal (ECF No. 104) and Brief in Support (ECF 105), filed August 1, 2024; Plaintiffs' Response (ECF No. 107) and Appendix (ECF No. 108), filed August 7, 2024; and Defendants' Reply (ECF No. 109), filed August 9, 2023. Having considered the motion, briefing, and applicable law, the Court find the motion should be and is hereby **DENIED**. The Court also extends the deadline for compliance with the affirmative obligations imposed on Defendants by **SIX (6) MONTHS** and must be meet by **February 22, 2025**.

## I.    BACKGROUND

At this stage, the facts of this case are well-known and the Court will not repeat them at length here.[1] Because of this, the Court only recounts background information necessary to understand and contextualize the pending motion. Plaintiffs comprise of both individuals and organizations. Plaintiffs Patrick Carey, Travis Speegle, and James "J.R." Wheeler are three individual citizens located in the Texas–Louisiana area (the "Individual Plaintiffs"). Each

---

[1] *E.g.*, July, 23, 2024, Op. & Order on Summ. J., ECF No. 100; Oct. 7, 2024 Op. & Order on Pls.' Mot. for Prelim. Inj., ECF No. 53; Aug. 30, 2024 Op. & Order on Pls.' Mot. for TRO, ECF No. 36.

Individual Plaintiff has owned, currently owns, and/or plans to own FRTs in the future. Plaintiffs also include two organizations—National Association for Gun Rights, Inc. ("NAGR") and Texas Gun Rights, Inc. ("TGR")—with thousands of members in the Northern District of Texas (the "Organizational Plaintiffs").

On August 30, 2023, this Court granted a temporary restraining order ("TRO") to the Individual Plaintiffs,[2] finding that the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") expanded definition of "machinegun" is likely unlawful. The TRO enjoined Defendants from implementing or enforcing, in any civil or criminal manner, the definition against the Individual Plaintiffs.[3] The TRO was narrow in scope, limiting temporary injunctive relief to the Individual Plaintiffs.[4] Due to agreed extensions, the TRO remained in place through October 7, 2023.[5]

On October 2, 2023, the Court conducted an evidentiary hearing to determine whether the TRO should extend throughout the life of the case.[6] Each party was permitted an expert witness to testify about the mechanics of a forced reset trigger ("FRT").[7] Notably, the hearing made clear that

---

[2] Aug. 30, 2024 Op. & Order on Pls.' Mot. for TRO, ECF No. 36.

[3] *Id.* at 27.

[4] *Id.* at 25.

[5] *See* Joint Mot. for Extension of Time 1–2, ECF No. 37 ("[T]he parties stipulate, under Federal Rule of Civil Procedure 65(b)(2), that the temporary restraining order shall apply until the earlier of September 30, 2023, or until such time that the Court rules on Plaintiffs' Motion for Preliminary Injunction."); Joint Mot. to Reschedule Hr'g 1–2, ECF No. 43 ("The parties stipulate, under Federal Rule of Civil Procedure 65(b)(2), that the temporary restraining order shall apply until the earlier of October 7, 2023, or until such time that the Court rules on Plaintiffs' Motion for Preliminary Injunction."). The Court granted both motions. Aug. 31, 2023 Order, ECF No. 37; Sept. 14, 2023 Order, ECF No. 43.

[6] *See* Electronic Minute Entry, ECF No. 51 (describing the Court's hearing held on October 2, 2023). Just like the Eastern District of New York (E.D.N.Y. Lawsuit), this Court heard expert testimony regarding how FRTs function. *See* Defs.' Resp. in Opp'n to Mot. for Prelim. Inj. 24, ECF No. 39 (referencing the evidentiary hearing held in the E.D.N.Y. Lawsuit); *see also United States v. Rare Breed Triggers, LLC*, No. 1:23-cv-00369-NRM-RML, 2023 WL 5689770, at *8 (E.D.N.Y. Sept. 5, 2023) (referencing the evidentiary hearing held on August 1–2, 2023).

