# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

NATIONAL ASSOCIATION FOR GUN RIGHTS, INC.; TEXAS GUN RIGHTS, INC.; PATRICK CAREY; JAMES WHEELER; & TRAVIS SPEEGLE,
*Plaintiffs-Appellees*,

v.

MERRICK GARLAND, U.S. ATTORNEY GENERAL; UNITED STATES DEPARTMENT OF JUSTICE; STEVEN DETTELBACH, IN HIS OFFICIAL CAPACITY AS DIRECTOR OF THE BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES,
*Defendants-Appellants*

On Appeal from the United States District Court for the
Northern District of Texas; No. 4:23-cv-830

## MOVANT STATES' MOTION TO INTERVENE AS
## DEFENDANTS-APPELLANTS

MATTHEW J. PLATKIN
*Attorney General of New Jersey*
JEREMY M. FEIGENBAUM
*Solicitor General*
SHANKAR DURAISWAMY
*Deputy Solicitor General*
MARIE V. CEPEDA MEKOSH
MAX G. LESSER
*Deputy Attorneys General*
New Jersey Attorney General's Office
33 Washington Street, 9th Floor
Newark, New Jersey 07102
*Attorneys for Movant States*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

Movant States

Matthew J. Platkin, Attorney General of New Jersey

Philip J. Weiser, Attorney General of Colorado

William Tong, Attorney General of Connecticut

Kathleen Jennings, Attorney General of Delaware

Anne E. Lopez, Attorney General of Hawai'i

Kwame Raoul, Attorney General of Illinois

Anthony G. Brown, Attorney General of Maryland

Andrea Joy Campbell, Attorney General of Massachusetts

Dana Nessel, Attorney General of Michigan

Keith Ellison, Attorney General of Minnesota

Aaron D. Ford, Attorney General of Nevada

Jeff Jackson, Attorney General of North Carolina

Dan A. Rayfield, Attorney General of Oregon

Peter F. Neronha, Attorney General of Rhode Island

Charity R. Clark, Attorney General of Vermont

Nicholas W. Brown, Attorney General of Washington

<u>Counsel for Movant States</u>

Jeremy M. Feigenbaum

Shankar Duraiswamy

Marie V. Cepeda Mekosh

Max G. Lesser

<u>Counsel for Colorado</u>

Shannon Stevenson

<u>Counsel for Connecticut</u>

James M. Belforti

<u>Counsel for Delaware</u>

Ian R. Liston

Vanessa L. Kassab

<u>Counsel for Hawai'i</u>

Ewan C. Rayner

<u>Counsel for Illinois</u>

Alex Hemmer

<u>Counsel for Maryland</u>

Jessica M. Finberg

Counsel for Massachusetts

Anna Lumelsky

Counsel for Attorney General Dana Nessel on behalf of the People of Michigan

Adam R. de Bear

Counsel for Minnesota

Liz Kramer

Counsel for Nevada

Heidi Parry Stern

Counsel for North Carolina

Daniel P. Mosteller

Counsel for Oregon

Brian Simmonds Marshall

Counsel for Rhode Island

Sarah W. Rice

Counsel for Vermont

Jonathan T. Rose

Rosemary M. Kennedy

Counsel for Washington

William McGinty

Merrick Garland, U.S. Attorney General

United States Department of Justice

Steven Dettelbach, in his official capacity as Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives

Bureau of Alcohol, Tobacco, Firearms, and Explosives

Counsel for Defendants-Appellants

Brian B. Boynton

Leigha Simonton

Mark B. Stern

Bradley Hinshelwood

Laura Bakst

Plaintiffs-Appellees

National Association for Gun Rights, Inc.

Texas Gun Rights, Inc.

Patrick Carey

James Wheeler

Travis Speegle

Counsel for Plaintiffs-Appellees

Gary Lawkowski

Whitney A. Davis

Glenn D. Bellamy

*Amici Curiae*

Brady Center to Prevent Gun Violence

Giffords Law Center to Prevent Gun Violence

Everytown for Gun Safety Support Fund

March For Our Lives

Alan Wilson, Attorney General of South Carolina

Andrew Bailey, Attorney General of Missouri

Ashley Moody, Attorney General of Florida

Austin Knudsen, Attorney General of Montana

Ben Toma, Speaker of the Arizona House of Representatives

Brenna Bird, Attorney General of Iowa

Bridget Hill, Attorney General of Wyoming

Christopher M. Carr, Attorney General of Georgia

Dave Yost, Attorney General of Ohio

Drew H. Wrigley, Attorney General of North Dakota

Gentner F. Drummond, Attorney General of Oklahoma

Jason Miyares, Attorney General of Virginia

John M. Formella, Attorney General of New Hampshire

Jonathan Skrmetti, Attorney General and Reporter of Tennessee

Ken Paxton, Attorney General of Texas

Kris Kobach, Attorney General of Kansas

Liz Murrill, Attorney General of Louisiana

Lynn Fitch, Attorney General of Mississippi

Marty J. Jackley, Attorney General of South Dakota

Michael T. Hilgers, Attorney General of Nebraska

Patrick Morrisey, Attorney General of West Virginia

Raúl R. Labrador, Attorney General of Idaho

Russell Coleman, Attorney General of Kentucky

Sean D. Reyes, Attorney General of Utah

Steve Marshall, Attorney General of Alabama

Tim Griffin, Attorney General of Arkansas

Theodore E. Rokita, Attorney General of Indiana

Treg Taylor, Attorney General of Alaska

Warren Peterson, President of the Arizona Senate

Jeffrey Rounds

Evan Jones

Counsel for *Amici Curiae*

Ian Simmons

David K. Roberts

Danielle N. Siegel

Douglas N. Letter

Shira Lauren Feldman

Esther Sanchez-Gomez

David Pucino

Eric Tirschwell

Aaron Esty

Everytown Law

Ciara Wren Malone

Christian B. Corrigan

Peter M. Torstensen, Jr.

