

**State of New Jersey**

PHILIP D. MURPHY
*Governor*

TAHESHA L. WAY
*Lt. Governor*

OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
OFFICE OF THE SOLICITOR GENERAL
PO BOX 080
TRENTON, NJ 08625

MATTHEW J. PLATKIN
*Attorney General*

JEREMY M. FEIGENBAUM
*Solicitor General*

March 5, 2025

Lyle W. Cayce, Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
600 S. Maestri Place, Suite 115
New Orleans, LA 70130

    Re:    *National Association for Gun Rights, Inc. v. Bondi*, No. 24-10707

Dear Mr. Cayce:

    Amici States write to notify the Court that Appellants have begun the process of returning confiscated forced reset triggers ("FRTs") in light of the February 22, 2025 return deadline imposed by the district court in the order on appeal. *See* ECF No. 126, *National Association for Gun Rights v. Bondi*, No. 23-830 (N.D. Tex.) (Feb. 19, 2025) ("Notice of Compliance") (attached hereto as Exhibit A). The return of these weapons presents a significant and irreparable danger to public safety and underscores the need for a prompt ruling from this Court reversing the district court's final judgment and order. Although Amici States are mindful that they lack party status in this case, they are writing to apprise the Court of this notable development.[1]

    Appellants' Notice of Compliance confirms the significant challenges posed by the return requirement, including the Federal Government's inability to identify the owners of confiscated FRTs. *Id.* at ¶¶ 2-5; *see* U.S. Appellant Br. 26-34. However, given the impending court-ordered deadline, Appellants have taken several steps to initiate a return process. *See* ECF No. 126 at ¶¶ 6-14. While it is unclear whether any FRT returns have been effectuated to this point, at least some

---

[1] Amici States have advised the parties of their intent to submit this letter.



HUGHES JUSTICE COMPLEX · TELEPHONE: (862) 350-5800 FAX: (609) 292-3508
*New Jersey is an Equal Opportunity Employer · Printed on Recycled Paper and Recyclable*

returns appear imminent. As detailed in our amicus brief, the return of FRTs presents a serious threat to the health, safety, and welfare of Amici States and their residents, subjecting them to a greater risk of devastating gun violence and associated law enforcement and health care costs. Moreover, although Appellants promise not to return FRTs in the States that prohibit them, Appellants have not provided any information regarding which States they believe are excluded—potentially leaving Amici States at the mercy of the Federal Government's interpretations of their own state laws.

Amici States respectfully submit that a prompt decision from this Court reversing the district court's order is needed to prevent the continued proliferation of these dangerous devices.

          Respectfully yours,

          MATTHEW J. PLATKIN
          ATTORNEY GENERAL OF NEW JERSEY

By:   /s/ Jeremy M. Feigenbaum
       Jeremy M. Feigenbaum
       Solicitor General

cc: All counsel (via ECF)

# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PAMELA BONDI, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, *et al.*,[1]<br><br>Defendants. | Case No. 4:23-cv-00830-O |

## NOTICE OF COMPLIANCE

Defendants respectfully submit this Notice of Compliance to inform the Court of actions taken by the Defendants to comply with the Court's July 24, 2024 Final Judgment, *see* ECF No. 101 ("Final Judgment"), as modified by the August 20, 2024 Order, *see* ECF No. 112 ("Order").

1.  The Final Judgment ordered Defendants, among other things, "to return to all parties, including manufacturers, distributors, resellers, and individuals, all FRTs and FRT components confiscated or seized pursuant to their unlawful classification within **thirty (30) days** of this decision." Final Judgment at 2.

2.  On August 1, 2024, Defendants filed a Motion to Stay the Judgment Pending Appeal, ECF No. 104, explaining, *inter alia*, that the Court's return requirement "presents multiple compliance problems," ECF No. 105 at 2. As Defendants described, "ATF does not know the identities of the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Attorney General Pamela Bondi is automatically substituted as a defendant in her official capacity for former Attorney General Merrick Garland. Acting Director of the Bureau of Alcohol, Tobacco, Firearms and Explosives Marvin Richardson is automatically substituted as a defendant in his official capacity for former Director Steven Dettelbach.

1

Organizational Plaintiffs' claimed members, let alone which of those members is entitled to return of their FRT devices." *Id.* (citing ECF No. 104-1 at ¶ 5 ("Varisco Decl.")). Therefore, "ATF has no ability to determine who must be returned devices under the Order." *Id.* Moreover, even if an individual self-identifies as a member of an Organizational Plaintiff, "ATF does not have the means to verify the accuracy of that representation, or whether they were, in fact, a member at the time the complaint was filed, as is necessary to receive relief." *Id.* (citing Varisco Decl. ¶ 5).

