

177 Post Street, Suite 700
San Francisco, CA 94108

Michael A. Columbo
Phone: 415.944.4996
MColumbo@DhillonLaw.com

March 6, 2025

**Via ECF**
Honorable Lyle W. Cayce, Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
600 S. Maestri Place, Suite 115
New Orleans, LA 70130

    Re: *National Association for Gun Rights, Inc., et al. v. Bondi, et al.*
       No. 24-10707

Dear Mr. Cayce:

  This firm represents Plaintiffs-Appellees in the captioned matter. We have received the notification letter filed yesterday by Amici States.[1] After being denied the right to intervene and permitted only to file an amicus brief, Amici States are now not only filing a notification letter with the Court but seem to be trying to expand the appellate record in the process. What is more, Amici States provided the Notice of Compliance filed by the Government below, but omitted Plaintiffs-Appellees' responding Notice of Non-Compliance (attached here). Amici States are not parties to this appeal or the litigation in the District Court. Inasmuch as Amici States' notification letter could be construed as being filed under FRAP 28(j), that rule permits filings by <u>parties</u>, which Amici States are not. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Loc. 283 v. Scofield*, 382 U.S. 205, 209 (1965) (recognizing that an "amicus is not a 'party' to the case"). And if not a FRAP 28(j) notice, then perhaps a supplemental brief, to which Amici States are also not entitled.

  We therefore request that the Court disregard Amici States' notification letter.

                Respectfully submitted,

                /s/  *Michael A. Columbo*
                   Michael A. Columbo

cc: All Counsel of Record (via ECF)
4915-1548-3429, v. 1

---

[1] New Jersey, Colorado, Connecticut, Delaware, Hawai'i, Illinois, Maryland, Massachusetts, Attorney General Dana Nessel on Behalf of the People of Michigan, Minnesota, Nevada, North Carolina, Oregon, Rhode Island, Vermont, and Washington.

# ATTACHMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| NATIONAL ASSOCIATION FOR GUN RIGHTS, INC., ET AL.,<br><br>           Plaintiffs,<br>v.<br><br>PAMELA BONDI,<br>IN HER OFFICIAL CAPACITY AS<br>ATTORNEY GENERAL<br>OF THE UNITED STATES, ET AL,<br><br>           Defendants. | Case No. 4:23-cv-00830-O |

**PLAINTIFFS' NOTICE OF NON-COMPLIANCE**

Plaintiffs write to provide the Court a Notice of Non-Compliance in connection with the Government's persistent violations of the Court's July 23, 2024, Order, July 24, 2024, Final Judgment, and August 20, 2024, Order ("Stay Order") (collectively, the "Orders").

On February 19, 2025, Defendants filed with this Court a Notice of Compliance ("Notice"), alleging Defendants' compliance with the Court's Orders. Notice (ECF No. 126). Unfortunately, Defendants have not complied, for all the reasons brought to the Court's attention in Plaintiffs' contempt motion, and also for the reasons described below.

*First*, Defendants have not returned the forced reset triggers ("FRTs") they illegally seized. In their reply brief supporting their motion to stay the Final Judgment, Defendants argued for an extension of the 30-day-return requirement because of the "practical obstacles" present in returning the seized FRTs. Reply Mem. Supp. Defs.' Mot. to Stay at 2 (Aug. 9, 2024) (ECF No 126) ("Reply"). Defendants stated they "would still need to match individuals to devices in ATF's possession, confirm those devices are required to be returned under the Order, run

1

background checks to confirm those individuals or entities may legally possess the devices in question, contact them at the available contact information (or obtain new contact information), and effectual a return of the devices in person." Reply at 2-3 (citing Declaration of Matthew P. Varisco ¶¶ 6-15). Indeed, in granting Defendants a six-month extension of the 30-day deadline, the Court noted these "practical considerations" that Defendants highlighted. Stay Order at 14 (ECF No. 112). So the Court granted Defendants the additional six months "to comply with the affirmative obligations, which **SHALL** be *completed* by **February 22, 2025**." *Id.* at 15 (second emphasis added).

The plain language of the Court's Stay Order requires Defendants to have "completed" the return of FRTs within the additional six months, not ***merely start the return process*** in that time. But Defendants' Notice of Compliance and accompanying declaration confirm Defendants waited ***five months into the six-month extension just to notify ATF leadership*** at its field divisions about the Court's Orders and Defendants' return obligation. Notice ¶ 7. ATF conducted a "meeting" on January 29, 2025, to provide "guidance and respond to any questions." *Id.* The Government asserts that this notice "directed all field divisions to separately conduct a physical inventory of FRT-15s and WOTs in their possession" and that "[t]his physical inventory confirmed that the FRT-15s and WOTs seized are still in ATF's possession and identified any additional FRT-15s or WOTs that may be secured in ATF's vault." First, this Court's Order applies to all FRTs, regardless of manufacturer. Second, the Government has denied at least one return on the ground that the seized FRT had already been destroyed. Defs.' Opp. to Pls.' Mot. for Order to Show Cause at 11 (ECF No. 118).