[7] Sept. 29, 2023 Order, ECF No. 50 (setting time limits and scope of expert testimony).

there are no factual disputes regarding how FRTs work.[8] Instead, the hearing confirmed that the parties' dispute centers entirely on a legal question: whether FRTs qualify as machineguns under the statutory definition. Plaintiffs' expert testified that FRTs *do not* exhibit the attributes of a machinegun, as described by the statute. Defendants' expert, on the other hand, testified that FRTs *do* exhibit those attributes. This live testimony mirrored the positions these same experts proffered during the two-day hearing in the Eastern District of New York Lawsuit.[9] After hearing live testimony and reviewing the briefing, the Court granted Plaintiffs' Motion for Preliminary Injunction on October 7, 2023.[10]

Defendants appealed thirty days later pursuant to 28 U.S.C. § 1292(a)(1).[11] Simultaneous to filing an interlocutory appeal, Defendants moved for a stay of the preliminary injunction pending the appeal.[12] To meet Defendants' request for a ruling within ten days, the Court ordered expedited briefing.[13] Finding that Defendants failed to show that the circumstances justified a stay of the preliminary injunction, the Court declined to do so.[14] The next day, Defendants asked the Fifth Circuit to enter an emergency stay until such time that the panel could evaluate the merits of the preliminary injunction.[15] The Fifth Circuit denied this request.[16]

Between the issuance of the preliminary injunction on October 7, 2023, and the Fifth

---

[8] *See* Tr. of Oct. 2, 2023 Hr'g 133, ECF No. 56 ("I think we agree on the way that [these] guns work. I think the disagreement is on how the statute is applied."). Even without the arguments and evidence from October 2, 2023 hearing, Defendants' briefing at every stage of this litigation makes clear that they agree to the basic facts of how the FRT device operates.

[9] *See generally* Tr. of Aug. 2, 2023 Hr'g, *United States v. Rare Breed Triggers, LLC*, No. 1:23-cv-00369-NRM-RML (E.D.N.Y. Jan. 19, 2023) (ECF No. 140).

[10] Oct. 7, 2023 Op. & Order on Pls.' Mot. for Prelim. Inj. 1, ECF No. 53.

[11] Defs.' Notice of Appeal, ECF No. 63.

[12] Defs.' Mot. to Stay Prelim. Inj., ECF No. 64.

[13] Nov. 6, 2023 Order, ECF No. 66.

[14] Nov. 16, 2023 Order 13, ECF No. 73.

[15] Defs.' Emergency Mot. for Stay Pending Appeal, *Nat'l Assoc. for Gun Rights, Inc.. v. Garland*, No. 23-11138 (5th Cir. Nov. 17, 2023).

[16] Nov. 30, 2023 Order 7, *Nat'l Assoc. for Gun Rights, Inc. v. Garland*, No. 23-11138 (5th Cir. Nov. 30, 2023).

Circuit deciding not to stay that relief on November 30, 2023, the Supreme Court granted certiorari in *Garland v. Cargill*. No. 22-976, 144 S. Ct. 374 (Nov. 3, 2023) (mem.). The question for the Supreme Court in *Cargill* was whether a bump stock is a "machine gun" as defined by 26 U.S.C. § 5845(b). The same day, Plaintiffs sought summary judgment in this case.[17] Defendants similarly moved for summary judgment approximately one month later.[18] Although briefing on the cross-motions for summary judgment closed on January 12, 2024, the Court waited to consider these motions until after the Supreme Court's guidance in *Cargill* given that it would directly inform the merits of this case. The Supreme Court rendered its decision in *Cargill* on June 14, 2024, affirming the en banc Fifth Circuit.[19] *Garland v. Cargill*, 602 U.S. 406 (2024).

On July 23, 2024, the Court granted Plaintiffs' Motion for Summary Judgment and denied Defendants' Cross-Motion for Summary Judgment.[20] The Court entered final judgment on July 24, 2024. On August 1, 2024, Defendants sought a stay of the relief awarded to Plaintiffs.[21] The motion is now ripe for the Court's consideration following the filing of Plaintiffs' response[22] and Defendants' reply.[23]

## II.    LEGAL STANDARD

"While an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court may suspend . . . an injunction . . . on terms . . . that secure the opposing party's rights." Fed. R. Civ. Pro. 62(d). Such "[a] stay pending appeal is 'extraordinary relief' for which defendants bear a 'heavy burden.'" *Plaquemines Parish v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir.

---

[17] Pls.' Mot. for Summ. J., ECF No. 60.
[18] Defs.' Cross-Mot. for Summ. J., ECF No. 79.
[19] Pls.' Notice of Suppl. Authority, ECF No. 97.
[20] July, 23, 2024, Op. & Order on Summ. J., ECF No. 100.
[21] Defs.' Mot. to Stay J. Pending Appeal, ECF No. 104; Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal, ECF 105.
[22] Pls.' Resp. in Opp'n to Mot. To Stay J. Pending Appeal, ECF No. 107.
[23] Defs.' Reply in Supp. of Mot. to Stay J. Pending Appeal, ECF No. 109.