Michael R. Williams

Flores Law PLLC

Chad Flores

/s/ Jeremy M. Feigenbaum

Jeremy M. Feigenbaum
*Counsel for Movant States*

# TABLE OF CONTENTS

**Pages**

INTRODUCTION ...................................................................................1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ................................2

ARGUMENT ......................................................................................6

    I.    MOVANT STATES ARE ENTITLED TO INTERVENE AS OF RIGHT ...........................................................6

        A.    Movant States Have Substantial Interests In The Classification Of FRTs That May Be Impaired By This Action ...............................................7

        B.    Movant States' Interests Are No Longer Adequately Represented, And Movant States Swiftly Intervened In Light Of That Change .............................15

    II.    PERMISSIVE INTERVENTION IS APPROPRIATE............20

CONCLUSION ....................................................................................20

# TABLE OF AUTHORITIES

<b>Page(s)</b>

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
    458 U.S. 592 (1982)................................................................13, 14

*Baker v. Wade*,
    769 F.2d 289 (5th Cir. 1985) ..............................................18

*Brumfield v. Dodd*,
    749 F.3d 339 (5th Cir. 2014) ................................6, 7, 15, 17

*California v. ATF*,
    718 F. Supp. 3d 1060 (N.D. Cal. 2024)..........................8, 12

*California v. Azar*,
    911 F.3d 558 (9th Cir. 2018) ..............................................11

*California v. Texas*,
    593 U.S. 659 (2021)............................................................17

*Cameron v. EMW Women's Surgical Ctr.*,
    595 U.S. 267 (2022)............................................................18

*Castillo v. Cameron Cty., Tex.*,
    238 F.3d 339 (5th Cir. 2001) ..............................................13

*Cook Cnty. v. Texas*,
    37 F.4th 1335 (7th Cir. 2022) .............................................19

*Day v. Apoliona*,
    505 F.3d 963 (9th Cir. 2007) ..............................................18

*DeOtte v. State*,
    20 F.4th 1055 (5th Cir. 2021) .......................6, 7, 11, 16, 18

*Entergy Gulf States La. v. EPA*,
    817 F.3d 198 (5th Cir. 2016) ........................................15, 16

*Env't Integrity Project v. Wheeler*,
    No. 20-1734, 2021 WL 6844257 (D.D.C. Jan. 27, 2021) ..................................15

*Field v. Anadarko Petro. Corp.*,
   35 F.4th 1013 (5th Cir. 2022) ...................................................................6

*Garland v. Cargill*,
   602 U.S. 406 (2024)....................................................................................6

*Gen. Land Office v. Biden*,
   71 F.4th 264 (5th Cir. 2023) ...............................................................8, 11

*Hernandez v. Team Fin., L.L.C.*,
   80 F.4th 571 (5th Cir. 2023) ...................................................................18

*Huisha-Huisha v. Mayorkas*,
   No. 22-5325, 2022 WL 19653946 (D.C. Cir. Dec. 16, 2022)...........................19

*La Union del Pueblo Entero v. Abbott*,
   29 F.4th 299 (5th Cir. 2022) .................................................................6, 7

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*,
   659 F.3d 421 (5th Cir. 2011) ...................................................................8

*In re Lease Oil Antitrust Litig.*,
   570 F.3d 244 (5th Cir. 2009) .................................................................18

*Louisiana State v. Nat'l Oceanic & Atmospheric Admin.*,
   70 F.4th 872 (5th Cir. 2023) ..................................................................10

*Mandan, Hidatsa & Arikara Nation v. Dep't of the Interior*,
   66 F.4th 282 (D.C. Cir. 2023)..........................................................15, 16

*Massachusetts v. EPA*,
   549 U.S. 497 (2007)................................................................................14

*Massachusetts v. U.S. Dep't of HHS*,
   923 F.3d 209 (1st Cir. 2019)...................................................................11

*Melone v. Coit*,
   100 F.4th 21 (1st Cir. 2024).....................................................................9

*Newby v. Enron Corp.*,
   443 F.3d 416 (5th Cir. 2006) ..................................................................20

*Paxton v. Dettelbach,*
    105 F.4th 708 (5th Cir. 2024) ...............................................12, 13, 14

*Peruta v. Cnty. of San Diego,*
    824 F.3d 919 (9th Cir. 2016) ...............................................18

*Platkin v. Glock,*
    N.J. Super Ct. No. ESX-C-286-24 (Dec. 12, 2024) ...........................................3

*Sierra Club v. City of San Antonio,*
    115 F.3d 311 (5th Cir. 1997) ...............................................13

*Stallworth v. Monsanto Co.,*
    558 F.2d 257 (5th Cir. 1977) ...............................................17

*State v. Biden,*
    10 F.4th 538 (5th Cir. 2021) ...............................................8, 11

*Texas v. United States,*
    328 F. Supp. 3d 662 (S.D. Tex. 2018)...............................................8

*Texas v. United States,*
    787 F.3d 733 (5th Cir. 2015) ...............................................12

*Texas v. United States,*
    805 F.3d 653 (5th Cir. 2015) ...............................................6, 7, 9, 20

*Texas v. United States,*
    809 F.3d 134 (5th Cir. 2015) ...............................................12

*Texas v. United States,*
    No. 18-68, 2018 WL 11226239 (S.D. Tex. June 25, 2018) ........................13, 17

*United States v. Rare Breed Triggers, LLC,*
    690 F. Supp. 3d 51 (E.D.N.Y. 2023) ...............................................4, 5

*Va. House of Delegates v. Bethune-Hill,*
    587 U.S. 658 (2019)...............................................9

*W. Energy All. v. Zinke,*
    877 F.3d 1157 (10th Cir. 2017) ...............................................15

xi

*Wal-Mart Stores v. Tex. Alc. Beverage Comm'n*,
834 F.3d 562 (5th Cir. 2016) ...................................................7, 17, 19

**Statutes**

720 ILCS 5/24-1(a)(14) .............................................................9

26 U.S.C. § 5845(b) ...............................................................2, 4

N.J. Stat. Ann. 18A:64G-6.1a .................................................11

N.J. Stat. Ann. § 2C:39-1(i) ..................................................9, 12

N.J. Stat. Ann. § 2C:39-5(a) .....................................................12

**Rules**

Fed. R. Civ. P. 24 ................................................................1, 6, 8, 9, 20

**Other Authorities**

Caroline Linton, *Trump and Harris' Policy Plans & Views on Gun
Control for the 2024 Election*, CBS News (Nov. 4, 2024),
https://tinyurl.com/bdf5kpku ..................................................16

CRIME GUNS – VOLUME TWO, PART VII (Jan. 11, 2023)...........................3

*Firearms Trace Data 2023*,
ATF, https://tinyurl.com/4z6c2ex6.........................................4