3. Additionally, as ATF explained, returns are time consuming and logistically complicated. ATF has a high volume of FRT-15s and WOTS in its possession, which are located at different points throughout the country. *See id.* at 3 (citing Varisco Decl. ¶ 6). To effectuate the returns, ATF would have to determine which of those devices belong to Organizational-Plaintiff members—presenting all the problems outlined in *supra* ¶ 2; run a background check to ensure that those members are not otherwise prohibited persons who cannot legally own a firearm; and coordinate with the owner and relevant field office where the device is held to arrange for the return. *See* ECF No. 105 at 3 (citing Varisco Decl. ¶¶ 9-15).

4. ATF also identified other foreseeable scenarios where it "is not clear what ATF is to do in such circumstances to avoid non-compliance." *Id.* This includes "that some portion of Plaintiffs' members will not be able to be located (*e.g.*, because they have moved without forwarding information or their mail is returned as undeliverable); will not respond to ATF's outreach; will decline to accept the return of their device(s), either because they do not want them or because they would prefer to wait to see if this Court's judgment is ultimately affirmed; or will be located in states where possession or sale of the devices are illegal under state law." *Id.*

5. While the Court denied Defendants' Motion to Stay, it found the above-listed "practical issues of complying" with the Final Judgment's return requirement to be "well-taken," and thus "modif[ied] the deadline of the . . . return of F[RT]s in the final judgment" to "be completed by

2

February 22, 2025." Order at 14-15. However, the Court excepted from that modification circumstances where "Individual Plaintiffs or members of the Organizational Plaintiffs . . . specifically request the return of their FRT devices and provide sufficient documentation to the ATF." *Id.* In those circumstances, Defendants must effectuate the returns "as soon as is practicable following the specific request." *Id.*

6.      Consistent with that Order, ATF developed and implemented a process for handling returns of FRT-15s and WOTs when requested by an Individual Plaintiff or covered member of an Organizational Plaintiff. *See, e.g.*, ECF No. 118-1 at ¶¶ 7-8. However, ATF continues to face the same administrability concerns outlined in its Stay Motion and above as to the February 22, 2025 deadline for returns to unidentified members. Moreover, as described in the attached Second Declaration of Matthew P. Varisco ("2d Varisco Decl."), after the Supreme Court's decision in *Cargill v. Garland*, 602 U.S. 406 (2024), ATF has been in the process of returning all non-mechanical bump stocks in its custody to identified owners, which consumed a significant amount of the agency's limited resources. 2d Varisco Decl. ¶ 10. ATF also sought to keep the two return processes separate to avoid any confusion that may have resulted from comingling them. *Id.* Notwithstanding these practical issues, ATF has undertaken, and continues to take, the following steps to ensure compliance with the Court's return requirements, as explained in the Second Varisco Declaration.

7.      On January 16, 2025, ATF sent a notice ("Notice") marked urgent to the leadership of every ATF Field Division summarizing the Court's orders in this case and, specifically, ATF's return obligations. *Id.* ¶ 11. The Notice directed that, to facilitate returns, each field division must provide a point of contact to Field Management Staff by January 21, 2025, and search ATF's case management systems to identify all entries pertaining to FRT-15s and WOTs taken into ATF custody. *Id.* A follow up meeting was held on January 29, 2025, with the identified points of contact, the Division Chief,

3

Field Management Staff, and attorneys from the Office of Chief Counsel to provide further guidance and respond to any questions. *Id.*

8. Because there was no "FRT" option regarding the description of these devices in ATF's case management systems, these devices were inconsistently labeled when entered into the systems (*e.g.*, FRT-15s and WOTs could be labeled as "FRTS," "MCDs," or "accessories"). *Id.* ¶ 12. Accordingly, the Notice directed all field divisions to separately conduct a physical inventory of FRT-15s and WOTs in their possession. *Id.* This physical inventory confirmed that the FRT-15s and WOTs seized are still in ATF's possession and identified any additional FRT-15s or WOTs that may be secured in ATF's vault. *Id.*

9. The Notice next directed the field divisions to determine which FRT-15s and WOTs in physical inventory were seized as part of a criminal investigation with charges other than possession of FRT-15s and WOTs in suspected violation of 18 U.S.C. § 922(o) (such as criminal investigations into individuals prohibited from possessing firearms under 18 U.S.C. § 922(g) or criminal investigations in which FRT-15s and WOTs were used in the commission of criminal activity) and which devices were seized as part of a recall/abandonment. *Id.* ¶ 13. Devices associated with such criminal cases will not be returned. *Id.*; *see* ECF No. 100 at 58 ("Summary Judgment Order") ("Defendants may still prosecute violations of otherwise lawful provisions of the NFA and GCA, as well as other lawful firearms regulations."); Final Judgment at 2 (requiring returns of FRT devices "confiscated or seized pursuant to . . . [ATF's] classification"). *See also* Summary Judgment Order at 58 (recognizing that "respect for coordinate courts also guides the scope of the relief awarded here" and excluding from injunction "pending criminal cases since that would interfere with another court")).