ATF did not compile their final list of FRTs eligible for return (according to ATF) until February 14, 2025—178 days after the Court's Stay Order, and a mere eight days before all

FRTs eligible for return were required to be returned. *Id.* ¶ 10. ATF started sending notices to FRT "possessor[s]" indicating they may be eligible to have their FRT returned. *Id.* ¶ 11. After this, the possessor must provide proof of membership, and then ATF will run a background check.[1] *Id.* ¶ 12.

This is unacceptable. The entire purpose of extending the 30-day deadline was so that all of the steps recounted in the preceding paragraph—and all of the steps Defendants used to justify their extension request—could be completed *before* the ultimate deadline. Defendants *should* have notified ATF leadership at its field divisions immediately after the July 24 Final Judgment or, at the latest, immediately after the August 20 Stay Order—not nearly **five months later**. Under the timeline described by Defendants, had Defendants notified ATF leadership of the return obligation immediately after the August 20 Stay Order, then the notices of return to FRT owners could have been sent out October 3, 2025. This would have given FRT owners time to return their forms, and the ATF time to conduct background checks, such that the FRT returns could occur *before* the February 22, 2025, deadline imposed by the Court. Based on the representations ATF made in its Notice and accompanying declaration, however, it is evident Defendants never intended to try to meet the Court's February 22, 2025, deadline. Notably, Defendants fail to provide the number of FRTs returned to date. This is yet another act of contempt from Defendants, in addition to those outlined in Plaintiffs' pending motion for contempt.

Finally, Defendants insist that they will not return FRTs where possession of FRTs is illegal under state law. Notice ¶ 12. The genesis of this lawsuit was Defendants' illegal

---

[1] Plaintiffs disagree with the need, and possibly even the legality, of running background checks for FRTs since they are not firearms. At a minimum, Defendants should explain the process and authorization for running background checks on people for possessing nonregulated triggers.

interpretation of federal law. Defendants cannot now be trusted with interpreting state law. Defendants should be returning FRTs to all plaintiffs in all states, and can include language warning that they may be illegal under state law. Otherwise Defendants may interpret state law restrictively, with the same bias used when interpreting federal law vis-à-vis FRTs.

*Second*, Defendants continue to rely on the illegal classification of FRTs as machineguns. In their November 27, 2024, motion for contempt, Plaintiffs highlighted some of the examples (known at that time) of Defendants' defiance on this issue. *See* EFC Nos. 116, 119. Since then, Plaintiffs have learned of additional contemptuous representations taken by Defendants.

Defendants are relying on an illegal FRT classification in pursuing criminal charges against Wilmer Alicea-Curras in Puerto Rico federal court. Despite this Court's vacatur of ATF's classification of FRTs as machineguns and the court's declaration that such classification is illegal, the United States argued that the FRTs at issue in that case (Alamo-15 FRTs) might be different from the FRT-15 or WOT. Response in Opp. to Mot. to Dism. at 4, 14, *United States v. Alicea-Curras*, 3:22-cr-00511-FAB (Oct. 15, 2024). Yet an ATF classification of an Alamo-15 equipped firearm specifically equates Alamo-15s with FRT-15s and WOTs. Report Tech. Exam. at 3, *United States of American v. Berrios-Aquino*, 3:22-cr-00473-DRD (Dec. 12, 2022) (ECF No. 27-1). Indeed, in that classification—which this Court vacated—ATF compared Alamo-15s, WOTs, and FRT-15s as "virtually identical in function and design" with the only difference being a safety disconnector in the Alamo-15 that "functions in a similar manner" to the locking bar in the other triggers. *Id.* at 3. And the United States relied on that classification report in opposing another criminal defendant's motion to dismiss, in *United States of American v. Berrios-Aquino.* U.S.A.'s Resp. in Opp. to Def's Mot. to Dismiss, *Berrios-Aquino*, 3:22-cr-00473-DRD (ECF No. 27). Moreover, the company and owner selling Alamo-15 FRTs lost a

4

patent litigation filed against them on March 8, 2022, by Rare Breed Triggers, because the Alamo-15 FRT operates in the same manner as FRT-15s. Entry of Consent Judgment, *Rare Breed Triggers, LLC v. Graves*, 4:22-cv-00107 (Dec. 9, 2024) (ECF No. 184).

This Court's order and final judgment apply to forced reset triggers generally, without limitation as to brand or manufacturer. DOJ and ATF are playing games—and violating this Court's final judgment—when they attempt to exclude FRTs from this Court's final judgment.