2023). In determining whether to grant a stay pending appeal, this Court considers "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426 (2009). Of these, "[t]he first two factors . . . are the most critical." *Plaquemines Parish*, 84 F.4th at 373. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion." *Nken*, 556 U.S. at 433–34. Importantly, "[a] stay is not a matter of right, even if irreparable injury might otherwise result," but "[i]t is instead an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case." *Plaquemines Parish*, 84 F.4th at 373 (quoting *Nken*, 556 U.S. at 433). A court must thoughtfully consider the factors because "'a stay is an intrusion into the ordinary processes of administration and judicial review.'" *Campaign for S. Equality v. Bryant*, 773 F.3d 55, 57 (5th Cir. 2014) (quoting *Nken*, 556 U.S. at 427).

Additionally, federal district courts possess the inherent power to control proceedings in their courts. *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987). While the exact boundaries of the district court's inherent power have not been explicitly delineated, "the exercise of an inherent power must be a 'reasonable response to the problems and needs' confronting the court's fair administration of justice." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Degen v. United States*, 517 U.S. 820, 823–24 (1996)). The power to stay any part of a case—or even the entire proceeding—is incidental to a court's power to dispose of cases to promote fair and efficient adjudication. *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994). The Court has discretion to manage its docket "with a view toward the efficient and expedient resolution of cases." *Dietz*, 579 U.S. at 47 (2016).

## III.    ANALYSIS

Defendants "respectfully request that this Court enter a stay pending . . . appeal . . . , or at a minimum stay those aspects of the final judgment that impose affirmative obligations on ATF to return certain FRT devices and issue remedial notices and extend injunctive relief to unidentified individuals and entities."[24] The Court considers the motion in two parts, beginning with whether to stay the entire final judgement and then turning to the implicit question of whether to amend the deadline to comply with the affirmative obligations.

Applying the four well-established factors here and considering the arguments raised by the parties, the Court determines that Defendants have *not* met their burden to show that the Court should "exercise . . . judicial discretion" to stay the *entire* final judgment pending appeal in this "particular case." *Plaquemines Parish*, 84 F.4th at 373.

That said, construing Defendants narrow request regarding the affirmative obligations as a motion to extend the time period for compliance with the affirmative obligations, the Court exercises its discretion to extend the deadline as to the affirmative obligations to return FRTs and engage in a remedial mail campaign in light of the administrability concerns raised by Defendants.[25]

### A.  Stay Pending Appeal

The Court stands on its prior analysis and fully incorporates the reasoning here.[26] Nonetheless, the Court will address the four factors below.

### 1.  Success on the Merits

---

[24] Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal 1, ECF 105.
[25] *See Id.* 4–5, ECF 105 (explaining the practical difficulties with complying with the deadline).
[26] *See* July, 23, 2024, Op. & Order on Summ. J. ECF 100.

The Court must first consider whether Defendants have made a *strong* showing that they are likely to succeed on the merits. *U.S. Navy Seals 1-26 v.* Biden, 27 F. 4th 336, 349–50 (5th Cir. 2022) (citing *Nken*, 556 U.S. at 426). They have not.  Defendants disagree with the Court's ultimate ruling at the summary judgment stage that FRTs are not machine guns. Defendants' arguments have been rejected on numerous occasions by the Court.[27] The only notable change in Defendants' argument is the Supreme Court's decision in *Cargill*, which was addressed and rejected in the order with which Defendants now take issue.

First, Defendants argue that because of the Supreme Court's ruling in *Garland v. Cargill*, 602 U.S. 406 (2024), an appellate court is likely to render a different outcome than the decision reached by this Court.[28] In support, Defendants argue *Cargill* defines trigger in such a way to include FRTs.[29] Plaintiffs argue *Cargill* clearly demonstrates "it is the physical movement of the trigger that matters, not the movement of the trigger finger, or pull of the trigger."[30] After considering Defendants' argument—and having already considered this aspect of *Cargill* at the summary judgment stage—the Court agrees with the Plaintiffs. Both versions of *Cargill* support the conclusion that the ATF's classification decision cannot stand. Indeed, the record in this case is clear: "FRTs do not fire multiple rounds with a single function of the trigger and, thus, do not qualify as machineguns."[31]

The Court previously determined that Plaintiffs succeed on the merits in light of the Supreme Court's opinion in *Cargill*.[32] Defendants' reading of the case does not compel a different

---

[27] *See e.g.* July, 23, 2024, Op. & Order on Summ. J., ECF 100; Oct. 7, 2024 Op. & Order on Pls.' Mot. for Prelim. Inj., ECF No. 53; Aug. 30, 2024 Op. & Order on Pls.' Mot. for TRO, ECF No. 36.