F.Y. 2024 CONGRESSIONAL BUDGET SUBMISSION, ATF, 14
(MAR. 2023), https://tinyurl.com/445shfcw ..........................3

F.Y. 2025 PERFORMANCE BUDGET CONG. SUBMISSION, U.S. DEP'T OF
JUSTICE – ATF, 11 (FEB. 2024), https://tinyurl.com/y283azsh ............3

Lindsay Whitehurst, *Supreme Court Strikes Down Trump-Era Ban on
Rapid-Fire Rifle Bump Stocks (*June 14, 2024),
https://tinyurl.com/4rb3wjr8 .................................................16

Scott Glover & Curt Devine, *A Device that Can Turn a Semi
Automatic Weapon into a Machinegun in Moments Is Wreaking
Havoc on American Streets*, CNN (Aug. 30, 2022),
https://tinyurl.com/5n7t5v5m ................................................3

# **INTRODUCTION**

This action challenges the validity of ATF's conclusion that the Forced Reset Trigger (FRT) is prohibited by federal law. Because federal defendants can no longer be counted on to defend that classification on the merits, these sixteen Movant States now move to intervene under Rule 24.[1] Movant States have profound interests in the resolution of this appeal: the decision below will impose significant law enforcement and healthcare costs on Movant States and injure their quasi-sovereign interests—including in the safety of their residents. And though Movant States could previously rely on federal defendants to represent their interests, the President-Elect promises to overturn the current Administration's firearms policies swiftly. Movant States are thus intervening to ensure the seamless transition from one government's defense of the policy (federal) to others impacted by it (Movant States), well in advance of the February 22, 2025 date for which the district court has required return of FRTs.

This Court has previously explained that, especially in cases that bear on the public interest, putative intervenors should be allowed to participate when that would promote the greater justice and would not harm existing parties. That is precisely the case here: Movant States do not intend to delay this panel's disposition but to ensure

---

[1] The States seeking to intervene are: New Jersey, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Maryland, Massachusetts, Attorney General Dana Nessel on Behalf of the People of Michigan, Minnesota, Nevada, North Carolina, Oregon, Rhode Island, Vermont, and Washington. Movant States notified existing parties of their intent to intervene; Appellants and Appellees oppose.

adequate adversarial presentation for any subsequent stages, including to request or oppose rehearing, certiorari, or emergency relief. Movant States have participated as intervenors before this Court to defend policies the Federal Government would not, and their participation here would serve the greater justice and this Court.

## **STATEMENT OF FACTS AND PROCEDURAL HISTORY**

Movant States, like the United States, are grappling with the recent and sharp rise of machinegun conversion devices (MCDs) within their borders and the serious threat to public safety MCDs present. MCDs, which are growing cheaper and more accessible, enable semi-automatic firearms to fire automatically—oftentimes even exceeding the rate of fire of many machineguns. *See* Ex. 1 at 3 (declaration of Eric Barlow, Senior Investigator, Statewide Affirmative Firearms Enforcement Office). Semi-automatic weapons with an MCD can fire up to 20 bullets in one second. *Id.* at 4. This extraordinary rate of fire both decreases firing accuracy and increases the likelihood of multiple victims, including bystanders, and victim casualties. *Id.* at 4-5. For example, in New Jersey, one shooter fired 28 rounds from an MCD-equipped firearm in just over one second, seriously injuring three people. *Id.* at 5.

MCDs are becoming a critical public safety issue for Movant States. Although federal law prohibits "any part designed … for use in converting a weapon to a machinegun," 26 U.S.C. § 5845(b), new technologies like 3D printing have led to a staggering proliferation of MCDs. ATF has recognized a "significant rise" in MCD

recoveries, F.Y. 2025 PERFORMANCE BUDGET CONG. SUBMISSION, U.S. DEP'T OF JUSTICE – ATF, 11 (FEB. 2024), https://tinyurl.com/y283azsh, recovering 5,454 MCDs from 2017 through 2021—a 570 percent increase over the prior five-year period. NAT'L FIREARMS COMMERCE & TRAFFICKING ASSESSMENT: CRIME GUNS – VOLUME TWO, PART VII 4 (Jan. 11, 2023).

This proliferation of MCD recoveries has contributed to increasing incidents of machinegun fire, which "exploded by about 1,400% from 2019 through [2021].'" Scott Glover & Curt Devine, *A Device that Can Turn a Semi-Automatic Weapon into a Machinegun in Moments Is Wreaking Havoc on American Streets*, CNN (Aug. 30, 2022), https://tinyurl.com/5n7t5v5m. ATF further reports a "dramatic increase in the use of [MCDs] in violent crimes over the last five years." F.Y. 2024 CONGRESSIONAL BUDGET SUBMISSION, ATF, 14 (MAR. 2023), https://tinyurl.com/445shfcw. And that includes an "approximately 400% increase" from 2022 to 2023 "in firearm traces involving an MCD in which the trace was also associated with a crime of violence," including homicides, assaults, and the murder of a police officer. ROA.2011.

Movant States have also seen a significant criminal footprint for MCDs. New Jersey has identified at least 26 criminal cases where MCDs have been recovered. *See* Complaint at 1, 4-6, 51-54, *Platkin v. Glock*, N.J. Super Ct. No. ESX-C-286-24 (Dec. 12, 2024). ATF reports that state and local law enforcement are encountering MCD-equipped firearms at crime scenes and requesting ATF's aid in tracing those

weapons, including (to cite some examples from Movant States) 22 MCDs recovered in New Jersey, 392 in Illinois, and 130 in Michigan in 2023. *Firearms Trace Data 2023*, ATF, https://tinyurl.com/4z6c2ex6.

Recently, a new MCD has emerged: FRTs. FRTs replace the standard trigger on an AR-15-type rifle so that the shooter "need only pull the FRT-15 trigger once and maintain rearward pressure" to achieve rapid, continuous fire. *United States v. Rare Breed Triggers, LLC* ("*RBT*"), 690 F. Supp. 3d 51, 65 (E.D.N.Y. 2023); *see* Ex. 1 at 7-8 (noting other guns can be configured or modified to allow installation of FRTs). An FRT-equipped firearm can fire even faster than an M16 military rifle operating in automatic mode. *See* ROA.2007. Since at least 1975, ATF has classified devices that operate akin to FRTs as machineguns under federal law, as they allow a shooter to fire "automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). Strikingly, ATF has conducted 71 criminal examinations of FRTs from January 2021 through October 2023 as part of cases involving a wide range of criminal conduct. ROA.2008.