10. The Notice then directed each supervisory special agent to prepare a list of FRT-15s and WOTs in ATF custody, but not subject to a pending criminal investigation or case, and to record

4

for each FRT-15/WOT: the possessor's name; last known address; phone number; email address (if known); case number; date of seizure; and item number. 2d Varisco Decl. ¶ 14. The Notice then directed each supervisory special agent to provide that list to the field division's point of contact on or before February 10, 2025. *Id.* The field division point of contact was directed to consolidate those lists so that each field division provides ATF's Office of Chief Counsel with a single list by February 14, 2025. *Id.*

11. Upon receipt of this information, the ATF Office of Chief Counsel contacted the owners of the FRT-15 and WOTs based on the last known contact information identified in the field division lists. *Id.* ¶ 15. ATF advised them that ATF has possession of their FRT-15 or WOT and that, consistent with the Court's Final Judgment and Order, if they wish to obtain return of their device, they must provide proof of membership in an Organizational Plaintiff at the time this suit was filed to a designated ATF email address. *Id.* ATF began sending such notices on February 11, 2025, and, as of the date of this filing, that notification process is complete. *Id.* ¶ 16.

12. Because this Court's orders do not require ATF to return FRT-15s and WOTs to persons prohibited from possessing firearms under 18 U.S.C. § 922(g), *see* ECF No. 100 at 60, a background check will be run on those who provide requisite proof of membership to determine whether they are entitled to a return of their FRT-15s or WOTs. 2d Varisco Decl. ¶ 18. The names of those entitled to return of their FRT-15s and WOTs will then be filtered by state of residence at the time of seizure and provided to the appropriate field division for those states, *i.e.* to the field divisions likely to maintain possession of their device(s). *Id.* The field division will then process the property for release through the field division chain of command. *Id.* ¶ 19. The field divisions will be reminded that these releases are to be expedited. *Id.* Once the appropriate approvals occur, ATF's Office of Chief Counsel will reach out to the property owner and inform them who to contact to arrange the transfer.

5

*Id.* ATF will not, however, return FRT-15s and WOTs in states where possession of FRT-15s and WOTs is illegal under state law. *Id.*

13. ATF has also provided information regarding its FRT-15 and WOT return efforts on its publicly available website, *see* ATF, "Rare Breed Triggers' FRT-15 and Wide-Open Triggers (WOTs) Return," *available at*: https://www.atf.gov/firearms/rare-breed-triggers%E2%80%99-frt-15s-and-wide-open-triggers-wots-return (last accessed Feb. 12, 2025), along with a dedicated email address (FRT.Return@atf.gov) for affected parties to contact ATF about return of FRT-15s and WOTs. 2d Varisco Decl. ¶ 17.

14. Finally, ATF is complying with the Court's order requiring that it send remedial notices to those who previously received ATF letters warning suspected FRT owners that possession of FRTs and FRT components was illegal. *Id.* ¶¶ 9, 20-21. On February 12, 2025, each ATF Field Division was directed to send a remedial notice to every recipient of an earlier warning notice and instructed that such notice be postmarked by February 21, 2025. *Id.* ¶ 22. ATF also posted the remedial notice on its website on February 13, 2025. *Id.* ¶ 23.

DATED: February 19, 2025

Respectfully submitted,

BRETT A. SCHUMATE
Acting Assistant Attorney General

ALEX HAAS
Branch Director

ANDREW I. WARDEN
Assistant Director

/s/ *Laura B. Bakst*
LAURA B. BAKST
MICHAEL P. CLENDENEN
ALEXANDER W. RESAR
Trial Attorneys
Civil Division, Federal Programs Branch

U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 514-3183
E-mail: Laura.b.bakst@usdoj.gov

*Counsel for Defendants*

## **Certificate of Service**

On February 19, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Laura B. Bakst*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PAMELA BONDI, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, *et al.*,<br><br>Defendants. | Case No. 4:23-cv-00830-O |

## SECOND DECLARATION OF MATTHEW P. VARISCO

1. I am the Assistant Director for the Office of Field Operations within the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), United States Department of Justice ("DOJ"). I have been in this position since March 2024. Prior to my current position, I was the Assistant Director for the Office of Enforcement Programs and Services (Regulatory Operations), the Special Agent in Charge of the Philadelphia Field Division, and I have served as an ATF Special Agent for over 24 years.