The Government argued in opposition to Plaintiffs' contempt motion that "prosecutions and other enforcement actions are not undertaken on the basis of the classification because the ATF's classification does not carry any binding legal effect apart from the statute," Defs.' Opp. to Pls.' Mot. for Order to Show Cause at 18 (citation and internal quotation marks omitted) (ECF No. 118), and the Government would likely argue the same here. Aside from being foreclosed by *Franciscan Alliance, Inc. v. Becerra*, 47 F.4th 368 (5th Cir. 2022),[2] this argument also fails because Defendants *are* relying on FRT classifications for their prosecutions. Indeed, as above, the Government relied on an FRT classification to oppose a criminal defendant's motion to dismiss.

Defendants may also argue that this Court ensured that it did not encroach upon the jurisdiction of other courts, as they also argued in opposition to Plaintiffs' contempt motion. That is true, but it has no bearing on the Government's contemptuous actions here. While this Court's Orders did not make other courts do or not do something, it *did* make the Government not do something. Among other things, it prevented the Government from relying on the illegal

---

[2] *Franciscan Alliance* rejected an agency's attempt to "implicitly argue[] that a lawsuit challenging a regulation and a lawsuit challenging the underlying statute are different," concluding "as the Court recently noted in *FEC v. Cruz*, a challenge to an agency regulation is necessarily a challenge to the underlying statute as well . . . because an agency 'literally has no power to act'—including under its regulations—unless and until Congress authorizes it to do so by statute.'" 47 F.4th at 378 (quoting *FEC v. Cruz*, 596 U.S. 289, 301 (2022)).

classifications of FRTs as machineguns. Yet the Government continues to do so, including in criminal cases seeking to deprive people of their liberty.

Finally, and relatedly, although this Court ordered the return of FRTs generally, *see* Final Judgment at 2, Defendants have confirmed in their Notice and in their online posting that Defendants intend to return only FRT-15s and WOTs. *E.g.*, Notice ¶ 13. This violates the Court's order. Indeed, this game played by Defendants would be akin to the Rare Breed Parties selling Alamo-15 FRTs and then claiming those FRTs are not covered by the EDNY injunction even though the EDNY injunction lists FRTs generally. If the Rare Breed Parties can reasonably interpret the plain meaning of court orders, so can Defendants.

*Third*, earlier this month, the Government filed an opposition to Cole Leleux's[3] motion to compel responses from a defendant in a Florida civil state court case on the grounds that she is a confidential informant (CI) for the Government. USA's Opp. to Mot. to Compel, *Leleux v. Habowsky*, Case No. 2022-CA-001715 (18th Judicial Cir. Ct., Seminole Cnty, Feb. 2, 2025) (ECF No. 216305271). The Government first states that the text messages plaintiff Leleux seeks were sent from defendant Habowsky (the CI) to ATF Special Agent Nestor Vasquez "during the course of a federal criminal investigation." *Id.* at 1. When discussing the sixth factor from *Tuite v. Henry*, 181 F.R.D. 175, 176 (D.D.C. 1998), that courts use, among the others, to analyze whether the law enforcement privilege applies—*i.e.*, "whether the investigation is concluded"—the Government tips its hand that it *still* has a federal criminal investigation open into the Rare Breed Parties. The Government argues that the "sixth factor also weighs against disclosure because the information sought relates to an *ongoing federal investigation*." *Id.* at 4 (emphasis

---

[3] Mr. Leleux is not a defendant in the EDNY litigation. He is a NAGR member and has been before the litigation was filed (although the timing should not matter) and was involved in Rare Breed Triggers, LLC's formation and operation.

added). But the "investigation" in factor six relates to factor five, which is "whether the party seeking discovery is an actual or potential defendant in any criminal proceeding pending or reasonably likely to follow from the incident in question." *Id.* at 2-3.

Any ongoing federal criminal investigation into the Rare Breed Parties predicated upon an assertion that FRTs are machineguns violates this Court's permanent injunction prohibiting the Government from pursuing criminal action against the Rare Breed Parties vis-à-vis FRTs.

As the above shows, Defendants are not in compliance with this Court's Orders, despite the contrary representations they make in their Notice.

Date: February 25, 2025

Respectfully submitted,

*/s/ Whitney A. Davis*
Whitney A. Davis (TX Bar No. 24084843)
EGGLESTON KING DAVIS, LLP
102 Houston Avenue, Suite 300
Weatherford, TX 76086
Telephone: (703) 748-2266
whit@ekdlaw.com

Jonathan M. Shaw (VA Bar No. 98497)
DHILLON LAW GROUP, INC.
2121 Eisenhower Avenue, Suite 608
Alexandria, VA 22314
Telephone: (703) 748-2266
Facsimile: (415) 520-6593
jshaw@dhillonlaw.com

Glenn Bellamy (OH Bar No. 0070321)
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Telephone: 513-707-0243
gbellamy@whe-law.com

4937-9413-0462, v. 2