[28] Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal 6, ECF No. 105.

[29] *Id.* at 7(quoting *Cargill*, 602 U.S at 415–16) ("a 'trigger' is an apparatus, such as a 'movable catch or lever,' that 'sets some force or mechanism in action,'").

[30] Pls.' Resp. in Opp'n to Mot. To Stay J. Pending Appeal 3, ECF No. 107 (citing *Cargill*, 602 U.S. at 422).

[31] July, 23, 2024, Op. & Order 41 on Summ. J., ECF No. 100.

[32] *Id.* at 41–47.

conclusion. There are no new arguments or authorities in the Supreme Court's decision in *Cargill*. Accordingly, the Court finds that Defendants, *who bear the burden* to show a stay pending appeal is warranted, fail to meet their burden here, let alone produce the "strong" showing required for such "extraordinary relief" as a stay pending appeal. *Plaquemines Parish*, 84 F.4th 373. Therefore, this factor weighs heavily against granting a stay.

### 2. Irreparable Harm

Regarding the second stay factor, the Court concludes that Defendants have not shown that they will suffer irreparable harm absent a stay pending appeal.

Defendants contend the Court's final judgment "upends a decades-old understanding" of devices such as FRTs.[33] Defendants' presumption that FRTs are illegal machineguns tethers the harm to the merits of the case. If Defendants prevail on the merits, retrieval efforts would restart. Defendants contend that they are irreparably harmed because FRTs will be "impossible, to recover. " However, ATF already has or will obtain the Organization members return information. Thus, making recovery of FRTs easy if the Defendants prevail.

Next, Defendants reassert the claim that the Court's ruling will result in the acquisition of FRTs by prohibited persons.[34] As explained before "this concern exists with *any* firearm—not just FRTs."[35] The Court is *still* not persuaded that Defendants can punish law-abiding citizens—the innocent—because there are criminals who may commit crimes. The Court cannot grant the extraordinary remedy of a stay pending appeal based on what a prohibited person *might* do. FRTs only work with a preexisting firearm, which, by definition, prohibited persons cannot legally possess. If Defendants are concerned with prohibited persons acquiring FRTs, they already possess

---

[33] Defs' Rep. Mot. to Stay Final J. 11, ECF No. 109.
[34] Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal 13, ECF No. 105.
[35] Oct. 7, 2023, Op. & Order on Pls.' Mot. for Prelim. Inj. 1, ECF No. 53; July, 23, 2024, Op. & Order on Summ. J., ECF No. 100.

the authority to arrest that person now, with or without the injunction in place. *See* 18 U.S.C. § 922(g) (listing persons prohibited from using firearms). The Court was careful to emphasize this point when initially granting the preliminary injunction: "Plaintiffs may still be prosecuted for violating otherwise lawful provisions of the NFA and GCA, as well as other lawful firearms regulations."[36] And the Court continued to exercise this same caution when granting summary judgment: "Defendants may still prosecute violations of otherwise lawful provisions of the NFA and GCA, as well as other lawful firearms regulations. This relief should alleviate demonstrable injuries without unnecessarily burdening Defendants."[37] Thus, Defendants' fear regarding prohibited persons is—and continues to be—a non sequitur.

Even if Defendants' interest in enforcing their interpretation of machinegun is legitimate, that interest carries less weight in the stay analysis, because they are not likely to succeed on the merits. *Cf. Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2019) (staying injunction where the government's interest in enforcing its laws was *coupled with* its strong showing of likely success on the merits). The Fifth Circuit stressed that "any injury to [the party] is outweighed by [a] strong likelihood of success on the merits." *Freedom from Religion Foundation, Inc. v. Mack*, 4 F.4th 306, 316 (5th Cir. 2021). Indeed, "simply showing some 'possibility of irreparable injury'" does not weigh in favor of a stay because, on its own, that "standard is too lenient." *Nken*, 556 U.S. at 434–35. As noted before, "the fact that the Defendants have likely acted in violation of the law for years does not make the action any less unlawful."[38]