Although FRTs are hard to track because they typically do not make visible modifications to their firearm, there is significant evidence that FRTs have already proliferated. *See* ROA.2007-08 (ATF noting "law enforcement agencies may not be well-informed to ascertain whether a recovered AR-type firearm has been retrofitted with a drop-in trigger device such as the FRT-15 or WOT," meaning FRT recoveries

are "likely underreported"). For example, one manufacturer—Rare Breed Triggers ("RBT")—sold 100,000 FRTs across the United States in two years, *see RBT*, 690 F. Supp. 3d at 58, shipping packages to at least 47 States. *See* Ex. 2 at 2 (declaration submitted in *RBT*, No. 23-cv-369 (E.D.N.Y.)). The impact on Movant States is clear: among other shipments, RBT made 364 deliveries to New Jersey addresses in 2021 and 2022, Ex. 1 at 6, and shipped at least 560 FRT-15s to a dealer in Massachusetts, *see* Ex. 3 at 2 (declaration in *RBT*, No. 23-cv-369 (E.D.N.Y.)); *see also* ROA.2007-08 (prosecution for FRT possession in the District of Massachusetts). And another FRT manufacturer, Wide Open Triggers, shipped 25 packages containing one or more suspected WOTs—a version of an FRT—to addresses in New Jersey in 2021. *See* Ex. 1 at 6. Indeed, at least 23 FRTs shipped to individuals in New Jersey have been recovered by law enforcement authorities. *See id.* at 7.

ATF sued RBT in the Eastern District of New York in 2023, where it obtained a preliminary injunction against any continued distribution. 690 F. Supp. 3d 51. That court concluded the government was likely to succeed on its claim that an FRT is a "machinegun" under federal law. *Id.* at 58. The court also found that since December 2020, defendants had "sold approximately 100,000 illegal machinegun conversion devices (known as 'FRT-15' triggers)" and obtained "$39 million dollars from their customers in under two years." *Id.* That decision remains on appeal.

In July 2024, the Northern District of Texas came to the opposite conclusion. That court held that FRTs do not qualify as machineguns under *Garland v. Cargill*, 602 U.S. 406 (2024). ROA.3709. The court vacated and declared unlawful ATF's classification of FRTs as machineguns—enjoining ATF from taking enforcement action regarding FRTs against a broad swath of entities. ROA.3724-25. The United States appealed, and this Court heard argument on December 9, 2024.

## ARGUMENT

### I. MOVANT STATES ARE ENTITLED TO INTERVENE AS OF RIGHT.

Under Rule 24(a), a movant has the right to intervene where it "has an interest relating to … the subject of the action" and the outcome of the suit might "impair or impede [their] ability to protect that interest"; the existing parties cannot or will not adequately represent movant's interest; and the motion is timely. *Field v. Anadarko Petro. Corp.*, 35 F.4th 1013, 1017 (5th Cir. 2022); *see La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022). Rule 24 is "liberally construed" in favor of intervention, and courts accept a movant's factual allegations as true for purposes of the motion. *Texas v. United States*, 805 F.3d 653, 656-57 (5th Cir. 2015) (quoting *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014)); *see DeOtte v. State*, 20 F.4th 1055, 1070 (5th Cir. 2021). This Court has a "broad policy favoring intervention," under which movants have a "minimal burden." *La Union*, 29 F.4th at 305. This

Court "allow[s] intervention where no one would be hurt and the greater justice could be attained." *Texas*, 805 F.3d at 657.

### A. Movant States Have Substantial Interests In The Classification Of FRTs That May Be Impaired By This Action.

Intervenors must have a "direct, substantial, legally protectable interest in the proceedings," *Texas*, 805 F.3d at 657; *accord La Union*, 29 F.4th at 305, that "may" be "impair[ed] or impede[d]" by "the disposition of the action," *Brumfield*, 749 F.3d at 344-45. Movants must have more than "ideological" interests, *La Union*, 29 F.4th at 305 (quoting *Texas*, 805 F.3d at 657), but can meet that showing in multiple ways. *See DeOtte*, 20 F.4th at 1070 (assessing whether interest "goes beyond a generalized preference that the case come out a certain way"). Proprietary interests "are almost always adequate" to support intervening, *Texas*, 805 F.3d at 658, as are "economic interests … directly related to the litigation," *Wal-Mart Stores v. Tex. Alc. Beverage Comm'n*, 834 F.3d 562, 568 (5th Cir. 2016). But the interests need not be proprietary, *Texas*, 805 F.3d at 657, and include quasi-sovereign interests. In all events, movants' interests should be "judged by a more lenient standard if the case involves a public interest question." *Brumfield*, 749 F.3d at 344.

The disposition of this case threatens Movant States' proprietary and quasi-sovereign interests. Plaintiffs-Appellees demand, and the district court granted them, vacatur of ATF's classification and a nationwide injunction against its enforcement. That relief would eliminate or undermine ATF's ability to prevent dissemination of

FRTs into Movant States and to enforce federal law against sellers and possessors, and require ATF to return, by February 22, many of the 11,884 FRTs it confiscated. *See* ROA.4056-57 (order); ROA.2011-12 (ATF projecting court order will worsen proliferation of FRTs). That would injure Movant States in multiple ways:

State Law Enforcement Costs. Absent full ATF enforcement against FRTs as machineguns, Movant States would need to expend greater resources enforcing state laws banning FRTs or FRT-equipped firearms. *See, e.g.*, *Gen. Land Office v. Biden* (*GLO*), 71 F.4th 264, 274 (5th Cir. 2023) (holding States have an "interest in [their] fiscal policy" that suffers when States must "redirect resources" due to change in federal policy); *California v. ATF*, 718 F. Supp. 3d 1060, 1073-78 (N.D. Cal. 2024) (finding "increased cost of policing and law enforcement" based on gaps in federal regulation of ghost guns was an "injury"); *Texas v. United States*, 328 F. Supp. 3d 662, 700 (S.D. Tex. 2018) (finding standing based on the increased costs of law enforcement and other services); *cf. State v. Biden*, 10 F.4th 538, 546-47 (5th Cir. 2021) (finding increased "correctional costs" from probable increase in crime to be "cognizable, imminent injury"), *rev'd on other grounds*, *Biden v. Texas*, 597 U.S. 785 (2022).[2] The threatened costs are substantial. ATF estimates that RBT alone has

---

[2] While these cases involved challenges by States against the Federal Government and thus turned on Article III standing rather than the Rule 24 intervention analysis, a movant that can "show standing is deemed to have a sufficiently substantial interest to intervene." *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659

distributed at least 100,000 FRTs, ROA.2001-02, and other companies produce copycats, ROA.2003. Indeed, ATF has retrieved at least 11,884 FRTs. ROA.3739-40. And ATF's evidence indicates each FRT retrieval takes approximately 16 to 24 hours, split between intelligence professionals and special agents. ROA.2004-07.