2. In my current senior executive position, I direct policy, conduct planning, and oversee all ATF criminal investigations and regulatory oversight for ATF's 25 field divisions.

3. I am authorized to provide this Declaration on ATF's behalf and am providing it in support of Defendants' Notice of Compliance. This declaration is based on my personal knowledge and belief, my training and experience, as well as information conveyed to me by ATF personnel in the course of my official duties.

4. After this Court issued its October 7, 2023 Preliminary Injunction, ATF promptly took significant steps to ensure compliance with this Court's order. These steps are outlined in the Notice of Compliance filed in this case on October 20, 2023. *See* ECF No. 57.

5. On July 23, 2024, the Court granted summary judgment in favor of the Plaintiffs. In addition to continuing to enjoin the matters covered by its preliminary injunction, the Court also imposed affirmative obligations on ATF, including a requirement that ATF return certain FRTs in its possession within 30 days and "mail remedial notices correcting [ATF's] prior mailing campaign that 'warned' suspected FRT owners that possession of FRTs and FRT components was purportedly illegal." ECF No. 100 at 63.

6. On August 1, 2024, Defendants filed a Motion to Stay the Judgment Pending Appeal, ECF No. 104, explaining, among other things, that the Court's return requirement "presents multiple compliance problems," ECF No. 105 at 2. As I described in an earlier declaration, ATF does not know the identities of the Organizational Plaintiffs' claimed members, or which of those members are entitled to return of their FRT devices. *Id.* (citing ECF No. 104-1 at ¶ 5 ("Varisco Decl.")). As a result, ATF is not able to determine who must be returned devices under the court's Order. *Id.* Even if an individual self-identifies as a member of an Organizational Plaintiff, ATF would still face difficulties in ensuring compliance. For one, ATF does not have the means to verify the accuracy of a claimed membership or whether that membership was established at the time the complaint filed, as is necessary to receive relief. *Id.* (citing Varisco Decl. ¶ 5).

7. Complying with the return requirement presents other challenges as well. As I previously explained, returns are time consuming and logistically complicated. ATF has a high number of FRT-15s and WOTS in its possession, which are kept in ATF facilities throughout the country. *See id.* at 3 (citing Varisco Decl. ¶ 6). To effectuate the returns, ATF has to determine

2

8. which of those devices belong to Organizational-Plaintiff members—presenting all the problems outlined in above and in my prior declaration; run a background check to confirm that those members are not otherwise prohibited from legally owning a firearm; and coordinate with the owner and relevant field office where the device is located to arrange for the return. *See id* (citing Varisco Decl. ¶¶ 9-15).

8. On August 20, 2024, in response to concerns raised in Defendants' Motion to Stay, *see* ECF No. 104, the Court issued an Order granting Defendants an additional six months to comply with the affirmative obligation regarding the return of FRT-15s and WOTs. *See* ECF No. 112. Additionally, the court similarly extended the deadline for ATF to "mail remedial notices." *Id.*

9. Consistent with that Order, ATF has prepared remedial notices, which ATF has begun sending. ATF has also developed and implemented a process for effectuating returns of FRT-15s and WOTs when requested by an Individual Plaintiff or a covered member of an Organizational Plaintiff who provides ATF with evidence of a qualifying membership. However, ATF continues to face the administrability concerns outlined in its Stay Motion and in my prior and current declaration as to returns of FRT-15s and WOTs to unidentified members.

**The Return of FRT-15s and WOTS**

10. In addition, after the Supreme Court's decision in *Cargill v. Garland*, ATF has been in the process of returning all non-mechanical bump stocks in its custody to identified owners. This process consumed a significant amount of the agency's already limited resources, and ATF believed keeping these return processes separate would be more efficient, as the parameters of the returns were different and it would avoid any confusion that could result by comingling the two different devices or possessors' contact information.

3

11. On January 16, 2025, ATF sent a notice ("Notice") marked urgent to the leadership of every ATF Field Division summarizing the Court's orders in this case and ATF's return obligations. To facilitate returns, the Notice directs each field division to provide a point of contact to Field Management Staff by January 21, 2025, and to search ATF's case management systems to identify all entries pertaining to FRT-15s and WOTs taken into ATF custody. A follow up meeting was held by Field Management Staff and the Office of Chief Counsel on January 29, 2025, with the identified points of contact to provide further guidance regarding the returns process and obligations and to address any questions.