Finally, Defendants argue that "[t]he Court's Order will make it nearly impossible to recover FRT-15s and WOTs acquired while the Order is in effect if ATF prevails in this

---

[36] Oct. 7, 2023, Op. & Order on Pls.' Mot. for Prelim. Inj. 43, ECF No. 53.
[37] July, 23, 2024, Op. & Order on Summ. J. 59, ECF No. 100.
[38] *See* Nov. 16, 2023, Order 7, ECF No. 73 (citing ATF's history of classifying FRTs and similar devices as machineguns).

litigation."[39] But this conveniently ignores that nearly all of the injunctive relief with which Defendants contest is *identical* to the other relief that has been in effective for over ten months. And, importantly, the Fifth Circuit declined to stay this same injunctive relief. Nov. 30, 2023 Order 7, *Nat'l Assoc. for Gun Rights, Inc. v. Garland*, No. 23-11138 (5th Cir. Nov. 30, 2023). In fact, the Fifth Circuit rejected these same arguments: "Defendants argue that they will suffer irreparable harm because the injunction will make it harder for them to seize FRTs—but this assumes (wrongly, in our view) that FRTs are illegal." *Id.* at 6.

Accordingly, Defendants fail to demonstrate irreparable injury as a result of the final judgment. This is especially true given the extension of time described below. Therefore, this factor also weighs against a stay.

### 3.   Balance of Equities and the Public Interest

The Court also finds that the remaining two factors—comparative balance of the equities and the public interest—once again do not justify a stay pending appeal. The Court previously balanced the competing interests at issue in this case and reaffirms that conclusion.[40] Defendants fail to shift the equities in their favor, the Court addresses the public interest factor.[41]

Defendants reassert many arguments the Court has considered in previous motions. These arguments once again do not tip the public interest factors in their favor. Defendants concentrate on the potential harm the public will face absent a stay.[42] For instance, Defendants state "ATF has

---

[39] Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal 12, ECF No. 105.

[40] July, 23, 2024, Op. & Order on Summ. J., ECF No. 100; Oct. 7, 2024 Op. & Order on Pls.' Mot. for Prelim. Inj., ECF No. 53; Aug. 30, 2024 Op. & Order on Pls.' Mot. for TRO, ECF No. 36.

[41] Unlike the Court's prior orders, the public interest factor does not merge here because the government is the moving—rather than the opposing—party. *See U.S. Navy Seals 1-26*, 27 F.4th at 353 ("Those factors merge 'when the Government is the opposing party[,] i.e., when the government is not the party applying for a stay." (quoting *Nken*, 556 U.S. at 435)).

[42] *See* Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal 11–13, ECF No. 105 (combining irreparable harm and these factors in one section.).

encountered these devices in numerous criminal settings."[43] But this is not a causal argument. Nor is it evidence that FRTs are uniquely dangerous or more likely to be involved in criminal activity than any other firearm or firearm accessory. Defendants state that they cannot provide the specifics "due to the illicit nature of the market" yet maintain the "number of unlawfully manufactured, imported, and distributed FRT machineguns likely exceeded the number of lawfully manufactured and imported machineguns."[44] It is not at all clear what extra criminal actively is caused by an FRT as opposed to other illegally possessed firearms. And it is similarly unclear how an FRT added to the danger of these situation, particularly after the Courts ruling that FRTs are not machineguns. Thus, just like the TRO and preliminary injunction stages, Defendants "provide no specific causal arguments explaining how the public would be harmed by an injunction."[45]

The causal deficiencies become even more apparent given Defendants' previous admission that their "criminal enforcement proceedings pertaining to FRT-15s and WOTs have mainly targeted those individuals charged with multiple other gun-related felonies."[46] As observed when granting the preliminary injunction, "if the only targets of Defendants' enforcement actions are against those who violate other gun laws, then the prohibition on FRTs does nothing to protect the public."[47]

Defendants' new argument that FRTs appear like "normal triggers" is both speculative and relies on the negligence of officers handling the weapons.[48] This is not sufficient to establish that FRTs are unique threats to public safety, let alone that possession or transfer of FRTs by Plaintiffs—who, by definition in this case, are not prohibited persons—and do not pose a public

---

[43] *Id.* at 11.
[44] *Id.* at 12.
[45] Oct. 7, 2023, Op. & Order on Pls.' Mot. for Prelim. Inj. 39, ECF No. 53.
[46] Defs.' Mem. in Supp. of Mot. to Stay Pending Appeal, ECF No. 64-2.
[47] Oct. 7, 2023, Op. & Order on Pls.' Mot. for Prelim. Inj. 40, ECF No. 53.
[48] Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal 4, ECF No. 105.

safety threat. "Such a general public safety concern simply cannot serve as justification for enforcement of an illegal interpretation of a criminal statute."[49] There remains no evidence to suggest that FRTs in the hands of law-abiding citizens will disserve the public interest.