The freeze of all ATF enforcement against FRTs—especially nationwide, and especially in conjunction with the required return of thousands of FRTs by February 22, 2025—would place a heavy strain on state law enforcement. A number of States already prohibit the use of firearms equipped with FRTs or prohibit FRTs standing alone. *See*, *e.g.*, N.J. Stat. Ann. § 2C:39-1(i) (New Jersey law definition of unlawful machinegun covers firearms equipped with FRTs); 720 ILCS 5/24-1(a)(14) (Illinois prohibition on devices that increase the rate of fire of semiautomatic weapons). But FRTs still end up within Movant States, and Movant States will no longer be able to rely on ATF assistance in confiscating them or bringing enforcement actions against possessors or distributors. *See* Ex. 1 at 7, 9. Said simply, the district court's ruling will force Movant States to bear the full responsibility and extensive financial costs

---

F.3d 421, 434 n.17 (5th Cir. 2011). Indeed, standing is a *higher* burden than movants bear, because under Rule 24, "an interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Texas*, 805 F.3d at 658-59; *see also, e.g.*, *Va. House of Delegates v. Bethune-Hill,* 587 U.S. 658, 663 (2019) (defendant-intervenor need not establish standing to provide defense against claims); *Melone v. Coit*, 100 F.4th 21, 28-29 (1st Cir. 2024) (same).

of enforcing prohibitions on the sale, distribution, and possession of FRTs and FRT-equipped firearms. *See id.* at 8-9 (explaining district court order would require State to "divert[] greater law enforcement resources to enforce" state ban).[3]

Movant States will also suffer considerable additional costs associated with crimes that involve FRTs. Absent a federal prohibition, more FRTs will be used in crimes within Movant States. *See id.* at 7 (explaining, based on patterns from other firearms and parts, that dissemination is certain absent federal prohibition even in States that bar FRTs—given significant interstate gun trafficking networks). And the use of FRTs in crime imposes special burdens on States. FRTs (like other MCDs) dramatically increase the rate of fire a perpetrator achieves, *supra* at 4, and Movant States "incur[] greater costs when responding to crime scenes involving devices that increase a firearm's rate of fire" even compared to other shooting crimes. Ex. 1 at 8. Because the "accelerated rate of fire [is] likely to cause increased casualties," law enforcement would need to commit further law enforcement officers to the scene to interview a "higher number of victims and witnesses"; send additional EMTs who

_____

[3] This case is distinguishable from *Louisiana State v. Nat'l Oceanic & Atmospheric Admin.,* 70 F.4th 872 (5th Cir. 2023), where the summary judgment record failed to substantiate Louisiana's claim that a new regulation would trigger greater state law enforcement spending. *Id.* at 881. The court found not only that these assertions were "speculative" and "conclusory," but that they were contradicted by record evidence showing that the federal government would offset increased state costs. *Id*. at 884. Here, Movant States provide specific explanations of the increased law enforcement, healthcare, and legislative costs—and there is no claim they will be offset.

can give "emergency medical care to more individuals injured"; and require more time from the medical examiner given the increased number of deaths. *Id.* And many States would additionally have to expend or divert resources to training officers on recognizing and safely handling firearms equipped with FRTs. *See id.* at 9.

Healthcare Costs. Plaintiffs' demands would impose considerable healthcare expenditures too. *See DeOtte*, 20 F.4th at 1068, 1070 (finding States have interests to intervene based on "financial interest" in protecting "state fisc" from a "void" left by federal law where "reasonable probability" exists that this gap "would cause the state financial injury through strain on its healthcare programs"); *Biden*, 10 F.4th at 546-48 (injury to State from change in federal policy based on increased healthcare costs); *Massachusetts v. U.S. Dep't of HHS*, 923 F.3d 209, 223-26 (1st Cir. 2019); *California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018). "The more significant injuries caused by firearms with an accelerated rate of fire and higher firing velocity leads to more medical complications for patients, which increases costs for hospitals and healthcare providers in treating patients." Ex. 4 at 3-4 (declaration of Dr. Dennis Quinlan Jr.). New Jersey, for example, has a state-owned hospital that would be affected by such projected cost increases. *See* N.J. Stat. Ann. 18A:64G-6.1a.

Legislative Costs. If ATF cannot enforce federal law to address FRTs, some Movant States must expend resources enacting legislation to address that gap. *See*, *e.g.*, *GLO*, 71 F.4th at 274 (finding State's need to "alter its laws" is an injury, since

"pressure to change state law affects quasi-sovereign interest"; discussing *Texas v. United States*, 809 F.3d 134, 153-55 (5th Cir. 2015)); *accord Texas v. United States*, 787 F.3d 733, 749 (5th Cir. 2015) (same); *California v. ATF*, 718 F. Supp. 3d 1060, 1073-78 (agreeing, in challenge to federal ghost guns policy, that States suffer harm from "enactment and implementation of state legislation" if they "ha[ve] to incur costs to regulate because ATF is not regulating"). New Jersey is again illustrative. Although New Jersey law prohibits firearms equipped with FRTs, it does not restrict FRTs standing alone. *See* N.J. Stat. Ann. §§ 2C:39-1(i); 2C:39-5(a). Absent federal enforcement, the State would need to enact legislation to prohibit the dissemination and possession of FRTs directly to address this public safety threat. *See* Ex. 5 at 6 (declaration of B. Stephan Finkel, Director of Legislative Affairs); Ex. 6 at 2 (same for Vermont).[4] New Jersey has initiated the process of drafting legislation to make clear that particular parts, including FRTs, are illegal. Ex. 5 at 6-8. But enacting new statutes requires significant resources. *See id.* at 4-8. That, too, justifies intervention

---

[4] This is distinguishable from *Paxton v. Dettelbach*, 105 F.4th 708 (5th Cir. 2024), where Texas lacked standing to challenge a statute criminalizing the production of firearm silencers based on a state law purporting to protect firearm suppressors from federal regulation. *See id.* at 710. *Paxton* acknowledged that States have a "sovereign interest in the power to create and enforce a legal code," but held that is true only if "the state statute at issue regulates behavior or provides for the administration of a state program," and "not if it simply purports to immunize state citizens from federal law." *Id.* at 716. Here, unlike in *Paxton*, Movant States' laws "regulate[] behavior," and so Movant States have valid sovereign interests in enforcing them.

to defend the ATF classification—since if ATF has the power to stop the distribution of FRTs, that mitigates the need for such legislation.