12. Because there is no "FRT" option when describing these devices upon entry into ATF's case management systems, they are inconsistently labeled in the systems. For example, FRT-15s and WOTs could be labeled as "FRTs," "MCDs," or "accessories". The Notice therefore directs all field divisions to separately conduct an additional physical inventory of FRT-15s and WOTs in their possession. This physical inventory will confirm the FRT-15s and WOTs seized are still in ATF's possession and identify any additional FRT-15s or WOTs that may be secured in a vault maintained by ATF.

13. The Notice next directs the field divisions to determine which FRT-15s and WOTs in its physical inventory were seized as part of a criminal investigation with charges other than possession of FRT-15s and WOTs in suspected violation of 18 U.S.C. § 922(o) and which devices were seized as part of a recall/abandonment. The former category of devices could include those seized during criminal investigations into individuals prohibited from possessing firearms under 18 U.S.C. § 922(g) or criminal investigations in which FRT-15s and WOTs were used in the commission of criminal activity. Devices associated with criminal cases will not be returned. Relatedly, devices seized pursuant to search warrants or under the jurisdiction of other courts with regard to ongoing forfeiture matters will not be returned.

4

14. The Notice then directs each supervisory special agent to prepare a list of FRT-15s and WOTs in ATF custody, but not subject to a pending criminal investigation or case, and to record for each FRT-15/WOT: the possessor's name; last known address; phone number; email address (if known); case number; date of seizure; and item number. The Notice then directs each supervisory special agent to provide that list to the field division's point of contact by February 10, 2025. The field division point of contact is directed to consolidate those lists so that each field division provides ATF's Office of Chief Counsel with a single list by February 14, 2025.

15. Upon receipt of this information, the ATF Office of Chief Counsel will contact via Fed Ex the owners of the FRT-15 and WOTs based on the last known contact information identified in the field division lists. In the event the address is for a P.O. Box, ATF will send the notification via certified mail. ATF will advise recipients that ATF has possession of their FRT-15 or WOT and that, consistent with the Court's Final Judgment and Order, if they wish to obtain return of their device, they must provide proof of membership in an Organizational Plaintiff at the time this suit was filed to a designated ATF email address.

16. ATF began sending notifications on February 11, 2025. As of the date of this filing, the notification process is complete.

17. Additionally, on February 10, 2025, ATF posted on its public website that it had begun sending notices to owners of FRT-15s and WOTs that were seized by ATF as part of an earlier recall effort with instructions to request their return, if the owner of the device is covered by the Court's orders. *See* ATF, "Rare Breed Triggers' FRT-15 and Wide-Open Triggers (WOTs) Return," *available at*: https://www.atf.gov/firearms/rare-breed-triggers%E2%80%99-frt-15s-and-wide-open-triggers-wots-return (last accessed Feb. 12, 2025). The website also provides a dedicated email address (FRT.Return@atf.gov) for affected parties to contact ATF about return of FRT-15s and WOTs.

18. Because this Court's orders do not require ATF to return FRT-15s and WOTs to persons prohibited from possessing firearms under 18 U.S.C. § 922(g), a background check will be run on those who provide appropriate proof of membership to determine whether they are entitled to a return of their FRT-15s or WOTs. The names of those entitled to return of their FRT-15s and WOTs will then be filtered by state of residence at the time of seizure and provided to the appropriate field division for those states, which is the field division most likely to maintain possession of the device(s).

19. The field division will then process the property for release through the field division chain of command. The field divisions will be reminded that these releases are to be expedited. Once the appropriate approvals occur, ATF's Office of Chief Counsel will promptly reach out to the property owner and inform them who to contact to arrange the transfer. ATF will not, however, return FRT-15s and WOTs in states where possession of FRT-15s and WOTs is illegal under state law.

**The Remedial Notice**

20. Consistent with the Court's orders, ATF is also sending remedial notices to all recipients of ATF's prior warning letters regarding FRTs. All recipients of the above-referenced return notices will also receive a remedial notice in the same mailing.

21. The remedial notice reiterates this Court's holding that FRT-15s and WOTs are not machineguns under the National Firearms Act and, as such, their possession is not in violation of Federal law. The notice also clarifies that any duty to notify ATF of possession of FRT-15s and WOTs, or their components, as stated in the original warning notices no longer applies.

22. On February 12, 2025, each ATF Field Division was instructed to send a remedial notice to every recipient of the earlier warning notices and directed that such notice be postmarked by February 21, 2025.

23. On February 13, 2025, ATF posted the remedial notice on its website.

Executed on February 19, 2025.

                                                                                                                 _____

                                                                                                                 Matthew P. Varisco
                                                                                                                  Assistant Director