Even after *Cargill*, Defendants continue to point to the rate of fire being similar to machineguns.[50] But this fact is irrelevant to any consideration of the potential harm FRTs pose. That is because the statutory definition of machinegun—as emphasized by both versions of *Cargill*—does not define a machinegun based on this attribute. 57 F.4th at 461 (5th Cir. 2023) ("Congress did not use words describing the shooter's perspective of the weapon's rate of fire. . . . Instead, it made up an entirely new phrase—by single function of the trigger—that specifically pertains to the mechanics of a firearm."); 602 U.S. at 423 (2024) ("Congress did not write a statutory definition of 'machinegun' keyed to when a firing sequence begins and ends. Section 5845(b) asks only whether a weapon fires more than one shot 'by a single function of the trigger.') (quoting 26 U.S.C. § 5864(b)). Until Congress changes the statutory definition, any contentions regarding rate of fire have no bearing on the Court's analysis. For better or for worse, the statutory definition of machinegun does not presently include the rate of fire as an attribute of machineguns. Despite Defendants' claim that it "cannot be disputed" FRTs are "extremely dangerous," this claim does have any bearing on the analysis.[51]

Defendants argue that potential confusion can occur from the remedial mail notices. Again, this is fundamentally tied to the merits. If, as this Court has ruled, FRTs are not machine guns,

---

[49] *Id.* at 39.
[50] *See* Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal 11, ECF No. 105 ("An AR-type firearm equipped with an FRT-15 can fire at a rate comparable to an M16 machinegun—roughly 800 to 900 rounds per minute, irrespective of the shooter's skill—and often in an indiscriminate and uncontrolled fashion.").
[51] *Id.* at 11.

then informing people about the ATF's erroneous rule is not an irreparable harm but an affirmative good to inform the public who has already received false information.

In contrast, Plaintiffs would be substantially injured by a stay. The Court has already found twice —in slightly different contexts—that Plaintiffs face a substantial risk of irreparable harm if Defendants are not enjoined from engaging in enforcement activities.[52] Not only do Plaintiffs face a credible threat of prosecution (including when used coercively to confiscate property without filing charges), they also face the loss of the use and enjoyment of their property as a result of Defendants' renewed retrieval efforts. Given Plaintiffs' actual success on the merits, a stay would only undermine—and even threaten—the vindication of their rights.

As before, Defendants' "sky is falling" arguments do not overcome the serious harms Plaintiffs face. Defendants' arguments are premised entirely on a presumption that FRTs are machineguns—a conclusion rejected by the Court on three separate occasions. Defendants continue to offer speculative, conclusory statements about the supposed danger of FRTs that are not supported by their own facts. And the realities discussed above cast doubt on the parade of horribles that Defendants say will occur if the final judgment remains in effect pending appeal. Defendants do not carry their burden to show how equities now weigh in their favor. Nor do Defendants show how the public interest will be served by a stay pending appeal. To the contrary, vacatur of the ATF's classification decision, along with the accompanying declaratory and injunctive relief, collectively reestablish the status quo of non-enforcement against law-abiding citizens and serves the public interest by preventing Defendants from enforcing their unlawful definition of machinegun. For these reasons, the final two factors also weigh against a stay.

### B.  Affirmative Obligations

---

[52] Aug. 30, 2023 Opinion & Order on Pls.' Mot. for TRO 16–20, ECF No. 36; October 7, 2023 Opinion & Order on Pls.' Mot. for Prelim. Inj. 31–37, ECF No. 53.

Unlike earlier relief awarded to Plaintiffs, the Court's final judgment ordered the ATF to comply with two affirmative obligations: (1) "to return to all parties, including manufacturers, distributors, resellers, and individuals, all FRTs and FRT components confiscated or seized pursuant to their unlawful classification within **thirty (30) days** of this decision" and (2) "to mail remedial notices correcting their prior mailing campaign that 'warned' suspected FRT owners that possession of FRTs and FRT components was purportedly illegal."[53] For the same reasons discussed above, Defendants do not carry their burden for the Court to "exercise . . . judicial discretion" to stay the final judgment pending appeal in this "particular case." *Plaquemines Parish*, 84 F.4th at 373.