Quasi-Sovereign Interests. Movant States also have profound quasi-sovereign interests. This Court has repeatedly affirmed States' "quasi-sovereign interest in the health and well-being—both physical and economic—of [their] residents." *Castillo v. Cameron Cty., Tex.*, 238 F.3d 339, 351 (5th Cir. 2001) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982)). And it has held that this quasi-sovereign interest in residents' physical health and safety can support intervention as-of-right. *See Sierra Club v. City of San Antonio*, 115 F.3d 311, 315 (5th Cir. 1997); *Texas v. United States*, No. 18-68, 2018 WL 11226239, at *1 (S.D. Tex. June 25, 2018) (granting State's motion to intervene to defend federal policy to protect "its unique proprietary, sovereign, and quasi-sovereign interests"); *cf. also Castillo*, 238 F.3d at 351 (allowing nonparty state to appeal injunction that harmed quasi-sovereign interest). Those quasi-sovereign interests especially include States' "legitimate interest in protecting" their residents' physical health and safety "from criminal elements." *Castillo*, 238 F.3d at 351.[5]

---

[5] *Paxton*, which rejected one State's quasi-sovereign injury, is easily distinguishable. There, Texas joined individual plaintiffs in challenging an ATF rule that limited their access to silencers, claiming a quasi-sovereign right to aid those citizens in defeating the rule. 105 F.4th at 715. Here, by contrast, New Jersey is intervening to *defend* a federal policy, not to challenge it. Indeed, while Movant States acknowledge that "a State does not have standing as *parens patriae* to bring an action against the Federal

As explained above and in the attached declarations, the resolution of this case directly threatens to impair that quasi-sovereign interest. An order that prohibits ATF from taking enforcement actions to prevent dissemination of FRTs (let alone a court order, as below, that enjoins prosecutions) and mandates their return to dealers and possessors would dramatically expand the proliferation of FRTs into Movant States. *See* ROA.2001 (indicating ATF's consistent classification as machineguns of parts like FRTs helps limit the availability of such products). Even in States where FRTs or FRT-equipped firearms are unlawful, their spread—absent federal regulation—is inevitable. *See supra* at 4-5, 10; Ex. 1 at 7. And FRTs, especially the automatic fire they enable, will produce increased death and injury and long-term impacts on survivors and communities in Movant States. *See* Ex. 4 at 3-6. The direct expenditures and quasi-sovereign interests in protecting residents' lives and safety therefore support the same result: allowing Movant States to defend those interests.

---

Government," *Snapp*, 458 U.S. at 610 n.16, the so-called "*Mellon* bar" is no obstacle to a State's assertion of standing to *defend* federal action based on its quasi-sovereign interests in the health and well-being of its residents. *Cf. Massachusetts v. EPA*, 549 U.S. 497, 520 n.17 (2007) (explaining "critical difference between allowing a State to protect her citizens from the operation of federal statutes (which is what *Mellon* prohibits) and allowing a State to assert its rights under federal law (which it has standing to do)"). Further, Movant States do not rely on derivative claims regarding their individual residents' rights, *see Paxton*, 105 F.4th at 716; Movant States instead have identified significant public costs associated with the health and safety harms affecting their populations more broadly.

**B.    Movant States' Interests Are No Longer Adequately Represented, And Movant States Swiftly Intervened In Light Of That Change.**

Because the incoming Administration's views will likely diverge from those of the current Administration on firearms policy matters, existing parties no longer adequately represent Movant States' interests. The prospective intervenor's "burden of demonstrating inadequate representation … is 'minimal.'" *Entergy Gulf States La. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016) (quoting *Brumfield*, 749 F.3d at 345). The movant need only show that "representation of his interest may be inadequate," not that it is certain. *Id.* at 203; *accord Edwards*, 78 F.3d at 1005; *see also W. Energy All. v. Zinke*, 877 F.3d 1157, 1168-69 (10th Cir. 2017) (the "possibility of divergence of interest need not be great" to demonstrate inadequate representation).

Movant States clear that bar. Courts have repeatedly recognized that a "change in the [presidential a]dministration raises 'the possibility of divergence of interest'" from a movant whose interests benefit from existing federal policy. *W. Energy*, 877 F.3d at 1168; *accord Mandan, Hidatsa & Arikara Nation v. Dep't of the Interior*, 66 F.4th 282, 284-85 (D.C. Cir. 2023); *Env't Integrity Project v. Wheeler*, No. 20-1734, 2021 WL 6844257, at *3 (D.D.C. Jan. 27, 2021) (representation may be inadequate where, "given the recent change in administration, it is not at all clear that the Federal Defendants will continue to defend the prior administration's rule"). That concern is heightened here: while federal defendants had represented Movant States' interests, the President-Elect has expressed opposition to firearm restrictions and to the Biden

Administration's ATF actions specifically. *See* Caroline Linton, *Trump and Harris' Policy Plans & Views on Gun Control for the 2024 Election*, CBS News (Nov. 4, 2024), https://tinyurl.com/bdf5kpku (citing President-Elect's promises to "terminate every single one of the Harris-Biden's attacks on law-abiding gun owners his first week in office and stand up for our constitutionally enshrined right to bear arms" and "no one will lay a finger on your firearms"); Lindsay Whitehurst, *Supreme Court Strikes Down Trump-Era Ban on Rapid-Fire Rifle Bump Stocks*, AP (June 14, 2024), https://tinyurl.com/4rb3wjr8 (President-Elect downplaying prior decision to prohibit bump stocks). Despite "having started out as an ally," federal defendants would thus now become Movant States' "adversary." *Mandan*, 66 F.4th at 284-85.