Nonetheless, Defendants have identified a number of practical considerations as it relates to the timeline to comply with the affirmative obligations.[54] First, "ATF does not know the identities of the Organizational Plaintiffs' claimed members, let alone which of those members is entitled to return of their FRT devices.[55] Additionally, Plaintiffs are also unaware of some members who are eligible for the return of their FRTs.[56] Defendants also contend that "returning all FRTs covered by the Order within 30 days would still not be feasible."[57] According to Defendants, the "ATF would have to locate the devices among the approximately 11,884 FRT-15s and WOTs in its possession, which may be held at different points around the country."[58] And it would also "have to determine whether the owners are otherwise prohibited persons who cannot legally own a firearm" before having to "contact the owners; and arrange for the return."[59] In sum,

---

[53] July, 23, 2024, Op. & Order on Summ. J. 63, ECF No. 100 (emphasis original).
[54] Defs.' Mem. in Supp. of Mot. to Stay J. Pending Appeal, ECF No. 105.
[55] *Id.* at 2 (citing Notice of Compliance, ECF No. 57 at ¶ 4–5).
[56] *Id.*
[57] *Id.* at 3.
[58] *Id.*
[59] *Id.* (citing Notice of Compliance, ECF No. 57 at 6, 9–15).

the ATF claims it is not able to comply with the Court's order "within 30 days—in other words, by August 22."[60] These points are well-taken.

Pursuant to the inherent power of federal courts to control proceedings, the Court determines that an extension—not a stay—is the appropriate relief here. Such an extension is in this case a "reasonable response to the problems and needs." *Degen*, 517 U.S. at 823–24. Thus, with a view toward the "fair administration of justice" in this case and to effectively vindicate the full rights of the parties who succeeded on the merits, the Court will adjust the compliance deadline. *Dietz*, 579 U.S. at 45.

The practical issues of complying with the Court's final judgment is sufficient reason for the Court, in an exercise of its inherent powers, to modify the deadline of the of the return of FTRs in the final judgment—except as it applies to the Individual Plaintiffs or members of the Organizational Plaintiffs who specifically request the return of their FRT devices and provide sufficient documentation to the ATF. Affirmative notices from a Plaintiff obviates the administrability concerns articulated by Defendants.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Stay Judgment Pending Appeal (ECF No. 104). The Court grants Defendants an additional **SIX (6) MONTHS** to comply with the affirmative obligation, which **SHALL** be completed by **February 22, 2025**. This extension does **NOT** apply to the Individual Plaintiffs or members of the Organizational Plaintiffs who specifically request the return of their FRT devices and provide sufficient documentation to the ATF. ATF shall return those as soon as is practicable following the specific request.

**SO ORDERED** this **20th day** of **August, 2024**.

---

[60] *Id.*

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., *et al.*,<br><br>     Plaintiffs,<br><br>  v.<br><br>MERRICK GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, *et al.*,<br><br>     Defendants. | Case No. 4:23-cv-00830-O |

### NOTICE OF APPEAL

All Defendants hereby appeal, to the U.S. Court of Appeals for the Fifth Circuit, the Court's July 23, 2024 Memorandum Opinion & Order, ECF No. 100, Final Judgment, ECF No. 101, and August 20, 2024 Order, ECF No. 112.

**RE108**

DATED: September 4, 2024                Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General

                                        ALEX HAAS
                                        Branch Director

                                        BRIGHAM J. BOWEN
                                        Assistant Branch Director

                                        */s/ Alexander W. Resar*
                                        LAURA B. BAKST
                                        MICHAEL P. CLENDENEN
                                        ALEXANDER W. RESAR
                                        Trial Attorneys
                                        Civil Division, Federal Programs Branch
                                        U.S. Department of Justice
                                        1100 L Street, NW
                                        Washington, DC 20005
                                        Phone:   (202) 598-7331
                                        E-mail:  alexander.w.resar@usdoj.gov

                                        *Counsel for Defendants*

24-10707.4651

**<u>Certificate of Service</u>**

On September 4, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Alexander W. Resar*

**RE110**

24-10707.4652