This Court's "two presumptions of adequate representation" are inapplicable. *Edwards*, 78 F.3d at 1005. While this Court presumes adequate representation if an existing party is a "governmental body or officer charged by law" with representing the putative intervenor's interests, federal defendants are not "charged by law" with representing Movant States' interests. *Id.*; *Entergy*, 817 F.3d at 203. To the contrary, States have a "heightened" interest to address the risk that federal defendants could "abandon[] any defense" of the challenged policy on the merits. *DeOtte*, 20 F.4th at 1070. Second, although representation is presumptively adequate if an existing party "has the same ultimate objective" as the putative intervenors, *Edwards*, 78 F.3d at 1005, an Administration with contrary legal and policy views does not. *See Entergy*,

817 F.3d at 203 (any "adversity of interest" undermines adequacy); *Brumfield*, 749 F.3d at 346 (adding "lack of unity in all objectives" can "suffic[e]"). Movant States have repeatedly participated in appeals before this Court as intervenors-defendants-appellants to defend federal policies that various federal defendants would not. *See*, *e.g.*, *Texas*, 2018 WL 11226239, at *1 (defending Deferred Action for Childhood Arrivals); *California v. Texas*, 593 U.S. 659, 668 (2021) (defending Affordable Care Act). Movant States' participation thereby fulfills the "very purpose of intervention" and allows these States "to air their views so that a court may consider them before making potentially adverse decisions." *Brumfield*, 749 F.3d at 345.

For related reasons, Movant States' intervention is timely—as they are filing promptly upon their interests no longer being adequately represented. *See Wal-Mart*, 834 F.3d at 565 (emphasizing timeliness is not a strict standard and "is contextual"); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 263-66 (5th Cir. 1977) (emphasizing that timeliness is "determined from all the circumstances" based upon the following: (1) length of time during which the would-be intervenor knew or should have known of his interest; (2) extent of the prejudice to the existing parties; (3) extent of prejudice to the would-be intervenor; and (4) existence of unusual circumstances militating for or against timeliness). Movant States have filed this motion as soon as the change in Administration has made it necessary, *supra* at 15-16, ensuring a seamless transition from one government's defense of the classification (federal) to others with interests

in it (States). That is dispositive; "the timeliness of [Movants States'] motion should be assessed in relation to that point in time," *i.e.*, when a "need to seek intervention" arose. *Cameron v. EMW Women's Surgical Ctr.*, 595 U.S. 267, 280 (2022); *accord Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 578 (5th Cir. 2023).

Movant States would suffer prejudice if intervention is denied. Movant States maintain proprietary and quasi-sovereign interests, *see supra* at 7-14, which would be "heightened" by a future Administration's decision to "abandon[] any defense" on the merits. *DeOtte*, 20 F.4th at 1070. Federal defendants may abandon the defense entirely, or seek to settle this lawsuit on terms favorable to the challengers, or decline to seek or oppose certiorari, rehearing, or emergency relief. If Movant States cannot intervene, they could be thwarted from opposing a settlement or seeking or opposing rehearing en banc or certiorari—or emergency relief before February 22, 2025. *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 249 (5th Cir. 2009). Intervention "is the most efficient, and most certain, way" for Movant States to avoid prejudice to their interests and to ensure continued adversarial presentation. *Id.*

By contrast, granting the motion would prejudice no party. Although Movant States seek to participate on appeal, "that factor is not dispositive" and does not show prejudice itself. *Cameron*, 595 U.S. at 280 (permitting appellate intervention); *Day v. Apoliona*, 505 F.3d 963 (9th Cir. 2007) (intervention to petition for rehearing en banc); *Peruta v. Cnty. of San Diego*, 824 F.3d 919 (9th Cir. 2016) (same); *Baker v.*

*Wade*, 769 F.2d 289 (5th Cir. 1985) (intervention to maintain appeal). Importantly, intervention does not risk delaying the appeal: Movant States do not seek briefing or argument at this stage, before a decision of this panel, because the merits arguments have been adequately represented up until this point. *See Wal-Mart*, 834 F.3d at 565-66. Instead, Movant States seek to intervene in a timely manner to retain the ability to participate in any further review of this Court's decision.

Just as Movant States have not brought this motion too late (for timeliness), Movant States have not filed too early (for adequacy), because they are not required to wait until the incoming Administration actually abandons its merits position. For one, Movant States acted swiftly to avoid any risk this Court would find their motion too late. *Compare Cook Cnty. v. Texas,* 37 F.4th 1335, 1337, 1342 (7th Cir. 2022) (denial of intervention motion); *Huisha-Huisha v. Mayorkas*, No. 22-5325, 2022 WL 19653946, at *1-2 (D.C. Cir. Dec. 16, 2022). For another, Movant States may have no formal advance notice from federal defendants of a change in position and/or a decision to settle. *Compare Cook Cnty.*, 37 F.4th at 1342. Still more, while Movant States may be justified in waiting to confirm there will be a change in position before intervening in other cases, the risk is sufficiently clear in this case. *See supra* at 15-16. And finally, any attempt to intervene subsequently could cause disruption, given the district court's February 22, 2025 deadline for ATF to return FRTs to dealers—who could then distribute them across the country.

## II.    PERMISSIVE INTERVENTION IS APPROPRIATE.

Although this Court need not reach Rule 24(b) if it grants intervention as-of-right, permissive intervention is also warranted. Rule 24(b) allows courts to approve permissive intervention where (1) the applicant "has a claim or defense that shares with the main action a common question of law or fact"; (2) the motion is timely; and (3) intervention will not delay or prejudice adjudication of the existing parties' rights. Fed. R. Civ. P. 24(b)(1)(B), (b)(3); *see also Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) (Rule 24(b) "construed liberally"). Movant States' motion is timely, *supra* at 17-19; intervention will not delay or prejudice existing parties, *supra* at 18-19; and common questions exist because Movant States seek to defend the very ATF classification the plaintiffs-appellees attack. *See Texas*, 2018 WL 10562846, at *3 (permitting States to intervene to defend Affordable Care Act). Indeed, "the greater justice could be attained" through intervention, *Texas*, 805 F.3d at 657, by ensuring that a party can defend the ATF classification even absent a federal defense. Movant States have provided this Court the practical benefit of adversarial presentation on the merits in the past, and could do so again via permissive intervention here.

## <u>CONCLUSION</u>

This Court should grant Movant States' motion to intervene as Defendants-Appellants.

Dated: January 16, 2025

Respectfully submitted,

**MATTHEW J. PLATKIN**
*Attorney General of New Jersey*

*/s/ Jeremy M. Feigenbaum*
JEREMY M. FEIGENBAUM
Solicitor General
SHANKAR DURAISWAMY
Deputy Solicitor General
MARIE V. CEPEDA MEKOSH
MAX G. LESSER
Deputy Attorneys General
New Jersey Attorney General's Office
25 Market Street
Trenton, NJ 08625
(609) 376-2690
jeremy.feigenbaum@njoag.gov

*Attorneys for the State of New Jersey*

**PHILIP J. WEISER**
*Attorney General of Colorado*

By: */s/ Shannon Stevenson*
SHANNON STEVENSON
Solicitor General
Office of the Colorado State Attorney General
1300 Broadway, Denver, CO 80203
(720) 508-6000
Shannon.Stevenson@coag.gov

*Attorneys for the State of Colorado*

**WILLIAM TONG**
*Attorney General of Connecticut*

By: */s/ James M. Belforti*

JAMES M. BELFORTI
Assistant Attorney General
Office of the Attorney General of Connecticut
165 Capitol Avenue
Hartford, CT 06105
(860) 808-5450
james.belforti@ct.gov

*Attorneys for the State of Connecticut*


**KATHLEEN JENNINGS**
*Attorney General of Delaware*

By: /s/ *Vanessa L. Kassab*
IAN R. LISTON
Director of Impact Litigation
VANESSA L. KASSAB
Deputy Attorney General
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Attorneys for the State of Delaware*


**ANNE E. LOPEZ**
*Attorney General of Hawai'i*

By: /s/ *Ewan C. Rayner*
EWAN C. RAYNER
Deputy Solicitor General
Department of the Attorney General, State of
Hawai'i
425 Queen Street
Honolulu, HI 96813
(808) 586-1360

Ewan.Rayner@hawaii.gov

*Attorneys for State of Hawai'i*

**KWAME RAOUL**
*Attorney General of Illinois*

By: */s/ Alex Hemmer*
ALEX HEMMER
Deputy Solicitor General
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(312) 814-5526
Alex.Hemmer@ilag.gov

*Attorneys for State of Illinois*

**ANTHONY G. BROWN**
*Attorney General of Maryland*

By: */s/ Jessica M. Finberg*
JESSICA M. FINBERG
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6921
jfinberg@oag.state.md.us

*Attorneys for the State of Maryland*

**ANDREA JOY CAMPBELL**
*Attorney General, Commonwealth of
Massachusetts*

By */s/ Anna Lumelsky*

ANNA LUMELSKY
Deputy State Solicitor
Office of the Massachusetts Attorney General
One Ashburton Place
Boston, MA 02108
617-963-2334
anna.lumelsky@mass.gov

*Attorneys for the Commonwealth of Massachusetts*


**DANA NESSEL**
*Attorney General of Michigan*

By: */s/ Adam R. de Bear*
ADAM R. DE BEAR
Assistant Attorney General
Michigan Department of Attorney General
525 W. Ottawa St.
Lansing, MI 48933
(517) 335-7573
debeara@michigan.gov

*Attorneys for Attorney General Dana Nessel on behalf of the People of Michigan*


**KEITH ELLISON**
*Attorney General of Minnesota*

By: */s/ Liz Kramer*
LIZ KRAMER
Solicitor General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2131
(651) 757-1010
liz.kramer@ag.state.mn.us

*Attorneys for State of Minnesota*

**AARON D. FORD**
*Attorney General of Nevada*

 /s/ Heidi Parry Stern
HEIDI PARRY STERN
(NV Bar. No. 8873)
Solicitor General
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Attorneys for the State of Nevada*


**JEFF JACKSON**
*Attorney General of North Carolina*

By: */s/ Daniel P. Mosteller*
DANIEL P. MOSTELLER
Associate Deputy Attorney General
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6026
dmosteller@ncdoj.gov

*Attorneys for State of North Carolina*


**DAN RAYFIELD**
*Attorney General, State of Oregon*


By: */s/ Brian Simmonds Marshall*
BRIAN SIMMONDS MARSHALL
Oregon Bar No. #196129
Senior Assistant Attorney General

Trial Attorney
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Brian.S.Marshall@doj.oregon.gov
*Of Attorneys for the State of Oregon*


**PETER F. NERONHA**
*Attorney General of Rhode Island*

By: */s/ Sarah W. Rice*
SARAH W. RICE
Deputy Chief, Civil Division
Office of the Rhode Island Attorney General
150 South Main Street
Providence, Rhode Island 02903
(401) 274-4400 x2054
srice@riag.ri.gov

*Attorneys for State of Rhode Island*


**CHARITY R. CLARK**
*Attorney General of Vermont*

By: */s/ Jonathan T. Rose*
JONATHAN T. ROSE
Solicitor General
ROSEMARY M. KENNEDY
Assistant Attorney General
109 State Street
Montpelier, VT 06509
(802) 828-3171
jonathan.rose@vermont.gov
rosemary.kennedy@vermont.gov
*Attorneys for State of Vermont*

**NICHOLAS W. BROWN**
*Attorney General of Washington*

By: */s/ William McGinty*
WILLIAM MCGINTY
Assistant Attorney General
Washington State Office of the Attorney General
P.O. Box 4011
Olympia, WA 98504-0111
(360) 709-6027
William.McGinty@atg.wa.gov

*Attorneys for State of Washington*

# CERTIFICATE OF COMPLIANCE

This motion complies with the word limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 5, this document contains 5,187 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because the document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

*/s/ Jeremy M. Feigenbaum*
Jeremy M. Feigenbaum
*Counsel for Movant States*

## CERTIFICATE OF SERVICE

I hereby certify that on January 16, 2025, I filed the foregoing Movant States'
Motion to Intervene as Defendant-Appellants with the Clerk of the Court for the
United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF
system. I certify that all participants in the case are registered CM/ECF users and
that service will be accomplished by the appellate CM/ECF system.

*/s/ Jeremy M. Feigenbaum*
Jeremy M. Feigenbaum
*Counsel for Movant States*